☐ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - -X
ZU GUO YANG, XIAO HONG WANG, BAO LAN DENG,
CINDY CHAN, MOOI YANG, and LING MEI ZHANG,

                    Plaintiffs,

          - against -

SHANGHAI CAFE INC., SHANGHAI CAFE DEULXE,
INC., GRACE LAU, YUNG MEI KU, PING LIN,
and JOSEPH TANG,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - -X
JOSEPH TANG,
                    Counterclaim-Plaintiff,

          - against -                          10 Civ. 8372 (LLS)

ZU GUO YANG, XIAO HONG WANG, BAO LAN DENG,     OPINION AND ORDER
CINDY CHAN, MOOI YANG, and LING MEI ZHANG,

                    Counterclaim-Defendants.
- - - - - - - - - - - - - - - - - - - - - - -X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED 2-8-12

     Defendant   Tang   counterclaims   against   plaintiffs   for

defamation.

     Plaintiffs   (or   "the   Workers"),   former   employees   at   a

Chinese   restaurant,   originally   brought   this   action   under   the

Fair   Labor   Standards   Act   and   the   New   York   State   Labor   Law,

against defendants, who are allegedly their former employers and

owners   of   the   restaurant   where   the   Workers   worked.     In   their

amended   complaint,   the   Workers   claim   that   defendants   withheld

tips,   and   that   they   failed   to   comply   with   minimum   wage,

overtime,   and   spread-of-hours   laws.

Tang counterclaims that the Workers distributed flyers and uttered statements accusing Tang of exploiting workers, stealing workers' tips, and giving the workers' money to charity in order to "garner publicity and deceive the public."

The Workers move to strike the counterclaim as untimely. Alternatively, they move under Fed. R. Civ. P. 12(b)(6) to dismiss the counterclaim, arguing that the allegedly defamatory statements are not defamatory as a matter of law, because their statements are expressions of "pure opinion," and therefore are protected under the New York and Federal Constitutions.

They further contend that their statements are protected by section 74 of the New York Civil Rights Law, which states:  "A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published."

### The Counterclaim

On September 17, 2011, three companies with which Tang is affiliated sponsored the 2011 Dumpling Festival in Sara D. Roosevelt Park, in Manhattan.

The Workers attended the Dumpling Festival, and they "and/or their agents held up billboards with Mr. Tang's picture and were yelling that he is a thief and has stolen from them."

2

Countercl. ¶ 5.    They also distributed copies of a flyer
entitled, "Dumpling Festival Corporate Sponsor Twin Marquis Food
Group Owner Joseph Tang Exploits Workers and Should be
Punished," (the "Flyer") which stated in full:

> We are Shanghai Café employees.  We worked at
> Shanghai Café for 4 to 8 years.  Joseph Tang, who is
> the main owner of Shanghai Café is also the founder
> and owner of Twin Marquis Food Group, which includes
> Tang's Natural and TMI Trading.  For many years, since
> the boss opened the restaurant, workers have had to
> work 70 hours a week without getting minimum wage or
> overtime pay.  In addition, Tang stole workers' tips
> for a long time.  After we complained, Tang closed the
> restaurant to evade responsibility, causing us to lose
> our jobs.  When Shanghai Cafe re-opened, we went to
> apply for jobs there but he refused to hire those of
> us workers who stood up for our rights, retaliating
> against us.  We, workers, who have been exploited and
> retaliated against by Joseph Tang demand and will
> fight for justice.

> On November 2010, we Shanghai Café workers filed
> a lawsuit against Joseph Tang for failure to pay
> minimum wage, overtime, and for stealing workers'
> tips.

> Joseph Tang heartlessly used workers [sic] hard-
> earned sweat money towards charity to garner publicity
> and deceive the public.  His companies deserve to be
> boycotted.  Today, we Shanghai Café workers want to
> let the public know of Joseph Tang's actions.  We
> encourage business owners to stop doing business with
> the Twin Marquis Food Group and not to cohort with a
> sweatshop boss.  Support workers!  Boycott Shanghai
> Café and Twin Marquis Food Group!

