UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZU GUO YANG, XIAO HONG WANG, BAO LAN DENG, CINDY CHAN, MOOI YANG, <br><br>              Plaintiffs, <br><br>          -against- <br><br> SHANGHAI CAFÉ INC., SHANGHAI CAFÉ DELUXE INC., GRACE LAU, YUNG MEI KU, PING LIN and JOSEPH TANG, <br><br>              Defendants. | Docket No. 10 CV 8372 (LLS) (AJP) <br><br> **Filed Via ECF** |

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JOSEPH TANG'S MOTION FOR SUMMARY JUDGMENT

---

**LITTLER MENDELSON, P.C.**
Attorneys for Defendant
Joseph Tang
900 Third Avenue
New York, New York 10022-4834
(212) 583-9600

*Of Counsel:*
    Andrew P. Marks, Esq.
    Elena Paraskevas-Thadani, Esq.
    Adam Colón, Esq.

TABLE OF CONTENTS

PAGE

I.  NATURE OF CLAIMS AND SUMMARY OF FACTS ................................................. 1

II.  ARGUMENT .......................................................................................................... 3

    A.  Standard of Review .......................................................................................... 3

    B.  New York Law Does Not Impose Personal Civil Liability For Wages ................ 4

    C.  Mr. Tang Is Not Any Plaintiffs' Employer for Purposes of the FLSA ............... 10

        1.  Mr. Tang Is Not An Owner Or Employee Of Shanghai Café ................. 12

        2.  Mr. Tang Did Not Control Plaintiffs' Wages or Hours ........................... 15

            a.  Defendant Tang Did Not Control Zu Guo Yang ......................... 18

            b.  Defendant Tang Did Not Control Xiao Hong Wang ................... 20

            c.  Defendant Tang Did Not Control Plaintiff Bao Lan Deng .......... 22

            d.  Defendant Tang Did Not Control Plaintiff Cindy Chan ............. 24

            e.  Defendant Tang Did Not Control Plaintiff Mooi Yang ............... 26

III.  CONCLUSION ....................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...................................................................................4

*Andux v. Woodbury Auto Park, Inc.*,
   30 A.D.3d 362, 816 N.Y.S.2d 181 (2d Dep't 2006)..................................9

*Baystate Alternative Staffing, Inc. v. Herman*,
   163 F.3d 668 (1st Cir. 1998)....................................................................10

*Billy v. Consolidated Machine Tool Corp.*,
   51 N.Y.2d 152, 432 N.Y.S.2d 879 (1980)................................................5

*Boucher v. Shaw*,
   124 Nev. 1164, 196 P.3d 359 (2008).........................................................7

*Bravo v. Eastpoint Int'l, Inc.*,
   2001 U.S. Dist. LEXIS 3647 (S.D.N.Y. Mar. 30, 2001).........................15

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)...................................................................................3

*Chao v. Vidtape, Inc.*,
   196 F. Supp. 2d 281 (E.D.N.Y. 2002), *modified on other grounds*, 66 Fed. Appx. 261
   (2d Cir. 2003)..................................................................................... passim

*Copantitla v. Fiskardo Estiatorio, Inc.*,
   788 F. Supp. 2d 253 (S.D.N.Y. 2011)........................................9, 16, 25

*D'Amico v. City of New York*,
   132 F.3d 145 (2d Cir. 1998), *cert. denied*, 524 U.S. 911 (1998).............4

*Diaz v. Consortium for Worker Educ., Inc.*,
   2010 U.S. Dist. LEXIS 107722 (S.D.N.Y. Sept. 28, 2010)....................11

*Ershow v. Site Holdings, Inc.*,
   1995 U.S. Dist. Lexis 8908 (S.D.N.Y. June 26, 1995).............................8

*Flannigan v. Vulcan Power Group, LLC*,
   712 F. Supp. 2d 63 (S.D.N.Y. 2010).........................................................9

*Gold v. Royal Cigar Co.*,
   105 A.D.2d 831, 482 N.Y.S.2d 32 (2d Dep't. 1984).................................5

## TABLE OF AUTHORITIES
## CONTINUED

**Page(s)**

CASES

*Grain Traders v. Citibank, N.A.*,
   160 F.3d 97 (2d Cir. 1998).................................................................3

*Gray v. Powers*,
   673 F.3d 352 (5th Cir. 2012) ...........................................................17

*Heng Chan v. Sung Yue Tung Corp.*,
   2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. Feb. 1, 2007).....................15

*Herman v. RSR Sec. Servs.*,
   172 F. 3d 132 (2d Cir. 1999)............................................................11

*In re Enter. Rent-A-Car*,
   683 F.3d 462 (3d Cir. 2012)..............................................................16

*In re Estate Gifford*,
   144 A.D.2d 742, 535 N.Y.S.2d 154 (3d Dep't 1988) ........................5

*Jankowski v. Castaldi*,
   2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. Jan. 11, 2006) ..................15

*Leonard v. McMorris*,
   63 P.3d 323 (Colo. 2003)...................................................................6

*Martin v. Spring Break '83 Prods., LLC*,
   688 F.3d 247 (5th Cir. 2012) .....................................................17, 27

*Mendez v. Pizza on Stone, LLC*,
   2012 U.S. Dist. LEXIS 108591 (S.D.N.Y. Aug. 1, 2012)................17

*Michalek v. Amplify Sports and Entm't LLC*,
   2012 U.S. Dist. Lexis 85727 (S.D.N.Y. June 20, 2012) ....................9

*Parker v. Sony Pictures Entm't, Inc.*,
   260 F.3d 100 (2d Cir. 2001)...............................................................3

*Patrowich v. Chemical Bank*,
   63 N.Y.2d 541, 483 N.Y.S.2d 659 (1984) ...............................6, 8, 9, 10

*Perez v. Sanford-Orlando Kennel Club, Inc.*,
   515 F.3d 1150 (11th Cir. 2008) ........................................................11

# TABLE OF AUTHORITIES
## CONTINUED

**Page(s)**

CASES

*Raskin v. Wyatt Co.*,
   125 F.3d 55 (2d Cir. 1997)..............................................................................14

*Reese v. Lyons Equip. Co.*,
   436 B.R. 281 (W.D.N.Y. 2010) ..........................................................................9

*Renzler v. D.F. White, Inc.*,
   267 A.D.2d 443, 700 N.Y.S.2d 487 (2d Dep't 1999) ..............................................9

*Reynolds v. Sealift, Inc.*,
   311 Fed. Appx. 422 (2d Cir. 2009)......................................................................20

*Robles v. Copstat Sec., Inc.*,
   2009 U.S. Dist. Lexis 54963 (S.D.N.Y. June 29, 2009)......................................8, 9

*Sampson v. MediSys Health Network, Inc.*,
   2012 U.S. Dist. LEXIS 103052 (E.D.N.Y. July 24, 2012)......................................17

*Sanders v. Madison Sq. Garden, L.P.*,
   525 F. Supp. 2d 364 (S.D.N.Y. 2007)..................................................................13

*Solis v. Cindy's Total Care, Inc.*,
   2012 U.S. Dist. LEXIS 1808 (S.D.N.Y. Jan. 5, 2012)...........................................17

*Stoganovic v. Dinolfo*,
   61 N.Y.2d 812, 473 N.Y.S.2d 972 (1984) ..............................................................5

*Stoganovic v. Dinolfo*,
   92 A.D.2d 729, 461 N.Y.S.2d 121 (4th Dep't 1983)...............................................6

*Trebor Sportswear Co. v. The Limited Stores, Inc.*,
   865 F.2d 506 (2d Cir. 1989)...............................................................................13

*United States v. Terry*,
   702 F.2d 299 (2d Cir. 1983)...............................................................................14

*Victor G. Reiling Associates and Design Innovation, Inc. v. Fisher-Price, Inc.*,
   407 F. Supp. 2d 401 (D. Conn. 2006)...................................................................13

## TABLE OF AUTHORITIES
## CONTINUED

Page(s)