Id. Ex. A.

The Workers "and/or their agents also caused a copy of the
same flyer (Exhibit A) to be faxed to Mr. Tang's company, TMI
Trading, where it was seen by employees of TMI Trading."

Countercl. ¶ 6.

Tang alleges that the Workers' statements accuse "Mr. Tang of a serious crime, i.e. stealing, as well as other conduct that harms him in his trade or business, i.e., mistreating workers, evading financial responsibilities, retaliating against workers." Id. ¶ 8.

## Discussion

Tang's counterclaim was filed more than 21 days after his answer was filed, and thus it cannot be considered an amendment as a matter of course. Fed. R. Civ. P. 15(a)(1)(A). However, "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d); see also Fed. R. Civ. P. 13(e) ("The court may permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading.").

Tang's counterclaim did not mature until September 17, 2011, more than six months after he filed his answer.  It is thus necessary to decide whether to permit the counterclaim as a supplemental pleading.

"The standard for exercise of discretion on a motion to supplement the pleadings is the same as that for disposition of a motion to amend a complaint under Rule 15(a), F. R. Civ. P."

N.Y. State Nat'l Org. for Women v. Cuomo, 182 F.R.D. 30, 36 (S.D.N.Y. 1998).   Under Fed. R. Civ. P. 15(a)(2), the "court should freely give leave" to amend a pleading "when justice so requires."   Leave may be denied, however, for reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."   Foman v. Davis, 371 U.S. 178, 182 (1962).

### A.

The Workers contend that allowing Tang to bring his counterclaim at this stage of the litigation would prejudice them, since fact discovery concluded on November 18, 2011.   The counterclaim, however, was filed within three weeks of the alleged defamatory statements.   At a pretrial conference on October 28, 2011, the Workers' counsel could not articulate any particular prejudice the Workers would suffer by having to engage in additional discovery with respect to the counterclaim.

In light of that statement, and the fact that Tang's counterclaim requires only minimal discovery, the Court finds that granting Tang leave to file his counterclaim would not unduly prejudice the Workers.

### B.

Leave to file the counterclaim may be denied if filing the

counterclaim would be futile. "A proposed amendment to a
pleading would be futile if it could not withstand a motion to
dismiss pursuant to Rule 12(b)(6)." Oneida Indian Nation v.
City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003), rev'd on
other grounds, 544 U.S. 197 (2005).

"To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'" Ashcroft v. Iqbal,
129 S. Ct. 1937, 1949 (2009), quoting Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007). "When reviewing a motion to
dismiss, a court must accept as true all of the factual
allegations set out in plaintiff's complaint, draw inferences
from those allegations in the light most favorable to plaintiff,
and construe the complaint liberally." Rescuecom Corp. v.
Google Inc., 562 F.3d 123, 127 (2d Cir. 2009) (internal
quotation marks omitted).

### 1.

The Workers argue that their statements were expressions of
"pure opinion," and as such they may not serve as the basis for
a defamation suit.

"A 'pure opinion' is a statement of opinion which is
accompanied by a recitation of the facts upon which it is based.
An opinion not accompanied by such a factual recitation may,
nevertheless, be 'pure opinion' if it does not imply that it is

based upon undisclosed facts." <u>Steinhilber v. Alphonse</u>, 68
N.Y.2d 283, 289, 501 N.E.2d 550, 552 (1986).  "An expression of
pure opinion is not actionable. . . ."  <u>Id.</u>  The determination
of whether a statement is fact or opinion "is one of law for the
court and one which must be answered on the basis of what the
average person hearing or reading the communication would take
it to mean."  <u>Id.</u> at 290, 501 N.E.2d at 553.

In <u>Steinhilber</u>, the New York Court of Appeals warned
against adopting a "formulistic approach" in determining whether
a statement is an opinion, but stated that it is helpful to
consider four non-exhaustive factors:

> (1) an assessment of whether the specific language in
> issue has a precise meaning which is readily
> understood or whether it is indefinite and ambiguous;
> (2) a determination of whether the statement is
> capable of being objectively characterized as true or
> false; (3) an examination of the full context of
> communication in which the statement appears; and (4)
> a consideration of the broader social context or
> setting surrounding the communication including the
> existence of any applicable customs or conventions
> which might "signal to readers or listeners that what
> is being read or heard is likely to be opinion, not
> fact."