CASES

*We're Associates Co. v. Cohen, Stracher & Bloom, P.C.,*
   103 A.D.2d 130, 478 N.Y.S.2d 670 (2d Dep't 1984), *aff'd* 65 N.Y.2d 148 (1985) .................5

*Weinstock v. Columbia Univ.,*
   224 F.3d 33 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003) ....................................3

*Williams v. Skyline Auto. Inc.,*
   2012 U.S. Dist. LEXIS 74864 (S.D.N.Y. May 30, 2012) .......................................23

*Xelo v. Mavros,*
   2005 U.S. Dist. LEXIS 21588 (E.D.N.Y. Sept. 28, 2005) ...................................11, 21, 23, 27

STATUTES

C.R.S. § 8-4-101 ....................................................................................................6

Fed. R. Civ. P. 56 ..................................................................................................3

Fed. R. Evid. 801 ..................................................................................................14

New York BCL § 630 .............................................................................................15

N.Y. Lab. Law § 190 ..............................................................................................8

N.Y. Lab. Law § 198-a ...........................................................................................5, 6

N.Y. Lab. Law § 651 ..............................................................................................8

N.Y. Lab. Law § 662 ..............................................................................................5

Defendant Joseph Tang respectfully submits this Memorandum of Law in support of his Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

## I.   NATURE OF CLAIMS AND SUMMARY OF FACTS

This is an action under the Fair Labor Standards Act and the New York State Labor Law brought by five employees[1] against their employer Shanghai Café, Inc. ("Shanghai Café"), a corporation operating a restaurant at 100 Mott Street.  In addition to the corporation, plaintiffs also sued the restaurant's owners and managers, Grace Lau and Yung Mei Ku; Ping Lin, a supervisor of the dim sum department; and Shanghai Café Deluxe, Inc. ("Shanghai Café Deluxe"), an alleged successor corporation operating a restaurant in the same location.  The viability of those claims and the liability of those defendants are immaterial to this motion for summary judgment.  On this motion, the Court need determine only whether plaintiffs can produce sufficient admissible evidence to prove that defendant Joseph Tang was their statutory employer under state and/or federal law.  Because none of the plaintiffs can satisfy their burden, summary judgment must be granted to Mr. Tang.

Plaintiffs' claims under New York Labor Law ("NYLL") for minimum wages (Third Count), overtime (Fourth Count), spread of hours pay (Fifth Count) and withheld gratuities (Sixth Count) must be dismissed because the NYLL does not impose civil liability on individuals for wage violations, even if such individuals own and/or manage the business.  With respect to plaintiffs' federal claims, although the Fair Labor Standards Act ("FLSA") more broadly defines an "employer" to include individuals who have the power to control the workers in question,

---

[1]  Plaintiff Ling Mei Zhang voluntarily withdrew her claims with prejudice.  (Docket Entry #105).  The remaining plaintiffs are one chef, Zu Guo Yang ("Z. Yang"); one cook, Xiao Hong Wang ("Wang"); two servers: Cindy Chan ("Chan") and Mooi Yang ("M. Yang"); and a dim sum maker Bao Lan Deng ("Deng").  All five plaintiffs sue for overtime pay under federal and state law and for spread of hours pay under state law.  In addition, Chan, M. Yang and Deng assert claims for minimum wages under federal and state law, and Chan and M. Yang assert a claim for unpaid gratuities.

there is no evidence that Mr. Tang had such authority over each plaintiff.  Mr. Tang was not an owner or employee of Shanghai Café.  Although the amended complaint alleged such ownership, despite exhaustive discovery – including over a dozen depositions, subpoenas of corporate records, health department records, bank records, real estate records, utility records, purveyor records and phone records – plaintiffs can produce not a shred of evidence to support that contention.  Because he was neither an owner nor employee of Shanghai Café, as a matter of law, Mr. Tang did not have the authority to control its employees.  Mr. Tang's status as a trusted advisor, good friend, former business partner, ex-husband and/or significant supplier to the Shanghai Café's actual owners/managers does not saddle him with employer liability.

Even if Mr. Tang had an ownership interest in Shanghai Café, that would not make him liable as an employer of the plaintiffs.  Plaintiffs must also prove that Mr. Tang used his status to control material and relevant conditions of each plaintiff's employment.  Again, there is no such evidence.  Plaintiffs can produce no written directive, policy manual, paycheck, work schedule, disciplinary notice, performance evaluation, letter of recommendation, tax return, corporate filing, or any other documentary evidence, showing or tending to show that Mr. Tang exercised authority on behalf of the restaurant.

Nor can the plaintiffs provide any concrete material fact demonstrating such authority.  Inadmissible hearsay, grape vine speculation and assumption have no weight in a summary judgment motion.  Plaintiffs' testimony establishes at most that Mr. Tang visited Shanghai Café; entered the kitchen and the basement office; spoke with the owners and employees of the restaurant; and communicated a handful of suggestions to improve the food and the service.  There is no evidence that Mr. Tang made decisions for the restaurant, but even if he did, such sporadic activity falls far short of the day-to-day control required to impose FLSA liability.

2

Mr. Tang is also entitled to an award of summary judgment on his defamation counter-claim. It is undisputed that plaintiffs Cindy Chan and Mooi Yang distributed a flier accusing Mr. Tang of stealing workers' tips. That statement is false, because Mr. Tang is not responsible, directly or indirectly, for any tips that were wrongfully withheld by Shanghai Café. Because the false statement accuses Mr. Tang of criminal activity, it is defamatory *per se* and damages are presumed. Accordingly, Mr. Tang has established each and every element of the cause of action and is entitled to judgment as a matter of law.

## II.   ARGUMENT

### A.   Standard of Review

Summary judgment is appropriate where the pleadings, discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003). Such relief should be granted where a party cannot "make a showing sufficient to establish the existence of an element essential to [her] case and on which [she] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) ("[a] defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial.").

When, as here, the defendant points to an absence of evidence regarding an essential element of plaintiffs' claim, plaintiffs must "show the presence of a genuine issue by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [their] favor, to establish the existence of that element at trial." *Grain Traders v. Citibank, N.A.*, 160 F.3d 97, 100 (2d Cir. 1998). Only "hard evidence," rather than speculation or conclusory statements, is sufficient, as a matter of law, to defeat a properly supported motion for summary

judgment.  *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), *cert. denied*, 524 U.S. 911 (1998).  The relevant question is whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Here, there is a complete absence of evidence showing that Mr. Tang was an employer of the plaintiffs.  Accordingly, Mr. Tang is entitled to summary judgment as a matter of law.

**B.    New York Law Does Not Impose Personal Civil Liability For Wages**

Plaintiffs' Third through Sixth causes of action assert claims for violation of the New York Labor Law.  Assuming *arguendo* that plaintiffs could prove those claims at trial against Shanghai Café, summary judgment must be granted in favor of Mr. Tang because the NYLL does not impose individual liability on directors, officers or employees of a corporation.

Plaintiffs' state law claims for minimum wages (Third Cause of Action), overtime (Fourth Cause of Action), and spread of hours pay (Fifth Cause of Action) are brought under NYLL § 663.1.  That section states: "If any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any underpayments ... and any agreement between him and his employer to work for less than such wage shall be no defense to such action."  It is undisputed that at all times material hereto, plaintiffs were employees of Shanghai Café, Inc.  Plaintiffs performed their services at the restaurant operated by Shanghai Café, used equipment owned by Shanghai Café, were paid by checks issued by Shanghai Café, served customers eating at the Shanghai Café, and were directed in their day by managers employed by Shanghai Café.  (*See* Chan Dep. 75:11-17; Z. Yang Dep. 17:5-21, 21:7-22:9; M. Yang Dep. 19:14-20; Marks Aff. Exs. L, M and W).  Indeed, the amended complaint asserts that "Plaintiffs are former employees of Shanghai Café" and that "Plaintiffs bring this action to recover damages arising out of their employment at Shanghai

Café." (Amended Cplt. ¶ 2). As Plaintiffs' employer, Shanghai Café had the obligation to pay plaintiffs the wages to which they were entitled under the provisions of New York Labor Law.