<u>Id.</u> at 291-92, 501 N.E.2d at 554, <u>quoting Ollman v. Evans</u>, 750
F.2d 970, 983 (D.C. Cir. 1984) (en banc).

Therefore, in a New York defamation action such as this
one, a court must consider the challenged statement's context in
addition to the statement itself:  "We would begin the analysis
- just as we did previously in this case, and just as we did in

Steinhilber, 68 N.Y.2d, at 293, 508 N.Y.S.2d 901, 501 N.E.2d 550, supra – with the content of the whole communication, its tone and apparent purpose." Immuno AG v. J. Moor-Jankowski, 77 N.Y.2d 235, 250, 667 N.E.2d 1270, 1278 (1991).

a.

The statements in the Flyer's title and text that Tang "Exploits" and "exploited" the Workers are statements of pure opinion and are thus protected under the New York Constitution.[1]

The claim of exploitation was published in the Flyer, which was entitled, "Dumpling Festival Corporate Sponsor Twin Marquis Food Group Owner Joseph Tang Exploits Workers and Should be Punished." It is apparent from the Flyer's title and tone that the Flyer is designed to persuade, and thus is not an attempt to provide unbiased reporting on Tang's role as an owner of Shanghai Café. As the New York Court of Appeals has noted, "'even apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an "audience may anticipate [the use] of epithets, fiery rhetoric, or hyperbole."'" Steinhilber, 68 N.Y.2d at 294, 501 N.E.2d at 556 (brackets in Steinhilber), quoting Info. Control

_____

[1] The New York Constitution states, in relevant part:   "Every citizen may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."   N.Y. Const. art I, § 8.

Corp. v. Genesis One Computer Corp., 611 F.2d 781, 784 (9th Cir. 1980), quoting Gregory v. McDonnell Douglas Corp., 552 P.2d 425, 427 (Cal. 1976).

A reader is therefore likely to perceive the Flyer, at least in part, as expressing the Workers' opinions.  The word "exploit" is itself without concrete and specific meaning, and therefore apt to be regarded as hyperbole.

The Flyer also states that the Workers are currently pursuing this lawsuit and encourages readers to boycott Tang's company.  It is thus evident to readers that the Flyer's statements are made in the context of an employment dispute and litigation.  In Steinhilber, 68 N.Y.2d at 294, 501 N.E.2d at 555, the New York Court of Appeals held that a statement by a union vice president that a union member who defied a strike order lacks "talent, ambition, and initiative" was pure opinion, in part because it was clear from the context that "the message was prepared and played as part of the union's effort to punish a former member."  Here, as its title indicates, the Flyer's statements are similarly designed to punish Tang for allegedly underpaying the Workers.

This broader context for the Flyer's statements further supports the conclusion that the Workers' claim that Tang exploited them is one of opinion.

Furthermore, the Flyer provided "a recitation of the facts"

9

upon which the claim of exploitation was made:  it states that "workers have had to work 70 hours a week without getting minimum wage or overtime pay," and a reasonable reader could conclude that the claim of exploitation is based on that statement.  See id. at 289, 501 N.E.2d at 552 ("A 'pure opinion' is a statement of opinion which is accompanied by a recitation of the facts upon which it is based.").

Thus, when considered in their full context as a characterization of the working conditions that led the Workers to bring this suit, it is apparent that the statement that Tang exploited the Workers is one of pure opinion.

### b.

The statements that "Tang closed the restaurant to evade responsibility" and "retaliated against" the Workers are likewise statements of pure opinion, and are therefore protected under the New York State Constitution.

Those statements are based on the Workers' claim that "After we complained, Tang closed the restaurant to evade responsibility, causing us to lose our jobs.  When Shanghai Cafe re-opened, we went to apply for jobs there but he refused to hire those of us workers who stood up for our rights, retaliating against us."