As a general rule, shareholders of a New York corporation are not individually liable for the contractual arrangements entered into by the corporation. Indeed, insulation from personal liability is one of the fundamental purposes of operating through a corporate form. *Billy v. Consolidated Machine Tool Corp.*, 51 N.Y.2d 152, 163, 432 N.Y.S.2d 879, 886 (1980).[2] Nor are agents – e.g., managers and officers – of a disclosed principal – e.g., a corporation – personally liable for the principal's obligations. *In re Estate of Gifford*, 144 A.D.2d 742, 744, 535 N.Y.S.2d 154, 156 (3d Dep't 1988) ("[I]t is well settled that an individual who signs a corporate contract and indicates the name of the corporation and the nature of his representative capacity on the contract is generally not subject to personal liability."); *Gold v. Royal Cigar Co.*, 105 A.D.2d 831, 832, 482 N.Y.S.2d 32, 33 (2d Dep't. 1984) ("As each document was executed by the individual defendant in his corporate capacity, they cannot form the basis for personal liability upon him.").

NYLL does not create an exception to these general rules of civil liability. Instead, the NYLL exposes corporate officers and managers to criminal liability when they knowingly fail to pay wages to employees or violate the Labor Law. *See* N.Y. Lab. Law § 198-a; N.Y. Lab. Law § 662. In *Stoganovic v. Dinolfo,* 61 N.Y.2d 812, 473 N.Y.S.2d 972 (1984), the New York State Court of Appeals held that the statutory dichotomy of civil and criminal liabilities precludes any

---

[2]  "Where the Legislature has intended to depart from this general rule of limited liability and impose the obligations of a corporation upon the individual shareholder, it has made explicit provisions for such obligations." *We're Associates Co. v. Cohen, Stracher & Bloom, P.C.,*  103 A.D.2d 130, 133, 478 N.Y.S.2d 670, 673 (2d Dep't 1984), *aff'd* 65 N.Y.2d 148 (1985). New York Business Corporation Law § 630 provides such an exception by making the ten largest shareholders of a corporation that is not publicly traded personally liable for wages, but plaintiffs have not asserted a claim under BCL § 630 in this action. Such an exception would be largely superfluous if shareholders were always liable for wages.

inference that officers and agents of a corporation can be civilly liable for wages.  The Court of Appeals adopted the reasons stated in the decision of the Appellate Division, which had held:

> Were we to hold corporate officers personally liable for the unpaid wages of corporate employees, the officers could have unlimited liability.  We cannot say that the legislature intended this result, and thus we decline to imply a civil cause of action based on the Labor Law.  If corporate officers are to have personal liability or unpaid wages, this is a decision the legislature must make.

*Stoganovic v. Dinolfo,* 92 A.D.2d 729, 730, 461 N.Y.S.2d 121, 123 (4th Dep't 1983).   The absence of individual civil liability under NYLL was reaffirmed by the Court in *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 543, 483 N.Y.S.2d 659 (1984):  "Although the definition in subdivision 3 of [NYLL] section 190 of 'employer' provides no clue, we have recently held that the provisions of section 198-a subjecting corporate officers to criminal sanctions for violation of the article indicates a legislative intent that they *not* be subject to civil liability."  63 N.Y.2d at 543 (emphasis in original).

   This same conclusion was reached by the Supreme Court of Colorado in *Leonard v. McMorris,* 63 P.3d 323 (Colo. 2003).   There, employees sought to recover from corporate officers the wages that the company had failed to pay following its bankruptcy.   Similar to NYLL, Colorado law made the employer liable for wages and defined employer as "every person, firm, partnership, association, corporation ... and any agent or officer thereof ... employing any person is Colorado."  C.R.S. § 8-4-101(5).   Comparing its statutory language to that of Illinois ("Any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation") and Kansas ("In case of violation ... by a corporate employer, either the corporation or any officer therefor or any agent having the management of the corporation who knowingly permits the corporation to engage in such violation shall be deemed

the employer for purposes of this Act"), the Court found that Colorado's definition of employer did not contain any words stating that officers and agents of a corporation are individually liable for wage and compensation payments.  Relying on principles of corporate and agency law, the court refused to imply a cause of action:

> Insulation from individual liability is an inherent purpose of incorporation; only extraordinary circumstances justify disregarding the corporate entity to impose personal liability.

> ... Corporate officers occupy the position of agents in relation to third persons dealing with the corporation.  Therefore, personal liability of officers is governed by principles of agency law....  Generally a corporate officer acting in his or her representative capacity and within his or her actual authority is not personally liable for such representatives' acts unless acting on behalf of an undisclosed principal....

> Personal liability of officers for wages in the event of business insolvency would be a sharp departure from corporate law principles, and we would expect the General Assembly to state such intent specifically or by necessary implication.  No such language or evident intent appears in Colorado's Wage Claim Act.
>
> ***
>
> Requiring officers of a corporation to act as sureties for wage payments out of their personal assets ... would be a substantial deterrent to serving as an officer.  This is not a liability that one normally anticipates in occupying such a position with a company, and the Wage Claim Act provides no clear notice that employee officers of a corporation incur such a legal obligation.

*Boucher v. Shaw*, 124 Nev. 1164, 196 P.3d 359 (2008) (corporate officers not personally liable for unpaid wages).

Plaintiffs' state law claims for minimum wages (Third Cause of Action),  overtime (Fourth Cause of Action), and spread of hours pay (Fifth Cause of Action) are brought under NYLL § 663.1.  That section states: "If any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any underpayments ... and any agreement between him and his employer to work for less than such wage shall be no defense to such action."  The "article" referred to is article 19. As used in article 19, "'Employer' includes any individual, partnership, association, corporation,

business trust, legal representative, or any group of persons acting as employer." N.Y. Lab. Law

§ 651(6). Plaintiffs' state law claims for retention of gratuities is brought under NYLL § 196.d,

which provides that "No employer or his agent or an officer or agent of any corporation, or any

other person ... shall retain any part of a gratuity ... for an employee." Section 196.d is found

within article 6 of the Labor Law. As used in article 6 "'Employer' includes any person,

corporation, limited liability company or association, employing any individual in any

occupation, industry, trade, business or service." N.Y. Lab. Law § 190(3). This statutory

definition of employer "provides no clue" as to whether individuals acting as agents or officers

of a corporation are individually liable for wage violations under the NYLL. *Patrowich*, 63

N.Y.2d at 543.

 *Patrowich* and *Stoganovic* require the summary dismissal of NYLL claims against

corporate owners, officers and managers. For example, in *Ershow v. Site Holdings, Inc.*, 1995

U.S. Dist. Lexis 8908 (S.D.N.Y. June 26, 1995), three executives brought wage claims under

New York Labor Law § 191 against their employer as well as the CEO and a member of the

board of directors. Citing *Stoganovic* and *Patrowich*, Judge Patterson dismissed the claims

asserted against the individuals:

> The New York Court of Appeals has held that corporate officers are not subject to
> civil liability under the provisions of *New York Labor Law § 198* . . . Although
> these rulings do not expressly address *New York Labor Law § 191*, they clearly
> apply to all wage claims under Article 6 . . . Consequently, [the CEO] and [the
> member of the board of directors] have no liability in their capacity as corporate
> officers for Article 6 claims.

*Ershow,* 1995 U.S. Dist. LEXIS 8908 at *16. *Accord*, *Robles v. Copstat Sec., Inc.*, 2009 U.S.

Dist. Lexis 54963 at *12 (S.D.N.Y. June 29, 2009) ("Mere participation in the day-to-day

activities of an employer renders Bellistri an agent or officer. Agents and officers are not subject

to liability under the Minimum Wage Act absent piercing of the corporate veil."). *See also Reese*

*v. Lyons Equip. Co.*, 436 B.R. 281 (W.D.N.Y. 2010) (explaining the court was bound by the New York Court of Appeals' decision in *Stoganovic* in its dismissal of plaintiff's New York Labor Law claim against an owner and officer of a corporation).