When considered in the context of the Flyer and the fact that the Workers and Tang are currently embroiled in this

10

lawsuit, it is evident that those claims are an expression of the Workers' belief as to why Shanghai Café closed and why the Workers were not rehired, and as such, they are protected statements of pure opinion.  See Gross v. N.Y. Times Co., 82 N.Y.2d 146, 153-154, 623 N.E.2d 1163, 1168 (1993) ("a statement of opinion that is accompanied by a recitation of the facts on which it is based" is not actionable, because "a proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience as conjecture").  Here it is apparent that the assumption that the reason the restaurant closed was to deprive the Workers of jobs is only conjecture.

c.

The statement in the Flyer that "Tang stole workers' tips for a long time" and the verbal statements that Tang "is a thief and has stolen from" the Workers are not statements of opinion, and thus are not protected under the New York or Federal Constitution.

Tang alleges that those statements accuse him "of a serious crime."  Countercl. ¶ 8.

Both the U.S. Supreme Court and the New York Court of Appeals have addressed accusations of criminality in defamation cases.  In Greenbelt Cooperative Publishing Ass'n v. Bresler, 398 U.S. 6, 7 (1970), Bresler, a member of the Maryland House of

11

Delegates, sued the publishers of a local newspaper for defamation after they published two columns about city council meetings where community members debated Bresler's negotiations with the city for a zoning variance in exchange for the attempted purchase of Bresler's land for the construction of a school. The columns contained statements which allegedly "characterized Bresler's negotiating position as 'blackmail.'" Id. The Court found that the statements were protected under the Federal Constitution:

> During the course of the arguments Bresler's opponents characterized the position he had taken in his negotiations with the city officials as "blackmail." The Greenbelt News Review was performing its wholly legitimate function as a community newspaper when it published full reports of these public debates in its news columns. If the reports had been truncated or distorted in such a way as to extract the word "blackmail" from the context in which it was used at the public meetings, this would be a different case. But the reports were accurate and full. Their headlines, "School Site Stirs Up Council – Rezoning Deal Offer Debated" and "Council Rejects by 4-1 High School Site Deal," made it clear to all readers that the paper was reporting the public debates on the pending land negotiations. Bresler's proposal was accurately and fully described in each article, along with the accurate statement that some people at the meetings had referred to the proposal as blackmail, and others had indicated that they thought Bresler's position was not unreasonable.
>
> It is simply impossible to believe that a reader who reached the word "blackmail" in either article would not have understood exactly what was meant: it was Bresler's public and wholly legal negotiating proposals that were being criticized. No reader could have thought that either the speakers at the meetings or the newspaper articles reporting their words were

12

charging Bresler with the commission of a criminal offense.  On the contrary, even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered Bresler's negotiating position extremely unreasonable.

Id. at 13-14 (footnote omitted).

Furthermore, as the New York Court of Appeals has explained:

> . . . the assertion that "John is a thief" could well be treated as an expression of opinion or rhetorical hyperbole where it is accompanied by other statements, such as "John stole my heart," that, taken in context, convey to the reasonable reader that something other than an objective fact is being asserted.  Indeed, it has already been held that assertions that a person is guilty of "blackmail," "fraud," "bribery" and "corruption" could, in certain contexts, be understood as mere, non-actionable "rhetorical hyperbole" or "vigorous epithet[s]" (see, e.g., Greenbelt Publ. Assn. v. Bresler, supra, 398 U.S. at 14, 90 S.Ct. at 1542; 600 W. 115th St. Corp. v. Von Gutfeld, supra, 80 N.Y.2d at 143-145, 589 N.Y.S.2d 825, 603 N.E.2d 930).
>
> Similarly, even when uttered or published in a more serious tone, accusations of criminality could be regarded as mere hypothesis and therefore not actionable if the facts on which they are based are fully and accurately set forth and it is clear to the reasonable reader or listener that the accusation is merely a personal surmise built upon those facts.  In all cases, whether the challenged remark concerns criminality or some other defamatory category, the courts are obliged to consider the communication as a whole, as well as its immediate and broader social contexts, to determine whether the reasonable listener or reader is likely to understand the remark as an assertion of provable fact (600 W. 115th St. v. Von Gutfeld, supra; see, Immuno AG v. Moor-Jankowski, 77 N.Y.2d 235, 566 N.Y.S.2d 906, 567 N.E.2d 1270, supra).