Likewise, New York state courts apply *Patrowich* and *Stoganovic* to dismiss wage claims against corporate officers, managers and directors. *See, e.g., Renzler v. D.F. White, Inc.*, 267 A.D.2d 443, 444, 700 N.Y.S. 2d 487, 488 (2d Dep't 1999) ("The Supreme Court erred in failing to dismiss the plaintiff's causes of action [for unpaid commissions] pursuant to Labor Law article 6 insofar as asserted against the individual defendants. The Legislature clearly intended that corporate officers not be subjected to civil liability under that article of the Labor Law."); *Andux v. Woodbury Auto Park, Inc.*, 30 A.D.3d 362, 816 N.Y.S.2d 181 (2d Dep't 2006) (holding individual was not liable pursuant to Labor Law Article 6 for the obligations of the corporate defendant).[3]

Plaintiffs may seek to circumvent *Patrowich* and *Stoganovic* by arguing that they do not seek to hold Mr. Tang liable as an agent of Shanghai Café, but rather because he was the plaintiffs' employer within the meaning of NYLL. While an individual can certainly be an employer under NYLL, the flaw in plaintiffs' argument is that there is no allegation (let alone

---

[3] The Second Circuit has not ruled upon the *Stoganovic/Patrowich* interpretation of the NYLL. Although some district court decisions involving hybrid FLSA/NYLL claims have extended NYLL liability to individuals, those decisions typically fail to distinguish or even cite *Stoganovic* and *Patrowich*. *See, e.g., Michalek v. Amplify Sports and Entm't LLC*, 2012 U.S. Dist. Lexis 85727, at *8 (S.D.N.Y. June 20, 2012) ("In determining whether a person is an 'employer' for purposes of the Labor Law, courts use an 'economic reality' test similar to that used under the Fair Labor Standards Act."); *Flannigan v. Vulcan Power Group, LLC*, 712 F. Supp. 2d 63, 68-69 (S.D.N.Y. 2010) ("Since [company defendants] are both limited liability companies, their corporate officers can come within this definition [N.Y. Labor Law § 193(3)] if they are proven to be Plaintiff's employers."); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); *Robles v. Copstate Sec., Inc.*, 2009 U.S. Dist. LEXIS 54963, *12-13 (S.D.N.Y. June 29, 2009) (declining to apply the FLSA definition of an employer, explaining "the told of this Court is to 'anticipate how the New York Court of Appeals would resolve this issue,' . . . and the narrower definition of employer conforms to Court of Appeals jurisprudence.")

proof) that Mr. Tang was involved with the workers in his personal capacity. Plaintiffs' make allegations that Mr. Tang directed them in their employment with Shanghai Café (e.g., to hand out Shanghai Café menus to the restaurant customers, paid them for their work at Shanghai Café, set their schedules for employment at Shanghai Café, etc.). None of the Plaintiffs contend that they performed services directly for Mr. Tang in his individual capacity, worked at Mr. Tang's home (or even in any of the businesses he does control), or were paid with Mr. Tang's personal assets. In short, Plaintiffs may not avoid the holdings of *Patrowich* and *Stoganovic* by dint of substituting prepositions to claim that Mr. Tang is liable "as the employer" rather than "for the employer."

As properly interpreted and applied, New York Labor Law does not impose personal civil liability on owners or managers of corporations. Accordingly, Mr. Tang is entitled to summary judgment on plaintiffs' state law claims asserted in Causes of Action Three through Six.

### C. Mr. Tang Is Not Any Plaintiffs' Employer for Purposes of the FLSA

Plaintiffs' first and second claims are for minimum wages and overtime under the FLSA. As to these claims, Mr. Tang is entitled to summary judgment because, while the FLSA has been interpreted to impose liability on individuals where the economic realities establish that the individual served as an employer, plaintiffs' evidence falls woefully short of meeting that standard. Despite the FLSA's laudable goal of protecting workers, the law does make everyone remotely associated with a corporation with liability for unpaid wages based on their deep pockets. Individual liability under the FLSA is premised upon "personal responsibility for making decisions about the conduct of the business that contributed to the violations of the Act." *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 678 (1st Cir. 1998). Mr. Tang was a mere bystander.

The Second Circuit has not propounded a definitive test for determining whether an individual is liable under the FLSA for what may be ruinous damages.[4]  It has noted, however, that "[t]he overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye toward the 'economic reality' presented by the facts of each case." *Herman v. RSR Sec. Servs.*, 172 F. 3d 132, 139 (2d Cir. 1999).  Under the so-called "economic reality" test, courts consider whether the putative employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Id.*

In analyzing these factors, "the term 'employer' under the FLSA has been interpreted to include individuals with substantial control over the aspect of employment alleged to have been violated but not those who do not control the terms and conditions of employment." *Diaz v. Consortium for Worker Educ., Inc.*, 2010 U.S. Dist. LEXIS 107722, at *7 (S.D.N.Y. Sept. 28, 2010) (citation omitted).  Theoretical control or authority is insufficient. *See Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1161 (11th Cir. 2008) (finding "[u]nexercised authority is insufficient to establish liability as an employer").[5]  Mr. Tang did not exercise substantial control over the wages and hours of employment of any of the five plaintiffs.

---

[4] The issue may be pending before the Circuit Court in *Torres v. Gristedes Operating Corp.*, 11-CV-4035.

[5] Just as theoretical control or authority is insufficient to establish an individual is an employer, control or authority unrelated to the alleged wage violation is irrelevant to the analysis.  For example, the Director of Sales, even if an FLSA employer of the salespersons, cannot reasonably be liable for wages sought by warehouse workers.  Likewise, if the Director of Sales is demoted in 2007, then he would not be an "employer" of the salespersons in 2010.  Here, plaintiffs must prove that Mr. Tang was their employer during the alleged period of FLSA violations – e.g., the two years prior to commencement of this action.  Because this action was commenced on November 6, 2010, Mr. Tang's alleged actions on or before November 6, 2008 are not relevant to his status as an FLSA employer. *See Xelo v. Mavros*, 2005 U.S. Dist. LEXIS 21588, *3 n.2 (E.D.N.Y. Sept. 28, 2005) (finding plaintiff's employment prior to the applicable FLSA statute of limitations period was irrelevant for purposes of determining FLSA liability).

### 1.    Mr. Tang Is Not An Owner Or Employee Of Shanghai Café

Mr. Tang was not employed by Shanghai Café and plaintiffs do not contend otherwise. Rather, plaintiffs and their supporters repeatedly parrot the refrain that "everyone knows" Mr. Tang was the "big boss" (or biggest shareholder) of Shanghai Café. But there is not an iota of admissible evidence to substantiate that assertion. The corporate records show no such ownership. And Grace Lau, the acknowledged owner of Shanghai Café, testified that Mr. Tang was not an owner of Shanghai Café.[6]

During the course of discovery, plaintiffs left no stone unturned in their pursuit of evidence of ownership, obtaining corporate records, wage documents, tax records, health department records, bank records, insurance contracts, property leases, utility bills and purveyor invoices. None of these documents creates an inference that Mr. Tang was an owner of Shanghai Café. Further, none of the plaintiffs – and none of the many individuals plaintiffs deposed – had any personal knowledge of the ownership of Shanghai Café.

Plaintiffs may allege that Mr. Tang told Wing Lam, President of the Chinese Staff Workers Association, who acted as an agent for the plaintiffs in this litigation, that he owned shares of the restaurant. Mr. Tang did speak with Mr. Lam about settling the plaintiffs' claims, but never said he was an owner of the restaurant. (Deposition of Mooi Yang 56:18-57:3;[7] Marks

---

[6] Ms. Lau testified that Ms. Ku and she were the shareholders of Shanghai Café. (Deposition of Grace Lau 17:12-15; Affidavit of Andrew Marks dated January 15, 2013 ("Marks Aff.") Ex. B). Excerpts from the transcript of Defendant Grace Lau's November 3, 2011 deposition are attached as Exhibit "A" to the Marks Aff., and are hereinafter cited as follows: "Lau Dep. [Page(s): Line(s)]." Ms. Lau also testified that Mr. Tang was not a boss or even an employee, and that the real bosses were Ms. Ku and herself. (Lau Dep. at 38:6-8; 44:12-15; 60:19-24). Similarly, Ms. Lin testified that Ms. Lau and Ms. Ku were the bosses of Shanghai Café. (Deposition of Ping Lin 15:21-25). Excerpts from the transcript of Defendant Ping Lin's February 7, 2012 deposition are attached as Exhibit "C" to Marks Aff. and are hereinafter cited as follows: "Ling Dep. [Page(s): Line(s)]."