Gross, 82 N.Y.2d at 155, 623 N.E.2d at 1169 (brackets in Gross).

The statements that Tang stole from the workers are not "accompanied by other statements" "that, taken in context, convey to the reasonable reader that something other than an objective fact is being asserted." See id. Nor are the facts on which the accusation is based "fully and accurately set forth," assuring the "reasonable reader or listener that the accusation is merely a personal surmise built upon those facts." See id. Rather, the Flyer contains the naked assertions that "Tang stole workers' tips for a long time," and that the Workers are suing Tang "for stealing workers' tips."

Thus, "a reasonable listener or reader would infer that 'the speaker [or writer] knows certain facts, unknown to [the] audience, which support [the] opinion and are detrimental to the person [toward] whom [the communication is directed].'" Gross, 82 N.Y.2d at 153-54, 623 N.E.2d at 1168 (brackets in Gross), quoting Steinhilber, 68 N.Y.2d at 290, 501 N.E.2d at 553; see also Bresler, 398 U.S. at 14 ("Bresler's proposal was accurately and fully described in each article, along with the accurate statement that some people at the meetings had referred to the proposal as blackmail").

Even in the context of the Flyer, there is no way for the reasonable reader to know that the term "stole" is actually a characterization of the allegation that Tang withheld portions of tips from the Workers in violation of New York Labor Law.

Thus, the oral and written statements that Tang stole from the Workers are not protected statements of opinion.

d.

The statement that Tang "heartlessly used workers [sic] hard-earned sweat money towards charity to garner publicity and deceive the public" is a protected statement of opinion and is therefore not actionable.

That statement is found in the Flyer's final paragraph, after the statement that the Workers worked 70 hour weeks without overtime or minimum wage.  Referring to those unpaid wages as "hard-earned sweat money" is the sort of fiery rhetoric and hyperbole protected under the New York and Federal Constitution.  See, e.g., Steinhilber, 68 N.Y.2d at 294, 501 N.E.2d at 556.

Tang's motivation for donating money to charity is similarly protected, as a reasonable reader would believe the statement to be the Workers' "personal surmise" as to Tang's charitable purpose.  See Gross, 82 N.Y.2d at 153-154, 501 N.E.2d at 553.

2.

The Workers contend that any statements that are not constitutionally protected statements of opinion should nevertheless be dismissed under section 74 of the New York Civil Rights Law as a "fair and true report" of a judicial proceeding.

15

The only statements that are not protected as opinion are the verbal and written statements that Tang stole from the Workers.

"For a report to be characterized as 'fair and true' within the meaning of" section 74, "thus immunizing its publisher from a civil suit sounding in libel, it is enough that the substance of the article be substantially accurate." Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co., 49 N.Y.2d 63, 67, 399 N.E.2d 1185, 1187 (1979).

> The reason underlying the privilege of fair and true report of a judicial proceeding is, as we declared some years ago (Lee v. Brooklyn Union Pub. Co., 209 N.Y. 245, 248, 103 N.E. 155, 156), "the public interest in having proceedings of courts of justice public, not secret, for the greater security thus given for the proper administration of justice." (See, also, Williams v. Williams, 23 N.Y.2d 592, 597, 298 N.Y.S.2d 473, 477, 246 N.E.2d 333, 336.) In most types of proceedings the advantage in having judicial proceedings made public "more than counterbalances the inconveniencies to private persons whose conduct may be the subject of such proceedings." (Rex v. Wright, 8 Durn. & E. 293, 298.)

Shiles v. News Syndicate Co., 27 N.Y.2d 9, 14, 261 N.E.2d 251, 253 (1970).