[7] Excerpts from the transcript of Mooi Yang's November 16, 2011 deposition are attached as Exhibit "R" to Marks Aff. and are hereinafter cited as follows: "M. Yang Dep. [Page(s): Line(s)]."

Aff. Exs. Q, No. 8 and S, No. 8; Deposition of Joseph Tang 120:20-24).[8]  What Mr. Tang said was that he wanted to settle his share of this litigation, not his shares of the restaurant.  (Tang Dep. 119:10-120:2, 120:20-24, 123:4-10; M. Yang Dep. 60:15-20).  A tape recording plaintiffs surreptitiously made of the meeting between Mr. Tang and Mr. Lam confirms Mr. Tang's interpretation.  (*See* Deposition of Wing Lam 77:9-17;[9] Marks Ex. U).

Regardless, Mr. Lam's testimony is inadmissible at trial because Mr. Tang's statements were made during the course of settlement discussions.  Federal Rule of Evidence 408 provides that evidence of statements made during compromise negotiations about the claim are not admissible to prove the validity of that claim.  *See, e.g.*, *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989) (excluding evidence of settlement discussions when offered as evidence satisfying the statute of frauds); *Sanders v. Madison Sq. Garden, L.P.*, 525 F. Supp. 2d 364, 369 (S.D.N.Y. 2007) ("the use of settlement discussions in litigation will make parties reluctant to engage in such negotiations, and ... are too tightly bound to the incentive to avoid litigation to cast much light on the underlying merits of a case"); *Victor G. Reiling Associates and Design Innovation, Inc. v. Fisher-Price, Inc.*, 407 F. Supp. 2d 401 (D. Conn. 2006) (granting motion to preclude evidence consisting of, *inter alia*, statements made by defendant during meetings held to negotiate a potential settlement of the case).  Accordingly, Mr. Tang's supposed statement to Mr. Lam cannot be used by plaintiffs to prove ownership.

Plaintiffs also may argue that Ms. Lau said that Mr. Tang was "lo-ban," loosely translated as the "big boss."  Ms. Lau denies making any such statements.  (Lau Dep. 28:12-17).  Plaintiffs' testimony about what Ms. Lau said is textbook hearsay: "a statement, other than one made by the

---

[8] Excerpts from the transcript of Defendant Joseph Tang's April 25, 2012 deposition are attached as Exhibit "D" to the Marks Aff., and are hereinafter cited as follows: "Tang Dep. [Page(s): Line(s)]."

[9] Excerpts from the transcript of Wing Lam's June 28, 2012 deposition are attached as Exhibit "T" to Marks Aff.

declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).[10]   Hearsay evidence may not be considered on a motion for summary judgment.   *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("Only admissible evidence need be considered by trial court in ruling on [a] motion for summary judgment").   However, even if plaintiffs' testimony regarding what Ms. Lau allegedly told them was admissible, it does not constitute evidence that Mr. Tang was either an owner or manager of Shanghai Café.   In the Chinese culture, referring to an individual as "lo-ban" is a respectful way in which to address an individual, and is not necessarily used to literally mean boss or owner. (*See* March 4, 2011 Declaration of Michael Marme, ¶ 6).[11]   Ms. Lau's testimony that Mr. Tang was neither an employee nor owner of the restaurant, undermines the inference that she would have used the term to mean that Mr. Tang actually was an owner or boss of Shanghai Café.   (Lau Dep. 44:24-45:3; 60:19-24).   Likewise, plaintiffs' perception that Mr. Tang was the big boss is mere conclusion and irrelevant to the actual fact of whether he was in fact a legal employer under the FLSA.   *See Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281, 291 (E.D.N.Y. 2002), *modified on other grounds*, 66 Fed. Appx. 261 (2d Cir. 2003) (individual was not an employer even though employees believed the individual was a boss).

It is plaintiffs' burden at trial to prove that Mr. Tang was an employer of all or any of them.   As discussed below, shareholders are not personally liable for the actions of the

---

[10] Hearsay statements of one defendant cannot be used as evidence against another defendant.   *See Raskin*, 125 F.3d at 66.   Nor does the co-conspirator exception to the hearsay rule, Fed. R. Evid. 801(d)(2)(E), apply here.   Before this exception may be relied upon, plaintiffs must establish through independently admissible evidence that there was a conspiracy between Mr. Tang and Ms. Lau, and that her statement was made in furtherance of that conspiracy.   *See United States v. Terry*, 702 F.2d 299, 320 (2d Cir. 1983) (finding there must be independent non-hearsay evidence that defendant was part of a conspiracy prior to considering a hearsay statements of a co-conspirator).   Ms. Lau's reference to Mr. Tang as big boss would not further the conspiracy regarding the payment of wages.

[11] Michael Marme's declaration is attached as Exhibit "E" to Marks Aff.

corporation; so proof of ownership by Mr. Tang would not be dispositive of his liability.  But the absence of ownership, is dispositive.  The absence of such ownership (coupled with the admitted lack of employee status) precludes the possibility that a fact finder reasonably could determine that Mr. Tang possessed actual authority over the plaintiffs' wages and working conditions.  Summary judgment, therefore, should be granted to Mr. Tang.[12]

### 2. Mr. Tang Did Not Control Plaintiffs' Wages or Hours

Even if plaintiffs were able to show that Mr. Tang had an ownership interest in Shanghai Café, that would not be sufficient to establish liability.  A corporate owner is not a statutory employer unless he exercises the requisite control over the employees and policies at issue.[13]  *See Heng Chan v. Sung Yue Tung Corp.*, 2007 U.S. Dist. LEXIS 7770, at *37 (S.D.N.Y. Feb. 1, 2007) (dismissing a wage claim against a shareholder who's "investment did not carry with it managerial responsibility"); *Jankowski v. Castaldi*, 2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. Jan. 11, 2006) (dismissing the case as to the individual defendant who did not participate in the operation of the business); *Bravo v. Eastpoint Int'l, Inc.*, 2001 U.S. Dist. LEXIS 3647 (S.D.N.Y. Mar. 30, 2001) (dismissing wage and hour claims against the owner and chairperson individually, holding that the fact that she was the owner and chairperson of the company alone was insufficient to hold her liable as an "employer").

Further, exercising the requisite control over the employees or policies at issue requires more than making recommendations on the same.  As the court held in *In re Enter. Rent-A-Car*,

---

[12] Plaintiffs allege in the Amended Complaint that Mr. Tang is, or has been, an owner of Shanghai Café Deluxe. (Am. Cplt. ¶ 94.) Just as with their allegations relating to Shanghai Café, plaintiffs present no evidence demonstrating Mr. Tang was a shareholder, owner or officer of Shanghai Café Deluxe.  No plaintiff even testified that Mr. Tang was an owner of Shanghai Café Deluxe.  There is simply no evidence demonstrating Mr. Tang has any connection with Shanghai Café Deluxe.

[13] The State of New York does impose liability for unpaid wages on the ten largest shareholders of privately held corporations.  *See* N.Y. BCL § 630.  The legislative imposition of such express liability should preclude the judicial imposition of similar liability by implication under the wage payment laws.

683 F.3d 462 (3d Cir. 2012), the parent company's recommendations to a subsidiary were nothing more than suggestions which did not support a finding that the parent company was an employer of the subsidiary's employees.  The court explained that the parent company "had no more authority over the conditions of the assistant managers' employment than would a third-party consultant who made suggestions for improvements to the subsidiaries' business practices." *Id.* at 471.