### a.

Accepting as true the allegations in Tang's counterclaim, the Workers at the Dumpling Festival shouted that Tang "is a thief and has stolen from them." Countercl. ¶ 5. The Workers do not argue that they uttered any statements regarding this lawsuit. The oral statements thus provide no report of

litigation, and accordingly are not entitled to protection under section 74.

### b.

The statement in the Flyer that Tang "stole workers' tips for a long time" does not provide a fair and true report of this litigation, and thus is not privileged under section 74, and accordingly is actionable.

When determining whether a statement is a "fair and true report" of a judicial proceeding, "The test is whether the published account of the proceeding would have a different effect on the reader's mind than the actual truth, if published." Daniel Goldreyer, Ltd. v. Van de Wetering, 217 A.D.2d 434, 436, 630 N.Y.S.2d 18, 22 (App Div. 1995). "If the published account, along with the rest of the article, suggests more serious conduct than actually suggested in the official proceeding, then the privilege does not attach, as a matter of law." Id.

Although the amended complaint in this action alleges that Tang willfully withheld the Workers' tips in violation of New York Labor Law, it does not use the term "steal" or "theft."

In Karp v. Hill & Knowlton, 631 F. Supp. 360, 361-62 (S.D.N.Y. 1986), the defendant, a public relations firm, issued a press release on behalf of its client, which included a statement that a court ruling "supports our claims that Mr. Karp

defrauded Buckingham and that substantial relief should be granted."

The plaintiff argued that that statement was not privileged under section 74 because it "inaccurately depicted the complaint, which did not in fact assert a claim for fraud." Id. at 363. Nevertheless, the court found that section 74 applied to the statement: "Although the complaint did not purport to allege a claim for fraud, it alleged facts sufficient to support such a claim," because the complaint alleged each of the elements of fraudulent concealment. Id. at 364. It also rejected plaintiff's argument that "the term 'fraud' permits impermissible imputations of criminality that necessarily accompany any allegation of fraud," since "a reasonable reader could only construe Hill & Knowlton's statement as referencing Buckingham's civil action against Karp." Id.

The press release in that case was addressed specifically to the lawsuit between Buckingham and Karp. The sole reference to fraud was that the "ruling supports our claim that Mr. Karp defrauded Buckingham." The reasonable reader therefore would believe that the allegation of fraud was confined to a claim of fraud in a civil action.

In this case, the Flyer contains two separate statements: that Tang "stole workers' tips for a long time," and that the Workers sued Tang "for stealing workers' tips." Unlike in Karp,

18

where the statement that the "ruling supports our claim that Mr. Karp defrauded Buckingham" referred to a specific claim in a specific suit, the statement here that Tang stole workers' tips for a long time is not necessarily coextensive with the withholding of tips alleged in the amended complaint.   A reasonable reader could therefore conclude that that statement implies that Tang's alleged theft went beyond what is alleged in this action, and might conclude that the Flyer is accusing Tang of a crime.   Because that is "more serious conduct than is actually suggested in" the amended complaint, see Van de Wetering, 217 A.D.2d at 436, 630 N.Y.S.2d at 22, the Flyer's statements are not privileged under section 74.

Accordingly, the Flyer's statement that Tang stole tips from the Workers is not protected under section 74 of the New York Civil Rights Law.

* * * *

Because Tang could not state a claim upon which relief can be granted with regard to the statements that Tang exploited the Workers, retaliated against them, and donated their money to charity in order to "garner publicity and deceive the public," permitting him to assert his defamation counterclaim would be futile insofar as it pertains to those statements.   However, he may assert a counterclaim for defamation based on the oral and printed statements that Tang stole the Workers' tips.

19

## Conclusion

The Workers' motion to dismiss or, in the alternative, strike the counterclaim (Dkt. No. 86) is granted in part and denied in part:  Tang may not assert his counterclaim alleging defamation based on the statements regarding exploitation, retaliation, and Tang's charitable donations.  He may assert his counterclaim with respect to the Workers' statements that Tang stole Workers' tips.

So ordered.

Dated:  New York, New York
         February 7, 2011

                                   Louis L. Stanton
                                   U.S.D.J.