Similarly, informing an employee of the terms and conditions of their employment is not the legal equivalent of determining such terms and conditions.  Employer status under the FLSA under the economic reality test requires control that is "actual" rather than "theoretical"; "integral" to the alleged FLSA violation rather than "peripheral or occasional"; and particular to the workers in question.  Communication of decisions made by others is not actual control.  For example, in *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 314-15 (S.D.N.Y. 2011), an individual whom employees perceived as an owner of a restaurant run by his wife and son, was not an "employer" under the FLSA, although he instructed employees about certain aspects of the business; was present at salary discussions; met with the managers of the business; and told a manager to suspend the plaintiff.  This Court found that simply because the defendant told employees how they could improve the restaurant, it did not mean that he exerted the sort of control expected of an FLSA employer.

In *Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281, 291 (E.D.N.Y. 2002), *modified on other grounds*, 66 Fed. Appx. 261 (2d Cir. 2003), an individual was not an employer, even though he was at the employer's premises, occasionally gave employees orders or directions, attended some employee meetings and employees believed he was a boss.  The Secretary of Labor failed to prove that the individual defendant held "an integral role in the [defendant's] operations, or in

16

setting work policies, schedule or conditions of employment." *See Solis v. Cindy's Total Care, Inc.*, 2012 U.S. Dist. LEXIS 1808 (S.D.N.Y. Jan. 5, 2012) (finding defendant who assisted in the management was not an employer because he did not engage in any independent managerial control over employees); *Sampson v. MediSys Health Network, Inc.*, 2012 U.S. Dist. LEXIS 103052, *13-14 (E.D.N.Y. July 24, 2012) (dismissing claims against individual defendants who lacked operational control over the workers in question); *Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247 (5th Cir. 2012) (finding individual defendants were not FLSA employers because they did not independently exercise control over plaintiffs); *Gray v. Powers*, 673 F.3d 352, 355-56 (5th Cir. 2012) (finding a status-based inference of control – defendant had authority to hire and fire merely because he was a member and officer of the company – cannot alone suffice to create a genuine fact issue that defendant had the power to hire and fire the employees in question).

In *Mendez v. Pizza on Stone, LLC*, 2012 U.S. Dist. LEXIS 108591 (S.D.N.Y. Aug. 1, 2012), this Court granted summary judgment to two individual defendants, even though the defendants interviewed the plaintiff, the plaintiff reported to the two individual defendants, the individual defendants paid the plaintiff and one individual defendant told the plaintiff that he (plaintiff) was not getting a raise. This Court explained that:

> [a]t most, this evidence shows that [the individual defendants] provided assistance to [the corporate defendant's] management in its hiring process, communicated management policies on wages and hours to employees, and on occasion exercised delegated authority in setting employee work schedules. This evidence is insufficient to create a question of material fact as to whether [the individual defendants] "possessed the power to control" [plaintiff] and satisfy the "economic reality" test.

*Mendez*, 2012 U.S. Dist. LEXIS 108591 at *4-5.

When the specific incidents of Mr. Tang's alleged control of each plaintiff are analyzed, it is clear that no plaintiff can prove that the economic reality is such that Mr. Tang can be held liable as his or her employer. Plaintiffs fail to show that Mr. Tang engaged in independent managerial control over them, as opposed to assisting Ms. Lau and Ms. Ku with their management and ownership duties and occasionally communicating their decisions to the plaintiffs.

### a. Defendant Tang Did Not Control Zu Guo Yang

Z. Yang worked as a chef at Shanghai Café from in or about March 2006 until June 8, 2010. (Deposition of Zuo Guo Yang 13:8-10; 23:9)[14]. Ms. Lau and Ms. Ku made all employment decisions relating to Z. Yang's employment with Shanghai Café. Ms. Lau and Ms. Ku interviewed and hired Z. Yang. (Z. Yang Dep. 13:23-14:3, 14-16; Marks Aff. Ex. K, No. 1). Mr. Tang did not interview Z. Yang even though Z. Yang recalls that Mr. Tang happened to be at the restaurant at the time. (Z. Yang Dep. 14:9-13). Ms. Lau and Ms. Ku decided and informed Z. Yang of his salary. (Z. Yang Dep. 16:7-11, 18-21). Ms. Lau and Ms. Ku also paid Z. Yang his salary. (Z. Yang Dep. 22:10-23:8). Ms. Lau and Ms. Ku set Z. Yang's work schedule. (Z. Yang Dep. 18:18-22; Marks Aff. Ex. K, No. 2). Ms. Lau and Ms. Ku supervised Z. Yang's work. (Z. Yang Dep. 17:13-21 Dep. 17:5-14 Z. Yang Dep. 21:7-22:9). Ms. Lau also informed Z. Yang that his employment was ending. (Z. Yang Dep. 23:14-24; Marks Aff. Ex. K, No. 6). Z. Yang clearly understood that Ms. Lau and Ms. Ku were his two bosses:

> Q. Who did you report to at the restaurant?
> A. The boss.
> Q. Who is the boss?
> A. Ms. Ku and Grace Lau.

---

[14] Excerpts from the transcript of Zu Guo Yang's November 15, 2012 deposition are attached as Exhibit "H" to Marks Aff. and are hereinafter cited as follows: "Z. Yang Dep. [Page(s): Line(s)]."

Q.      Anyone else?

A.      No.

Q.      Who supervised you at the restaurant?

A.      We are just workers.  We are supervised by the boss.

Q.      Who's the boss?

A.      Grace Lau and Ms. Ku.

Q.      Anyone else?

A.      No.

(Z. Yang Dep. 17:5-21).

Z. Yang did not have any knowledge as to whether Mr. Tang had authority to hire or fire employees at Shanghai Café Inc. (Z. Yang Dep. 18:23-21:6).  And, other than asking Z. Yang to cook a fish Mr. Tang had brought, Z. Yang was unable to identify any specific thing Mr. Tang did in the kitchen, basement or any other area of Shanghai Café Inc. (Z. Yang Dep. 42:2-43:23; 45:9-14).[15]

Simply put, according to Z. Yang's admissions, Mr. Tang did not hire, fire, pay, schedule or supervise Z. Yang.  There is just no evidence to support the conclusion that Mr. Tang was or could have ever been Z. Yang's employer as defined by the FLSA and NYLL.  As such, the Court should find that Mr. Tang is not Z. Yang's employer and should dismiss all of Z. Yang's claims against Mr. Tang.

---

[15]  Merely asking Z. Yang to cook a fish is not indicative of control sufficient to find that Mr. Tang is an employer.  Mr. Tang asked chefs in many restaurants to cook fish for him – which is not an uncommon practice in the Chinese culture.  In fact, Mr. Tang has frequently brought his own food into Chinese restaurants, entering the kitchen and discussing with the chef how to prepare it for him.  *See* Affidavit of Peter How dated February 8, 2012 ("How Aff."), annexed to Marks Aff. as Ex. J.

### b.    Defendant Tang Did Not Control Xiao Hong Wang

Wang worked as a cook at Shanghai Café. (Deposition of Xiao Hong Wang 6:22-24; 7:8-10;[16] Marks Aff. Ex. L, Nos. 1 and 6). Ms. Lau, Ms. Ku, Master Chef Li and/or Ms. Lin made all of employment decisions concerning Wang's employment with Shanghai Café. Wang was first hired in June 2004. Ms. Lau spoke with and interviewed Wang when he first visited Shanghai Café to apply for employment. (Wang Dep. 7:17-19; 8:6-9; 9:22-24; 10:8-11; Marks Aff. Ex. L, No. 1). Wang's interview consisted of Master Chef Li asking Wang to cook so that Master Chef Li could observe Wang cooking. (*Id.*). Thereafter, Master Chef Li approved hiring Wang and Ms. Lau told Wang he could start work the next day. (*Id.*). Ms. Lau and Ms. Ku paid Wang during his employment. (Wang Dep. 14:10-16; Marks Aff. Ex. L, No. 5). Ms. Lau informed Wang of his work schedule. (Wang Dep. 21:12-17). Master Chef Li supervised Wang and Wang only reported to Master Chef Li. (Wang Dep. 15:23-16:5).

In March 2005, Wang quit his employment with Shanghai Café. (Wang Dep. 35:2-7; 36:10-13). In March 2006, Ms. Lin contacted Wang and asked him to return to Shanghai Café. (Wang Dep. 37:17-38:3). Ultimately, Ms. Lin rehired Wang to work for Shanghai Café in March 2006. (Wang Dep. 37:17-38:6). Wang worked for Shanghai Café until on or around June 7, 2010, when Ms. Lau informed Wang that the restaurant was closing. (Marks Aff. Ex. L, No. 6).

Wang affirmed in two separate interrogatories, before and after his deposition, that he met with Ms. Lau when he first visited Shanghai Café in 2004 and that she is the one who told him that he could start work the next day. (Marks Aff. Exs. L, No. 1 and M, No. 2). Yet at his deposition, Wang claimed that it was Mr. Tang who interviewed him and told him to come to

---

[16] Excerpts from the transcript of Xiao Hong Wang's November 15, 2012 deposition are attached as Exhibit "K" to Marks Aff. and are hereinafter cited as follows: "Wang Dep. [Page(s): Line(s)]."

work the next day.  (Wang Dep. 7:17-19; 11:12-13).  A party cannot create an issue of fact for trial by contradicting himself.  *See Reynolds v. Sealift, Inc.*, 311 Fed. Appx. 422, 425 (2d Cir. 2009) (disregarding affidavits that contradicted the affiants' prior testimony).  Nonetheless, Wang's claim that Mr. Tang interviewed him, even if true, is insufficient to establish that Mr. Tang made the decision to hire Wang.  Furthermore, events occurring in 2004 are not evidence of Mr. Tang's authority during the applicable limitations period.  *See Xelo*, 2005 U.S. Dist. LEXIS 21588 at *3 (excluding plaintiff's employment history prior to the FLSA statute of limitations).

Wang also claims that Mr. Tang told him how much he would be paid in July 2004 and that Mr. Tang paid him at times.  (Wang Dep. 13:10-12; 14:7-16).  Wang, however, testified that he did not know who decided how much he would be paid and that he did not recall any details of Mr. Tang's alleged payments to him.  (Wang Dep. 13:20-23; 14:7-16).  Wang's vague testimony that Mr. Tang told him how much he would be paid and sometimes paid him cannot support a finding that Mr. Tang was Wang's employer because it does not support that Mr. Tang determined Wang's rate of pay.

There is no credible evidence that Mr. Tang hired or fired Wang, that he supervised or controlled Wang's schedule or conditions of employment, that he set Wang's rate or method of payment or that he maintained employment records for Wang.  Therefore, as defined by the FLSA and NYLL, there is no evidence to support that Mr. Tang was ever Wang's employer.  As such, the Court should find that Mr. Tang is not Wang's employer and should dismiss all of Wang's claims against Mr. Tang.

c.      **Defendant Tang Did Not Control Plaintiff Bao Lan Deng**

Deng worked as a dim sum maker at Shanghai Café from October 2005 to June 8, 2010. (Deposition of Bao Lan Deng 8:14-22[17]).  Ms. Lau, Ms. Ku and Ms. Lin made all employment decisions relating to Deng's employment with Shanghai Café.  Ms. Lau and Ms. Ku interviewed and hired Deng.  (Deng Dep. 98:23-99:4; Marks Aff. Exs. M, No. 2 and O, No. 1).  Deng always thanked Ms. Ku for all of the raises she received during her employment.  (Deng Dep. 40:19-41:6, 14-23).  Ms. Lau informed Deng of changes to her schedule during her employment. (Deng Dep. 32:18-22).  Ms. Lin supervised Deng's work.  (Deng Dep. 32:6-8; 122:19-123:8). Ms. Lau also informed Deng that Shanghai Café was closing and that as a result Deng's employment was terminated.  (Deng Dep. 74:8-11).  Mr. Tang was not around when Ms. Lau announced the restaurant's closing.  (Deng Dep. 74:10-13).

Deng alleges Mr. Tang is her employer because Mr. Tang: informed her of her schedule when she first started in October 2005;[18] asked her if the restaurant was busy;[19] asked her to do some cleanup work if the restaurant was not busy; and fired an employee.  None of these allegations, even if true, satisfy Deng's burden of proof that Mr. Tang was her employer.

Deng claims that Mr. Tang informed her of her schedule when she first started working at Shanghai Café in 2005.  (Deng. Dep. 69:17-22).  However, this allegation cannot support that Mr. Tang is Deng's employer as it is well beyond the statute of limitations.  *See Xelo*, 2005 U.S.

---

[17] Excerpts from the transcript of Bao Lan Deng's January 24, 2012 deposition are attached as Exhibit "N" to Marks Aff. and are hereinafter cited as follows: "Deng Dep. [Page(s): Line(s)]."

[18] Deng's statements regarding who arranged her schedule are inconsistent.  In her responses to Mr. Tang's interrogatories before her deposition she stated that she did not know who created her schedule, however, in her deposition she alleged that Mr. Tang arranged her schedule.  (Marks Aff. Ex. O; Deng Dep. 69:2-5).

[19] Deng also testified during her deposition that she never spoke with Mr. Tang during her employment at Shanghai Café.  (Deng Dep. 43:15-24; 44:1-3).  After a lunch break, however, Deng claimed that she did speak with Mr. Tang during her employment.

Dist. LEXIS 21588 at *3.  Moreover, merely informing Deng of her schedule does not mean Mr. Tang actually set or created her schedule.  Deng also claims Mr. Tang asked her to "do some cleanup work" if she was not busy.  (Deng Dep. 71:5-8; 85:9-14).  This claim is insufficient to establish that Mr. Tang supervised and controlled her hours or pay.  Even if it were considered "supervision," this single isolated directive is insufficient to establish the necessary control to consider Mr. Tang Deng's employer.  *See Chao*, 196 F. Supp. 2d 281.

Last, Deng claims Mr. Tang is her employer because in March 2006, Mr. Tang fired an employee named Master Ding.  (Deng Dep. 45:18-21).  Deng alleges she heard Ms. Lin ask Mr. Tang to fire Master Ding.  (Deng Dep. 53:20-24).  However, Deng did not hear Mr. Tang say anything in response to Ms. Lin's request nor did she observe Mr. Tang fire Master Ding.  (Deng Dep. 53:20-24; 63:22-64:1).  Deng's speculation that Mr. Tang fired Master Ding is not admissible evidence.  *See Williams v. Skyline Auto. Inc.*, 2012 U.S. Dist. LEXIS 74864, at *3-4 (S.D.N.Y. May 30, 2012) (explaining that the "non-moving party . . . cannot 'rely on . . . unsubstantiated speculation'").  Moreover, even if Mr. Tang fired Master Ding, it still does not support the claim that Mr. Tang was Deng's employer because it is unrelated to Deng and does not demonstrate Mr. Tang had authority to fire Deng.

Accordingly, as Mr. Tang did not hire, fire, supervise or set Deng's pay or schedule, there is no basis to support a finding that Mr. Tang was Deng's employer as defined by the FLSA and NYLL.  As such, the Court should find that Mr. Tang is not Deng's employer and should dismiss all of Deng's claims against Mr. Tang.

**d.      Defendant Tang Did Not Control Plaintiff Cindy Chan**

Chan worked as a server at Shanghai Café from in or about March 2003 until June 7, 2010.  (Deposition of Cindy Chan 20:3-5; 43:4-20;[20] Marks Aff. Ex. P, No. 6).  Ms. Ku interviewed and hired Chan.  (Chan Dep. 20:3-5; 43:13-20; Marks Aff. Ex. M, No. 1, and Ex. Q, No. 1).  Ms. Ku informed Chan of her work schedule.  (Marks Aff. Ex. Q, No. 2).  If Chan needed to change her schedule, she would ask Ms. Ku for permission.  (Marks Aff. Ex. Q, No. 2).  Ms. Lau and Ms. Ku signed all of the Chan's payroll checks.  (Chan Dep. 76:22-24; Marks Aff. Ex. Q, No. 5).  Chan also received tips from the Shanghai Café's tip pool, which Ms. Lau and Ms. Ku managed.  (Chan Dep. 96:12-18).  Ms. Lau and Ms. Ku also supervised Chan. (Marks Aff. Ex. M, No. 4 and Ex. Q, No. 3).  Ms. Lau told Chan that Shanghai Café was closing, effectively terminating Chan's employment.  (Chan Dep. 43:4-12; Marks Aff. Ex. Q, No. 6). Ms. Ku paid Chan her final salary.  (Marks Aff. Ex. Q, No. 6).  Chan was well aware that Ms. Lau and Ms. Ku managed and controlled Shanghai Café.  In fact, Chan testified that Ms. Lau told her that Ms. Ku was responsible for Shanghai Café's finances and that Ms. Lau was responsible for everything else at the restaurant.  (Chan Dep. 41:18-42:1).

Chan alleges Mr. Tang was her employer because at times, she observed Mr. Tang showing customers to tables or assisting with the cash register.  Chan also alleged Mr. Tang supervised her and that he fired three individuals.  Chan's allegations concerning Mr. Tang are insufficient to support at finding that Mr. Tang was her employer.

Chan testified that at times she observed Mr. Tang showing customers to tables and assisting with the cash register.  (Chan Dep. 83:20-84:9).  Even if true, seating customers and working a cash register provide evidence of nothing more than Mr. Tang helping at Shanghai

---

[20] Excerpts from the transcript of Cindy Chan's December 19, 2011 deposition are attached as Exhibit "P" to Marks Aff. and are hereinafter cited as follows: "Chan Dep. [Page(s): Line(s)]."

Café.  Mere assistance at a restaurant does not establish that an individual is an employer.  *See Chao*, 196 F. Supp. 2d 281; *Copantitla*, 788 F. Supp. 2d at 314.

Chan also testified that Mr. Tang supervised her by telling her when customers were ready to order and when customers were asking for silverware.  (Chan Dep. 42:2-10).  Chan also alleges that Mr. Tang told her to bring water, tea or forks to customers on two or three occasions, and to provide more customer service.  Mr. Tang's alleged supervision of Chan amounts to nothing more than providing help (helping a customer get Chan's attention) and general advice on how to better perform her job.[21]  Again, these allegations cannot serve as evidence to support Mr. Tang was Chan's employer because they fail to support that Mr. Tang exercised sufficient control over Chan.  *See Chao*, 196 F. Supp. 2d 281; *Copantitla*, 788 F. Supp. 2d at 314.

Last, Chan claims Mr. Tang fired an unnamed kitchen employee in 2003, an individual named Ding, and Ms. Ku's nephew.  (Chan Dep. 98:15-22; 99:8-16; 117:16-19).  Chan could not testify as to any of the circumstances of the termination of the unnamed employee in 2003.  (Chan Dep. 98:15-99:9).  Moreover, even if true, this alleged termination is well beyond the statute of limitations.  With respect to Mr. Ding, Chan testified that she did not see or hear Mr. Tang fire Mr. Ding.  Chan only alleges that she heard Mr. Tang tell Ms. Lin "all right, you let Ding go."  (Chan Dep. 117:20-22).  Similarly, Chan did not observe or hear Mr. Tang fire Ms. Ku's nephew.  Instead, Chan alleges she heard Mr. Tang tell Ms. Ku's nephew, "if you want to stay, you can stay; if you don't like the job here, you don't want to come on time, then you quit."  (Chan Dep. 103:8-10).  Chan's vague and speculative testimony cannot serve as evidence that Mr. Tang is her employer.  Even if her allegations were true, they fail to establish how Mr. Tang had sufficient control over her employment to constitute her employer.

---

[21] Mr. Tang also provided advice to employees of other restaurants.  *See How Aff.* ¶ 5.

Simply put, by Chan's own testimony, Mr. Tang did not hire, fire, pay, schedule or supervise her employment. Additionally, Mr. Tang did not maintain any employment records for Chan. There is no evidence to support the conclusion that Mr. Tang was or could have ever been Chan's employer as defined by the FLSA and NYLL. As such, the Court should find that Mr. Tang is not Chan's employer and should dismiss all of Chan's claims against Mr. Tang.

### e.     Defendant Tang Did Not Control Plaintiff Mooi Yang

M. Yang worked as a server at Shanghai Café from in or about September 2005 to June 8, 2010. (M. Yang Dep. 15:9-10, 15-18; 48:3-5). Ms. Lau interviewed M. Yang. (Marks Aff. Ex. S, No. 1]). M. Yang provided employment information to Ms. Ku. (M. Yang Dep. 16:3-10; 16:24-17:6). Ms. Lau and Ms. Ku told M. Yang when to take breaks during her shift. (M. Yang Dep. 26:13-18). Ms. Lau and Ms. Ku supervised M. Yang. (M. Yang Dep. 19:14-20). In addition to a salary, M. Yang received tips, which Ms. Lau usually counted. (M. Yang Dep. 33:19-22). Ms. Ku also paid M. Yang her final wages. (M. Yang Dep. 48:21-24).

Mr. Tang was not involved in setting M. Yang's rate of pay or schedule. (M. Yang Dep. 55:22-56:9; Marks Aff. Ex. S, No. 2). Mr. Tang never required M. Yang to complete any paperwork. (M. Yang Dep. 56:10-13). Mr. Tang also had no involvement in the termination of M. Yang's employment and was not present when the restaurant closed. (Marks Aff. Ex. S). Mr. Tang did not hire any Shanghai Café employees and never had any involvement with Shanghai Café's tip pool. (M. Yang Dep. 27:12-28:3; 33:19-34:6).

M. Yang claims Mr. Tang is her employer because she alleges Mr. Tang interviewed and hired her in September 2005; occasionally paid employees; told her once, in September 2005, that she needed to come in earlier on weekends; fired Chef Gu and another employee in September 2005; once required her to pay back a wage overpayment in 2007; and helped by accepting money, showing customers to tables and sending employees to get noodles when the

26

restaurant was short.   M. Yang also claims Mr. Tang supervised her by pointing out when customers needed her, when she did not clean a table well, when her work was slow, when she would forgot to get a customer's phone number, when the bathroom was stuck or overflowing and by telling her that she should treat customers well.   All of these allegations fail to provide any support that Mr. Tang was M. Yang's employer.

All of M. Yang's allegations prior to November 7, 2008 are outside the applicable limitations period.   *See Xelo*, 2005 U.S. Dist. LEXIS 21588 at *3.   Additionally, M. Yang's allegations with respect to Mr. Tang occasionally paying employees, showing customers to tables and sending employees to get noodles, even if true, demonstrates nothing more than Mr. Tang provided some assistance to Shanghai Café, a restaurant owned and managed by his friend and ex-wife.   Finally, M. Yang's claims concerning Mr. Tang's supervision of her employment amount to nothing more than general advice on how to better perform her job.   Apart from M. Yang's untimely and conclusory assertion that Mr. Tang hired her, M. Yang presents no evidence to support Mr. Tang was or could have ever been her employer.   Even if true, evidence of only one factor of the economic realities test is insufficient to establish an individual is an employer.   *See Martin*, 688 F.3d 247.   As such, the Court should find that Mr. Tang is not M. Yang's employer and should dismiss all of M. Yang's claims against Mr. Tang.

### III.   CONCLUSION

The admissible evidence and the reasonable inferences that may be drawn therefrom show only that Mr. Tang visited Shanghai Café; entered the kitchen and the basement office; spoke with the owners and employees of the restaurant; and made a handful of suggestions to improve the food and the service.   These incidents are entirely consistent with his status as a gregarious man, respected member of the Chinese restaurant industry, an experienced restaurant owner, a major supplier, ex-business partner and ex-husband.   Indeed, Mr. Tang has behaved in a

similar manner at other restaurants in the city.   Reputation and status are not sufficient grounds on which to base liability for unpaid wages.

There is insufficient admissible relevant evidence to support a finding that Mr. Tang was plaintiffs' employer.   As such, the Court should find that Mr. Tang is not any plaintiffs' employer and dismiss plaintiffs' claims against him.

Date:   January 15, 2013
New York, New York

 s/Andrew P. Marks_____
Andrew P. Marks
Elena Paraskevas-Thadani
Adam Colón
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022.3298
212.583.9600

Attorneys for Defendant
Joseph Tang