UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
ZU GUO YANG, XIAO HONG WANG, BAO
LAN DENG, CINDY CHAN, MOOI YANG, LING MEI
ZHANG,

                Plaintiffs,              Case No. 1:10-cv-8372-LLS
                                           ECF Case

        -against-


SHANGHAI CAFE INC., SHANGHAI CAFE
DELUXE INC., GRACE LAU, YUNG MEI KU,
PING LIN, JOSEPH TANG,

                Defendants.
--------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## SHANGHAI CAFÉ DELUXE'S MOTION FOR SUMMARY JUDGMENT


Law Offices of Joe Zhenghong Zhou and
Associates, PLLC
Attorney for Defendant
SHANGHAI CAFÉ DELUXE INC.
136-20 38th Ave. Suite 10H
Flushing, NY 11354
(718) 539-7098

## PRELIMINARY STATEMENT

Plaintiffs herein have brought this action as against Defendant Shanghai Café Deluxe Inc. (hereinafter "Deluxe") claiming successor liability for alleged violations under the Federal Labor Standards Act (FLSA) and New York Labor Law committed by Defendant Shanghai Café. (See Plaintiffs' Amended Complaint dated December 30, 2010 annexed hereto as Exhibit "A"). Defendant Deluxe respectfully submits this Memorandum of Law in support of its Motion for Summary Judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.

As a preliminary point, this Court must note that there is nothing in the record to demonstrate any transactions between Shanghai Café and Defendant Deluxe such that successor liability can be imputed to Defendant Deluxe for any alleged wrongful actions committed by Shanghai Café. Defendant Deluxe simply leased a space from the owner of the property that was previously occupied by Shanghai Café.

Furthermore, Defendant Deluxe did not and could not have notice of any alleged violations committed by Shanghai Café since there were no transactions between the parties. Thus, holding Defendant Deluxe liable for the alleged labor law violations committed by Shanghai Café's management would result in holding the wrong party responsible for such violations and would not advance the deterrence effect intended by federal and state labor laws.

Moreover, the Plaintiffs cannot present any genuine issues of fact on the issue of whether Defendant Deluxe and Shanghai Café engaged in a *de facto* merger such that Defendant Deluxe can be held as a successor corporation to Shanghai Café. There is no question that the two entities have completely different ownership. While Grace Lau was

an owner of Shanghai Café, her brief and minimal involvement as a consultant to Defendant Deluxe is insignificant to hold Defendant Deluxe as a successor corporation to Shanghai Café.

As further proof that Defendant Deluxe is not a successor corporation to Shanghai Café, Plaintiffs have been unable to demonstrate that Defendant Deluxe assumed any liabilities necessary for the continuation of Shanghai Café's business.  Although Defendant Deluxe has made minimal payments to continue receiving generic services from service providers that previously served Shanghai Café, these services were merely incidental to Deluxe's business and could not be deemed necessary to continue Shanghai Café's business.

Moreover, Plaintiff Zu Guo Yang is barred from bringing this claim because the record indicates that he had substantial authority over other employees such that he cannot seek recovery under federal and state employment and labor laws.  Defendant Deluxe must be able to amend its Answer to assert affirmative defenses and counterclaims as against Plaintiff Yang.

Finally, Plaintiffs' claims under the Fair Labor Standards Act are barred because Plaintiffs have not proffered any evidence to suggest that Shanghai Café's gross annual sales satisfy the statutory threshold under the FLSA.

Because Plaintiffs have failed to demonstrate any triable issues of fact concerning its claims against Defendant Deluxe and cannot show that Defendant Deluxe is a successor corporation to Shanghai Café, this Court must grant summary judgment in favor of Defendant Deluxe.

## STATEMENT OF FACTS

### A.    Defendant Deluxe and Its Lease to Occupy 100 Mott Street

Defendant Shanghai Café Deluxe Inc. (hereinafter "Deluxe" or "Defendant Deluxe") was incorporated on June 15, 2010 for the purpose of operating a Chinese restaurant in the Chinatown area of Manhattan.  The owners of Deluxe in charge of the daily operations of the restaurant include Yi Li Weng, Wei Bo Li and Man Peng Ma.  Additional owners include Raymond Lau, Su Hung Tseng and Xin Sheng Gu.  The owners of Deluxe are not native English speakers, have only limited English proficiency, and are not experienced business owners.

By lease agreement dated June 15, 2010, and with the assistance of Philip Lam, a property manager and real estate broker, Defendant Deluxe entered into a lease agreement with Lucky Horse Realty, Inc. to occupy and operate a restaurant at 100 Mott Street (hereinafter the "premises").  (annexed hereto as Exhibit "B").

### B.    Shanghai Café and Its Relationship with Luck Horse Realty

Prior to Deluxe's lease of the premises, an entity known as Shanghai Café operated a Chinese restaurant business located at the premises.  However, Shanghai Café completely ceased its business activity at the premises, and on or about June 2010, wholly abandoned all of its equipment, supplies and materials.  As such, Lucky Horse Realty, the owner of the premises, took possession of the equipment that was abandoned by Shanghai Café.  Lucky Horse Realty took this opportunity to lease the premises along with all the equipment, supplies and material that were abandoned by Shanghai Café.  In fact, the broker involved in the signing of the lease agreement noted that because of high value of the equipment left behind by Shanghai Café, the property owner did not require

4

any individual to personally guaranty Deluxe's obligations under the lease agreement.

As such, Defendant Deluxe's lease of the premises from Lucky Horse Realty included not just the physical space to operate its restaurant business, but also the property abandoned by Shanghai Café.  This could only be possible because Lucky Horse Realty took possession of the equipment abandoned by Shanghai Café.

**C.    Defendant Deluxe and Shanghai Café are Separate and Distinct Entities That Did Not Engage in Any Transactions**

As noted above, there were two distinct occurrences involving the premises known as 100 Mott Street relevant to this action – (1) Shanghai Café's surrender of the premises and all of its equipment to Lucky Horse Realty; and (2) Defendant Deluxe's lease of the premises from Lucky Horse Realty.

Defendant Deluxe and Shanghai Café did not enter into any agreements reflecting a purchase and sale of Shanghai Café's business or assets.  Additionally, Shanghai Café did not assign a lease or any other rights or liabilities to Defendant Deluxe, and Defendant Deluxe did not assume a lease or any other rights or liabilities from Shanghai Café.  There was no lease assignment or lease assumption between Shanghai Café and Defendant Deluxe.  There were absolutely no written or verbal agreements, contracts, memoranda or understanding between Defendant Deluxe and Shanghai Café concerning a lease or any matter whatsoever.

Thus, there were no transactions between Defendant Deluxe and Shanghai Café, and the only significant commonality that they share is the premises by which they operated their respective businesses at different periods of time.

Furthermore, because there were no transactions between Deluxe and Shanghai

Café, Defendant Deluxe did not and could not have conducted any due diligence that would reveal any of Shanghai Café's liabilities, including any claim under federal and state labor laws.  Defendant Deluxe simply entered into an agreement with the owner of 100 Mott Street for use of the premises and equipment left behind by the prior occupants.

**D.    Grace Lau's Limited Involvement in Deluxe's Business**

Defendant Grace Lau (hereinafter "Grace Lau" or "Defendant Lau") was an owner and manager of Shanghai Café until it abandoned its business.[1]  However, as a person experienced in the Chinese restaurant industry, Grace Lau was retained in an advisory capacity to assist the significantly less experienced owners of Deluxe.  Grace Lau's duties included accomplishing clerical tasks and advising on operating the restaurant.

Defendant Lau did not have any ownership interest in Deluxe and the record is void of any indication that she had any authority to make substantial business decisions on behalf of Deluxe.  More importantly, the record reflects that Grace Lau was only acting as a consultant for Deluxe for a period of three months.

**1.    Grace Lau Had No Authority from Deluxe to Sign Bank Documents**

Grace Lau indicated on documents issued by the Bank of East Asia that she was the Secretary of Deluxe, and signed bank documents on behalf of Deluxe.  However, Defendant Deluxe never appointed or elected her to be its secretary nor allowed her to claim that she was its secretary on any documents.  (See Weng Affidavit at Paragraph 4, annexed hereto).

The incident was nothing more than a simple mistake and misunderstanding by Grace Lau, who has very limited English proficiency.  Grace Lau was not aware of the

---

[1] Defendant Grace Lau has not interposed an answer or otherwise appeared in this action.  However, she was deposed in this matter on November 3, 2011, and was present at an earlier Court conference on January 21, 2011.

documents she was signing and could not read that the documents indicated that she was signing as the secretary for Deluxe. She did not sign the document contemporaneously with members of Deluxe and could not have known the meaning and consequences of signing as Deluxe's secretary. In fact, when members of Deluxe discovered that Grace Lau had signed as secretary, they immediately corrected the document and removed Grace Lau's name as secretary of Deluxe.

### 2. Grace Lau Did Not Execute a Personal Guaranty for Deluxe's Obligations Under Its Lease Agreement with Lucky Horse Realty, Inc.

Although Grace Lau was present at the signing of the lease agreement between Deluxe and Lucky Horse Realty, she was not involved in the transaction and her presence was unnecessary and unimportant. The lease agreement was executed by Wei Bo Li, and not Grace Lau. Additionally Grace Lau did not execute a personal guaranty or any other documents on behalf of or in support of Defendant Deluxe. She was simply present at the signing in no significant capacity.

As such, Grace Lau's involvement in Deluxe was minimal and insignificant for the purposes of Plaintiffs' claims.

### E. Plaintiff Zu Guo Yang and the Other Plaintiffs

Each of the Plaintiffs herein claims to be employed by Shanghai Café prior to its owners' abandonment of the business on or about June 2010. The record is void of any indication that any of the Plaintiffs, or any other party, made any labor law related complaints, allegations or claims against Shanghai Café.

The Court must note that Plaintiff Zu Guo Yang, who was employed as a chef at Shanghai Café, also played an important management role for Shanghai Café, and that

his labor law related claims against Defendants must be barred.  Plaintiff Yang was responsible for setting schedules which employees had to follow, and had the authority to report non-compliance by employees to the owners of Shanghai Café. Acting in a management role for Shanghai Cafe, Plaintiff Yang's labor law related claims against Defendants are wholly without merit.

## F.   The Instant Action

Plaintiffs' Amended Complaint dated December 30, 2010, (annexed hereto as Exhibit "A") alleges that Defendants committed several violations under the Fair Labor Standards Act and New York Labor Laws.  By Answer dated April 7, 2011 (annexed hereto as Exhibit "C") Defendant Deluxe responded to Plaintiffs' Amended Complaint, denying any liability for alleged wrongful acts committed by Shanghai Café.

Defendant Deluxe previously moved this Court to dismiss Plaintiffs' Amended Complaint for failure to state a cause of action.  By Opinion and Order dated March 23, 2011, this Court held that Plaintiffs' have sufficiently alleged that a successor relationship between Shanghai Café and Defendant Deluxe.  (Opinion and Order annexed hereto as Exhibit "D")

After extensive discovery, including numerous depositions, Plaintiffs have failed to meet their burden to show that Defendant Deluxe is a successor corporation to Shanghai Café, and have failed to raise any genuine triable issues of fact.  Defendant Deluxe now moves this Court to grant summary judgment in its favor.

## THE STANDARD FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56

It is well settled that summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009). A "material" fact is one that might "affect the outcome of the suit under the governing law." *Id.* The moving party bears "the burden of demonstrating that no material fact exists." *Miner v. Clinton Cnty., New York,* 541 F.3d 464, 471 (2d Cir. 2008) (citing *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 202 (2d Cir. 2007)).

In resolving this inquiry, the Court must construe "the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Sledge v. Kooi,* 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 247-50, 255 (1986)); *see also Treglia v. Town of Manlius,* 313 F.3d 713, 718-22 (2d Cir. 2002) (noting that on summary judgment, a court must "resolve all ambiguities and draw all factual inferences in favor of the non-movant" (citing *Brown v. Henderson,* 257 F.3d 246, 251 (2d Cir. 2001)). In opposing a motion for summary judgment, the non-moving party may not rely on "conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998), or on mere denials or unsupported alternative explanations of its conduct. *See SEC v. Grotto,* No. 05 Civ. 5880, 2006 WL 3025878, at *7 (S.D.N.Y. Oct. 24, 2006).

Rather, the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor. *Anderson,* 477 U.S. at 256-57. To avoid summary judgment, the non-moving party must present a showing of sufficient evidence supporting the claimed factual dispute as to require a judge or jury's resolution

of the parties' differing versions of the truth. *See Kessler v. Westchester Cnty. Dep't of Soc. Servs.,* 461 F.3d 199, 206 (2d Cir. 2006) (citing *Anderson,* 477 U.S. at 248-49).

As more fully set forth below, Plaintiffs' have not and cannot present any significant evidence on which a reasonable fact-finder can determine that Defendant Deluxe is a successor corporation to Shanghai Café or otherwise responsible for Shanghai Café's conduct.  As such, Defendant Deluxe cannot be held liable for any alleged violations of labor laws committed by Shanghai Café, and thus the Court must grant summary judgment in favor of Defendant Deluxe.

## ARGUMENTS

### A.  DEFENDANT DELUXE IS *NOT* A SUCCESSOR CORPORATION TO SHANGHAI CAFÉ AS A MATTER OF LAW UNDER THE NEW YORK COMMON LAW STANDARD AS EXPRESSED BY THE COURT IN *MILLER*

Its is well settled that under New York law that "as a general rule, when one corporation sells or otherwise transfers all its assets to another company, the acquiring corporation does not become responsible for the debts and liabilities of the transferor." *Miller v. Forge Mench Partnership Inc.*, 2005 U.S. Dist. LEXIS 1524, 55 U.C.C. Rep. Serv. 2d (Callaghan) 1022 at *20; see also *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 (2d Cir. 2003); *Lumbard v. Maglia, Inc.*, 621 F. Supp. 1529, 1534 (S.D.N.Y. 1985); *Fitzgerald v. Fahnestock & Co.*, 286 A.D.2d 573, 574, 730 N.Y.S.2d 70, 71 (1st Dep't 2001).

However, it is further well settled that a successor firm may be held liable for the obligations of its predecessor if any of the following conditions is present: (i) the purchaser expressly or impliedly agrees to assume such debts or liabilities; (ii) the transaction amounts to a *de facto* merger or consolidation of the seller and purchaser; (iii) the

purchasing corporation is a mere continuation of the selling corporation; or (iv) the transaction is entered into fraudulently to escape liability for such obligations. *Miller* at *21; *see also Cargo Partner*, 352 F.3d at 45; *Lumbard*, 621 F. Supp. at 1534-35; *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 245, 464 N.Y.S.2d 437, 440 (1983).

In this case, there have been no allegation and no evidence by Plaintiffs of any express or implied agreement to assume any debts or liabilities of Shanghai Café by Deluxe.  There are no allegation and no proof that there was any fraudulent transaction that may have been entered into for the purposes of escaping liability for any obligations. Accordingly, the Plaintiffs' case against Deluxe alleges a *de facto* merger or consolidation of the seller and purchaser, or alternatively alleges that the purchasing corporation Deluxe is a mere continuation of the selling corporation Shanghai Café.

To demonstrate whether a transaction amounts to a *de facto* merger or a mere continuation of the selling corporation under the second and third elements of the above test, "courts consider (1) continuity of ownership; (2) cessation of ordinary business by the predecessor; (3) assumption by the successor of liabilities ordinarily necessary for continuation of the predecessor's business; and (4) continuity of management, personnel, physical location, assets, and general business operation." *Miller* at *23; *see also Nettis v. Levitt*, 241 F.3d 186, 193-94 (2d Cir. 2001).

The Court should note that each of the above elements concerning successor liability requires some sort of transaction between a corporation and a subsequent entity for which claimants are attempting to impute liability.  Before making a determination as to whether an entity is liable for conduct of a prior corporation, the facts must show that there was an assignment of lease and an assumption of the same lease, an assignment of any

11

other legal rights and obligations and an assumption of such rights and obligations, a sale and purchase, or some legal interaction between the entities that constitutes a transaction.  Plaintiffs here have failed to produce any evidence that Shanghai Café assigned its lease to Defendant Deluxe or Defendant Deluxe assumed Shanghai Café's original lease with the landlord so that a transaction between Shanghai Café and Defendant Deluxe did actually occur. Unlike the facts in *Miller,* Plaintiffs here have not and cannot show any such transaction between Shanghai Café and Defendant Deluxe such that the Court can entertain any argument concerning the imposition of successor liability upon Defendant Deluxe.

Alternatively even if the Court were inclined to find that a transaction occurred between Shanghai Café and Deluxe just for the purpose of determining the success of the motion for summary judgment, the Plaintiffs still fail to meet other elements in the standard for a *de facto* merger set in *Miller.*  In order to provide evidence that would "… determine whether such a `*de facto* merger' or `mere continuation' of the predecessor's business has occurred, courts consider (1) continuity of ownership; (2) cessation of ordinary business by the predecessor; (3) assumption by the successor of liabilities ordinarily necessary for continuation of the predecessor's business; and (4) continuity of management, personnel, physical location, assets, and general business operation." *Miller* at *23; *see also* <u>Nettis v. Levitt, 241 F.3d 186, 193-94 (2d Cir. 2001)</u>.

As set forth below, the record is clear that Defendant Deluxe is not a successor corporation to Shanghai Café under the test used in New York, and Plaintiffs have not and cannot raise any genuine triable issues of fact on such issue.

**1. Defendant Deluxe Did Not and Could Not Expressly or
   Impliedly Assume any of Shanghai Café's Liabilities**

Plaintiffs have failed to show evidence that proves a de facto merger or consolidation or mere continuation from one entity to the next.  Indeed it is clear from the deposition testimony of the real estate agent Phillip Lam of Lucky Horse Realty that there was no underlying transaction between the old Shanghai Café restaurant and the current Shanghai Café Deluxe restaurant.

As is clear from the deposition testimony of Deluxe's secretary Yi Li Weng, there never was a transaction between Shanghai Café and Shanghai Café Deluxe.  Rather, there was an abandonment of the prior lease by Shanghai Café, and after such abandonment, Deluxe signed a new lease with the owner of the building.  Because there was no transaction between Shanghai Café and Deluxe, the Miller standard for a de facto merger or consolidation of the seller and purchaser does not apply to this case.  Ms. Weng testified:

> Q.   Now, when Mr. Ma told you that he wanted to open a restaurant did he tell you that he wanted to open it at 100 Mott Street?
>
> A.   In the beginning, no, he didn't say it but later on he did.
>
> Q.   At the beginning what did Mr. Ma tell you about the restaurant that he wanted to open?
>
> A.   He said that he got some information, he heard someone saying that there was a store or restaurant and wanted to lease -- there was a Shanghai restaurant -- not a Shanghai restaurant,  just a restaurant, a restaurant and didn't and to do business anymore and wanted to do the business over there.

(See Weng's Deposition Transcript at 91:18 – 92:10 annexed hereto as Exhibit "E").

Q.   Is it your belief that the old restaurant abandoned that space?

A.   Yes.  A lot of thing were broken.

Q.   Besides table and chairs, what other things were left over from the old restaurant?

A.   What else?

Q.   Was there kitchen equipment?

A.   Yes.

(See Weng's Deposition Transcript at 239:3-11 annexed hereto as Exhibit "E").

Plaintiffs have not and cannot offer any evidence of an agreement, assignment, purchase and sale or any other type of transaction between Shanghai Café and Defendant Deluxe.

### 2. There was No *De Facto* Merger Between Defendant Deluxe and Shanghai Café, and Defendant Deluxe is Not a Mere Continuation of Shanghai Café

As noted above, a transaction amounts to a *de facto* merger or mere continuation of a predecessor entity if there is (1) continuity of ownership; (2) cessation of ordinary business by the predecessor; (3) assumption by the successor of liabilities ordinarily necessary for continuation of the predecessor's business; and (4) continuity of management, personnel, physical location, assets, and general business operation. Each of these factors will be discussed to demonstrate that there is no possibility that the facts can be construed to show a *de facto* merger between Defendant Deluxe and Shanghai Café or that Defendant Deluxe is a mere continuation of the Shanghai Café.

### a. There is No Continuity of Ownership Between Defendant Deluxe and Shanghai Café

Plaintiffs have failed to show any continuity of ownership between any of the owners of Shanghai Café and the owners of Deluxe.  They have tried to imply that the former ownership of Shanghai Café has an ownership stake in Deluxe, but they have not shown any actual ties between them.

Plaintiffs mischaracterize the documentation that was retrieved from the Bank of East Asia.  Plaintiffs make much of the fact that one of the former owners of Shanghai Café, Grace Lau, was listed on some of the initial documents submitted to the Bank of East Asia; but Plaintiffs do not mention that Grace Lau was explicitly not included in the revised final versions of these documents that were submitted to the bank on September 13, 2010.  Grace Lau even mentions in her deposition that she did not have a complete understanding of the documents that she had initially signed for the Bank of East Asia. (*See generally*, Lau's Deposition Transcript at pg. 123 annexed hereto as Exhibit "F")

Plaintiffs also cannot ignore the note that was sent to Bank of East Asia on which explicitly states that Wei Bo Li and not Grace Lau will be the secretary of Shanghai Café Deluxe.  This document shows unambiguously that Grace Lau is not a shareholder or a manager of Deluxe.  *See* Note to Bank of East Asia annexed hereto as Exhibit "G".

Plaintiffs claim that Shanghai Café's former owner Grace Lau was involved in negotiating the lease of the property for Deluxe.  This is shown to be false by the deposition of Phillip Lam, the real estate agent from Lucky Horse Realty whose testimony was demanded by the Plaintiffs to support their allegations of malfeasance by Deluxe in producing documents for discovery.  Instead the deposition testimony of Phillip Lam

showed that Grace Lau was present at the signing of a new lease because the owner of the property wanted to have the ownership of the former tenant Shanghai Café serve as a guarantor for Deluxe's lease.

Phillip Lam testified in his deposition that Lucky Horse Realty normally seeks a guarantor for a lease that is granted to a new startup business.  He stated in his deposition that for most of the leases that Lucky Horse Realty grants, if someone has no record or is not familiar to them, then they ask for either six months security deposit or for someone to guarantee the lease.  (See Lam's Deposition Transcript at pg. 97 annexed hereto as Exhibit "H").  His deposition testimony makes clear that he was able to convince the owner of 100 Mott Street to grant a lease to Shanghai Café Deluxe without having any act as a guarantor for the lease because the value of the Shanghai Café Deluxe restaurant is worth more money than the value of security deposit. *Id.*

### b. Shanghai Café Ceased Doing Business in June 2010

There is no question that Shanghai Café ceased its ordinary business operations and abandoned its business in early June 2010 and officially dissolved on September 17, 2010.  The parties have not contested this fact, and thus, there is no issue of fact concerning Shanghai Café's cessation of business of operations.  The cessation of ordinary business by Shanghai Café is not in dispute; Shanghai Café closed their doors and ended business for good on June 8, 2010.

### c. Defendant Deluxe Did Not Assume any of Shanghai Café's Liabilities Ordinarily Necessary for the Continuation of Shanghai Café's Business

Under the standard set forth by the Court in *Miller*, Plaintiffs must demonstrate that Deluxe assumed liabilities "**ordinarily necessary** for the continuation of predecessor's

business" (emphasis added).  The Court in *Miller*, citing *Glynwed, Inc. v. Plastimatic, Inc.*, 869 F. Supp. 265, 276-77 (D.N.J. 1994), noted that assuming liabilities under manufacturing contracts would constitute an assumption of liabilities ordinarily necessary for the continuation of the predecessor's business.  As such, the liabilities in question must be specific to the particular business of the predecessor and not merely generic liabilities that are incurred by every business.

In fact, the *Miller* Court found a successor corporation had assumed the liabilities of a predecessor entity ordinarily necessary for the continuation of predecessor's clothing business by assuming a debt under the same terms with the predecessor's creditor secured by accounts receivables and inventory of the predecessor entity.  The liabilities assumed by the successor corporation, namely loans secured by receipts and clothing inventory, was specific to the predecessor's business operations.

Additionally, in the Miller case, the successor corporation had assumed $5.8 million of the predecessor's debt, demonstrating that an assumption of debt cannot be *de minimis* for the successor to be held liable for the debts of a predecessor.

Here, Plaintiffs have not shown any facts, and cannot show any facts, suggesting an assumption of liability because Shanghai Café did not assign any of its rights or liabilities to Deluxe, and Defendant Deluxe did not accept any such rights and liabilities. Additionally, Defendant Deluxe did not purchase Shanghai Café's business and did not have any interactions with Shanghai Café to suggest a transaction between the two entities.

### i. Defendant Deluxe Did Not Satisfy any Sums Owed By Shanghai Café to the Owner of the Premises

Here, Plaintiffs cannot show that Deluxe assumed any of Shanghai Café's liabilities ordinarily necessary for the continuation of Shanghai Café's restaurant business. The most significant liability for the continuation of a restaurant business where customers dine is the lease for the space to operate such an establishment.

Yet Plaintiffs cannot cite to anything in the record to show that Deluxe paid off any debts incurred by Shanghai Café under its lease with the landlord so that Deluxe can continue leasing the same space from the landlord.  In fact, Yi Li Weng, a principal of Deluxe, clearly states in her affidavit that Defendant Deluxe made no payments in satisfaction of any debt owed to the landlord under a lease agreement between Shanghai Café and Lucky Horse Realty, Inc. (See Weng Affidavit at Paragraph 5, annexed hereto). This statement is in accordance with the point we have made throughout this brief – that there were no transactions between the Defendant Deluxe, and as such, no assumption of any liabilities.

### ii. Any Debts That Were Satisfied by Defendant Deluxe were For Generic Services and Such Amounts were *De Minimis*

Plaintiffs have placed an emphasis during discovery to the fact that Deluxe paid telephone and electricity bills that were sent to Shanghai Café.  Such liabilities are generic and incurred by every business to operate any type of business, not just a restaurant business.   In fact, such services operate mostly as a monopoly in New York City, leaving Deluxe little or no option to obtain these services from any other provider.

Plaintiffs even mischaracterize the facts surrounding Deluxe paying such bills.  Ms. Yi Li Weng, a principal of Deluxe, testified that she attempted to change the name on the

telephone bill and eventually changed service providers, demonstrating that the most important concern for Deluxe would was to have uninterrupted services from utility providers, and not to continue Shanghai Café's business.  On the issue of the change of name on the telephone bill, Ms Weng testified:

> Q.   So is it your testimony that you filled out some kind of change form with the service carrier for the telephone line and that after a few months that service provider made those changes?
>
> A.      No.  When they sent us the bill, attached to the bill and there is something at the bottom that if you need to change the name or something you can write down the information and then send the check over. And then later on we changed the service carrier because we think that -- we thought that the carrier was not good.
>
> Q.   Okay.  So for at least a couple months you, Shanghai Cafe Deluxe was paying a telephone bill that was directed to Shanghai Cafe before the telephone service provider made the changes that you requested?
>
> A.     Maybe not.  I don't remember.  I have to look.  We tried to change it immediately but I am not sure.  I have to go look.
>
> Q.   Okay.  I believe you testified earlier that you had requested a change with the telephone company but it took a couple months for them to make that change?
>
> A.     No.  Every time that I received a bill and checked the box that said I wanted to change the name.

(See Weng's Deposition Transcript at 57:3-58:8 annexed hereto as Exhibit "E").

As unsophisticated business owners, the principals of Deluxe could not have been aware of the importance of changing the names on the accounts for services common to every business and would have found it unusual and disruptive to cease such services just to start these services again under a different name.  In any case, the sums paid by Deluxe to continue to receive utilities were de minis and does not show any attempt to assume Shanghai Café's liabilities to continue Shanghai Café's business.

Additionally, Plaintiffs are unable to use the fact that Deluxe paid off sums owed to sanitation services and food safety services to show that Deluxe assumed any of Shanghai Café's liabilities.  Again, Deluxe's only concern was to have uninterrupted service so that it can operate a restaurant business as any disruption would have had a negative impact on its business.  Moreover, sanitation and food safety services are merely incidental to Deluxe's business and are not as necessary to Deluxe's business as the space it needs to operate a dine-in restaurant, for which Deluxe clearly did not assume any of Shanghai Café's liabilities.

Sanitation and food safety services are common in the restaurant business, and thus should not be seen as an assumption of a prior business' vending relationship. Unlike the *Miller* case, where Defendant had no choice but to pay off the creditor of the prior business to continue its own operations, here, Deluxe had the choice of selecting several sanitation and food safety services but may have chosen the same providers as Shanghai Café simply for convenience.

Moreover, any sums paid to such providers are de minis and would not constitute an assumption of liabilities ordinarily necessary to continue Shanghai Café's restaurant business. Plaintiffs are unable to make any comparison to the facts in *Miller* where a successor corporation satisfied a $5.8 million debt of its predecessor to continue the predecessor's business.  As such, Plaintiffs cannot show that Deluxe assumed Shanghai Café's liabilities such that a *de facto* merger between the two entities could be assumed.

20

### d. Plaintiffs are Unable to Show Any Continuity of Management or Personnel to Satisfy the Test for a *De Facto* Merger or Continuation of Shanghai Café's Business

Finally, Plaintiffs' assertion that Defendant Deluxe enjoyed a continuity of management, personnel, physical location and general business operations is not based on any facts in the record.  The Court in Miller held that a continuity of management and personnel existed when the upper management of a successor corporation was largely the same as the predecessor entity.  The Court concluded that the management was largely the same when the record showed that the predecessor and successor entities had the same president, comptroller, chief financial officer and three other officers.

Here, Plaintiffs have mischaracterized the facts and have wrongfully alleged that Deluxe and Shanghai Café share largely the same management and personnel.

Plaintiffs have not alleged that Deluxe and Shanghai Café share the same president, comptroller, chief financial officer or any other upper management.  Although Grace Lau assisted Deluxe for a very brief period of time, her role in Defendant Deluxe's business was limited and insufficient to conclude a continuity of management and personnel.  Man Peng Ma, another principal of Deluxe, even testified that he did not know Ms. Lau and that he did not know that Ms. Lau was a previous owner of the old Shanghai Café restaurant.  (See Ma's Deposition Transcript at pages 20-21 annexed hereto as Exhibit "I").

Shanghai Café and Shanghai Café Deluxe did not have any managers or officers in common, and only a small number of workers in common.  Plaintiffs are thus unable to show that Shanghai Café and Shanghai Café Deluxe shared "largely the same personnel."

Moreover, the facts surrounding Deluxe's acquisition of the restaurant simply do

not indicate a continuity of assets or operations such that a *de facto* merger of the two entities could be inferred.  Shanghai Café had ceased operating as a restaurant and completely abandoned its business operations along with assets such as its machinery and kitchen equipment.  Thus, the restaurant and equipment was abandoned to the landlord, who then leased the premises to Deluxe.  Shanghai Café had no interaction with Deluxe and did not assign its lease, nor did Defendant Deluxe accept any such assignment.  As such, there is no indication that Deluxe assumed any of Shanghai Café's liabilities under Shanghai Café's lease agreement with the landlord.

Applying the Miller standard to the instant case, there was no *de facto* merger between Defendant Deluxe and the abandoned Shanghai Café restaurant, and Defendant Deluxe cannot be seen as a mere continuation of the abandoned Shanghai Café restaurant.  There is no continuity of ownership between Defendant Deluxe and shanghai café.  It is undisputed that Shanghai Café ceased doing business in june 2010. It cannot be shown that Defendant Deluxe assumed any of Shanghai Café's liabilities ordinarily necessary for the continuation of Shanghai Café's business, and plaintiffs are unable to show any continuity of management or personnel to satisfy the test for a *de facto* merger or continuation of Shanghai Café's business.

### 3. Plaintiffs Have Not Shown that Any Alleged <u>Transaction Was Entered Into Fraudulently</u>

Even assuming that the Deluxe and Shanghai Café had entered into transactions for the purpose of transferring Shanghai Café's business, Plaintiffs have not and cannot claim that any such transaction was entered into for the purpose of avoiding any liability under any federal or state labor law.  In fact, Plaintiffs have not shown that the principals

of Shanghai Café or Deluxe had sufficient notice of any potential claim by Plaintiffs and that they engaged in an alleged transaction to avoid such liability.  Plaintiffs did not bring this claim until November 2010, nearly five months after Defendant Deluxe began its operations on the premises.

As such, under the standard set forth in *Miller,* there are no facts in the record for a reasonable jury to find that Defendant Deluxe was a successor corporation to Shanghai Café, and Plaintiffs cannot demonstrate Defendant Deluxe was a successor corporation to Shanghai Café.  Thus, this Court must grant summary judgment in favor of Defendant Deluxe as a matter of law.

**B.    Defendant Deluxe is *Not* a Successor Entity to Shanghai
       Café Even Under the Broader Substantial Continuity Test**

The Southern District recently held in *Battino v. Cornelia Fifth Ave, et. al.* 861 F.Supp.2d 392 (SDNY 2012), that in the context of employment and labor issues, including claims made under the FLSA, the Court should apply the broader "substantial continuity" test to determine whether an entity assumes the liabilities its predecessor incurred under employment and labor laws.

Although there are numerous factors the Court can use to make this determination, the two most important factors include (1) whether the successor had notice of the claim before the acquisition and (2) whether there was substantial continuity in the operations of the business before and after such acquisition.  *Battino* 861 F.Supp.2d at 401 citing *Rowe Entm't, Inc. v. William Morris Agency, Inc.,* 98 Civ. 8272, 2005 WL 22833, at *79 (S.D.N.Y. Jan. 5, 2005).  Additionally, the Court will look to whether the predecessor has the ability to provide relief directly to the claimants. *Id.*

23

The remaining factors that the Court can use to determine successor liability in a labor law claim include whether the new employer uses the same plant; whether he uses the same or substantially the same work force; whether he uses the same or substantially the same supervisory personnel; whether the same jobs exist under substantially the same working conditions; whether he uses the same machinery, equipment, and methods of production; and whether he produces the same product. *Battino* 861 F.Supp.2d at 404 citing *EEOC v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086, 1094 (6th Cir. 1974). These additional factors simply inform whether there was a continuity of business operations between the entities. *Battino* 861 F.Supp.2d at 404 citing *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740 (7th Cir.1985).

The Court in *Battino* held that an entity was a successor corporation for the purposes of employment and labor law claims, partially due to the fact that it had notice of a potential claim by its predecessor's employees. Specifically, the purchaser in that case admitted to knowing that the prior entity failed to pay its employees for at least two months, and more importantly, that this information was used in negotiating various representations and indemnification provisions of the asset purchase agreement. The Court held that in light of the new entity's knowledge of such employment and labor law related liabilities, the notice requirement of the substantial continuity test had been satisfied. The Court noted that "this is not a case of an "innocent purchaser" who "exercised due diligence and failed to uncover evidence" of any potential liability. *Musikiwamba,* 760 F.2d at 750, 752. Rather, SCFAL was fully aware of the potential liabilities to the unpaid employees and attempted to negotiate the APA accordingly." *Battino* 861 F.Supp.2d at 407.

24

The Court further noted that an important policy consideration for the notice requirement of the substantial continuity test is to "ensure fairness by guaranteeing that a successor had an opportunity to protect against liability by negotiating a lower price or indemnity clause.  *Battino* 861 F.Supp.2d at 406*, citing *Steinbach v. Hubbard,* 51 F.3d 843, 845,846 (9th Cir. 1995) and *Musikiwamba v. ESSI, Inc.,* 760 F.2d 740, 752 (7th Cir. 1985).

Similar to the facts in *Miller*, the *Battino* case involved circumstances where one entity purchased another entity.  Again, in the instant action, unlike both the *Miller* and *Battino* cases, there was no purchase, assignment or any agreement between Shanghai Café and Defendant Deluxe that can be construed as a transaction.

Additionally, as more fully demonstrated below, Defendant Deluxe could not have been on notice of this lawsuit, or any potential claim brought by the Plaintiffs herein. Furthermore, there is no continuity of operations between the two entities.  Finally, Plaintiffs can obtain relief from the principals and management of Shanghai Café. Thus, there can be no successor liability for Defendant Deluxe under the substantial continuity test.

**1.     Defendant Deluxe Had No Notice of Plaintiffs
        Claims Prior to the Commencement of this Lawsuit**

Simply put, Defendant Deluxe could not have had any notice of any prior claims or lawsuit concerning any employment or labor disputes that took place at Shanghai Cafe because Defendant Deluxe did not purchase or otherwise engage in any transaction with Shanghai Deluxe.  Because there was no transactions between the entities, there was no opportunity for Deluxe to conduct any due diligence or make any inquires as to any of Shanghai Café's liabilities, including any potential lawsuit concerning employment and

25

labor law related matters.  (See Weng Affidavit at Paragraphs 6 through 12, annexed hereto).

Moreover, regardless of whether there was a transaction between the entities, Defendant Deluxe would have been in a position similar to the "innocent purchaser" described in *Battino* where the purchaser or acquirer innocently fails to uncover evidence of potential liability.  Unlike the Defendant in *Battino* who had personal knowledge of violations of labor laws by its predecessor entity, here, Defendant Deluxe was not told about any potential violations or claims by any member of Shanghai Café or anyone else. (See Weng Affidavit at Paragraphs 8 and 9, annexed hereto). Additionally, Defendant Deluxe could not have been aware of such alleged practices at Shanghai Café because Deluxe never observed such practices. (See Weng Affidavit at Paragraphs 6 and 7, annexed).  In fact, the first time Defendant Deluxe was put on notice of any claims brought by Plaintiffs was when they received Plaintiffs complaint on or about November 2010, several months after Shanghai Café had dissolved and Deluxe began its business.  (See Weng Affidavit at Paragraph 12, annexed hereto).

Plaintiffs have not and cannot offer any evidence to the contrary.  Any argument made by Plaintiff that Grace Lau had any notice of Plaintiffs' claims and that such notice can be imputed to Defendant Deluxe is without merit.   Grace Lau testified as following on this matter:

> Q. Okay. So you were aware that there was a lawsuit possibly being filed because the employees of your old restaurant threatened to file a lawsuit? Is that what you're saying?
>
> A. In January the sanitation department came and inspect the restaurant. At that time the main chef, the cook, he tried to do something that would violate the laws so that then -- then we would -- the restaurant would be -- would be

-- would be under pressure and then they would be forced to be closed. And then we would have -- then there would be a lawsuit following.

(See Lau's Deposition Transcript at 16:11-23 annexed hereto as Exhibit "F").

Thus, Grace Lau's only knowledge of a lawsuit was concerning a possible health or environmental action commenced by city authorities and nothing even remotely related to the employment and labor law related claims brought by Plaintiffs.  Additionally, because Grace Lau's position in Deluxe was only that of an advisor on establishing and running a restaurant, and was at Deluxe for a brief period of time, any knowledge that she may have had about any of Shanghai Café's liabilities cannot be imputed to Defendant Deluxe.

Moreover, Plaintiffs have not offered any evidence that any principal of Defendant Deluxe was on notice that some employees of Shanghai Café could potentially bring a claim based on labor and employment laws.  As such, there are no genuine material issues of fact on whether Defendant Deluxe had notice of any claims asserted by Plaintiffs.

**2.    There is No Substantial Continuity in the Operations
of Defendant Deluxe and Shanghai Café**

There could be no continuity between Shanghai Café and Defendant Deluxe because they did not enter into any transactions or agreements by which Defendant Deluxe bought or acquired Shanghai Café's business.  As noted above, Shanghai Café abandoned its business and Defendant Deluxe entered into a lease agreement with the property owner to rent this abandoned space.  There were two unconnected transactions relevant here -  (1) Shanghai Café's surrender of the premises and all of its equipment to Lucky Horse Realty; and (2) Defendant Deluxe's lease of the premises from Lucky Horse

Realty.  As such, there was no existing business for Defendant Deluxe to continue.  The only commonality between Defendant Deluxe and Shanghai Café is that they both operated a Chinese restaurant and were located at the same location.

Additionally, Defendant Deluxe is owned and operated by a completely different group of people than Shanghai Café and do not share largely the same personnel to constitute in any way a continuity of Shanghai Café's operations.  Although Grace Lau was an owner of Shanghai Café, her role was brief and limited in Defendant Deluxe's business as she only acted as a consultant to Deluxe for a period of three months. Plaintiffs cannot argue that Grace Lau's presence in Defendant Deluxe in such a capacity constitutes a substantial continuity in the operations of Defendant Deluxe and Shanghai Café.

With the absence of any transaction between Shanghai Café and Defendant Deluxe, and only minor and insignificant commonalities between the two entities, Plaintiffs cannot show that a continuity of operations between Defendant Deluxe and Shanghai Café.

### 3.    Plaintiffs Are Able to Obtain Relief Directly from the Owners of Shanghai Café and Those Responsible For Any Alleged Wrongful Acts

In addition to the factors under the substantial continuity test discussed above, the Court can also look to whether the individuals seeking a recovery for violations of employment and labor laws can obtain such relief directly from the predecessor entity. The Court in *Battino* held that this test was not met and there was no ability for a predecessor entity to provide relief when the principals of the predecessor entity were

bankrupt and the record was unclear as to the assets of corporate owners of the predecessor entity.

The Court in *Battino* held that the proper inquiry is to ask whether the predecessor had the ability to provide relief at the time of the litigation or prior to the change in business.  The policy considerations of looking at the predecessor's current ability to provide relief is to prevent imposing liability on an innocent purchaser when the predecessor has the ability to provide such relief.  *Id.* at 408. citing *Musikiwamba*, 760 F.2d at 750.  Additionally, the Court must look at the predecessor's ability to satisfy the plaintiff's claims at the time of the change of business so that an injured employee is neither made worse off or obtains a windfall as a result of such change.

Here, the record demonstrates that Plaintiffs can obtain relief directly from the principals of Shanghai Café as seen from the fact that Plaintiffs are presently seeking recovery from those involved in actually committing the alleged wrongful acts.  Although Plaintiffs are unlikely to recover from Shanghai Café, Inc. as it is dissolved and has abandoned its business operations, Plaintiffs can recover from Grace Lau, Yung Mei Ku, Ping Lin and Joseph Tang, all of whom either owned or managed Shanghai Café and who have the ability to provide relief to Plaintiffs either at the time Shanghai Café ceased to exist or presently.  The instant action includes all of these individuals.

The Court in *Battino* noted that equitable considerations must be analyzed in the context of imposing liability on a successor entity when the predecessor entity is fully capable of satisfying such liabilities.  Here, although Defendant Deluxe did not purchase or in any manner acquire Shanghai Café, and thus is not liable under the doctrine of successor liability, Defendant Deluxe is a completely innocent party.  Deluxe did not hire

any of the Plaintiffs, and no member of Deluxe was in a position to commit any of the alleged violations of employment and labor laws set forth in Plaintiffs Complaint. The fact that Plaintiffs are seeking to recover, and can obtain recovery from members of Shanghai Café, the responsible parties, is further proof that equitable considerations should preclude any imposition of successor liability upon Defendant Deluxe.

**4.    Plaintiffs Cannot Present Any Facts to
Satisfy the Substantial Continuity Test**

The additional factors of the substantial continuity test inform whether there was a continuity of business operations between the entities. Again, the Court must note that there could not have been any continuity of business operations because Shanghai Café abandoned it business operations in early June 2010, abandoning the premises on which it operated and leaving behind all of its equipment. Defendant Deluxe leased the premises from the property owner and did not have any transactions with Shanghai Café.

As such, the remaining factors of the substantial continuity test cannot possibly show a continuity of business operations. While both Shanghai Café and Defendant Deluxe produce a similar product, namely, Chinese food, it does not have substantially the same work force or supervisory panel. Additionally, Plaintiffs cannot argue that Defendant Deluxe has the same machinery or equipment since such machinery and equipment was abandoned by Shanghai Café and rightfully became the possession of the property owner. The property owner then leased the premises together with the property abandoned by Shanghai Café to Defendant Deluxe. Plaintiffs cannot in good faith point to any sufficient connection between Shanghai Café and Defendant Deluxe such that Defendant Deluxe can be held as continuing Shanghai Café's business operations.

In light of the above, Plaintiffs cannot show under the substantial continuity test that Defendant Deluxe is a successor corporation to Shanghai Café, and Plaintiffs can raise no material issues of fact that could lead a reasonable find-finder to reach a different conclusion.

**C.   PLAINTIFF ZU GUO YANG'S CLAIMS ARE BARRED DUE TO HIS STATUS AS MANAGEMENT OF SHANGHAI CAFÉ, AND ALTERNATIVELY, DEFENDANT DELUXE SHOULD BE PERMITTED TO ASSERT COUNTERCLAIMS AGAINST PLAINTIFF YANG**

It is well settled that under the Fair Labor Standards Act, an employer includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  *Herman v. RSR Sec. Servs. LTD.*, 172 F.3d 132, 139 (2d Cir. 1999). A court must view the purported employment relationship "with an eye to the 'economic reality' presented by the facts of each case," id., considering four non-dispositive factors: "'whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records,'" id. All four factors need not be present to justify a finding of employer status. *Heng Chan v. Triple 8 Palace*, No. 03 Civ. 6048 (GEL), 2004 WL 1161299, at *1 (S.D.N.Y., 2004).  This may also be used to determine whether an individual is considered an employer under the New York Labor Law, "as '[t]here is general support for giving the FLSA and the New York Labor Law consistent interpretations.'" *Doo Nam Yang v. ABCL Corp.*, 427 F. Supp. 2d 327, 342 n.25 (S.D.N.Y. 2005) (bracketsin original), quoting *Topo v. Dihr*, No. 01 Civ. 10881 (PKC), 2004 WL 527051, at *3 (S.D.N.Y. 2004).

31

Here, there is evidence to suggest that Plaintiff Zu Guo Yang (hereinafter "Plaintiff Yang") occupied a position at Shanghai Café such that he can be considered an employer, and thus, he is barred from bringing any claims under the FLSA or New York labor laws against Defendant Deluxe.  Yang admits to being in charge of the kitchen:

> Q.  How many people worked in the kitchen in 2009?
>
> A.  Beginning April of 2009, everybody worked five days a week.
> ….
> Q.  Were you in charge of the kitchen?
> ….
> A.  Basically, I was in charge.

(See Yang's Deposition Transcript at 70:8-18, annexed hereto as Exhibit "J").

In addition to saying that he was in charge of the kitchen employees at Shanghai Cafe, Plaintiff Yang further testifies that he had the authority to bring any employee misbehavior to the attention of the principals of Shanghai Café:

> MR. GEARSON: I'm sorry.  Did he ever recommend to the boss if someone didn't do a good job?
>
> A.  Yes.
>
> MR. GEARSON: And how many times did he do that?
>
> Q.  You can just estimate.
>
> A.  Just once or twice.
>
> Q.  Did anything happen to that employee?
>
> A.  Then the boss would talk to them.

(See Yang's Deposition Transcript at 73:3-13 annexed hereto as Exhibit "J").

Furthermore, Grace Lau, a manager at Shanghai Café, mentioned in her testimony that Plaintiff Yang had authority over employee schedules:

32

Q.  And you were open seven days a week?

A.  Yes.

Q.  Did you close later on Friday and Saturday nights than other nights of the week?

A.  Roughly later by an hour.  Then there would be shifts.

Q.  What do you mean there would be shifts.

A.  It is up to the chef who decided who should come a little bit early, who should come a little bit late.

(See Lau's Deposition Transcript at 82:8-19 annexed hereto as Exhibit "F").

Grace Lau continues:

A.  In the kitchen, at least there are three persons who know how to cook.  And then the main chef decided who would have their meals and who would be doing what.  And this principle applies to the dim sum department as well.  It's up to the head of the department to make the arrangements.

Q.  Okay.

A.  The main chef is the one that I mentioned earlier on and, actually, he's the one who signed this.

Q.  What is his name?

A.  Yang, Guo, cook.

(See Lau's Deposition Transcript at 83:9-21 annexed hereto as Exhibit "F").

Grace Lau clearly express that Plaintiff Yang's responsibilities included setting employee schedules:

A.  The actual hours of work is eight hours per day.  In the kitchen, the schedule is arranged by Zuo Guo Yang.  It's up to him who leaves early and who leave late.

(See Lau's Deposition Transcript at 166:17-20 annexed hereto as Exhibit "F").

As such, Plaintiff Yang's authority at Shanghai Café clearly establishes that he acted as an employer for Shanghai Café, and thus, cannot maintain this action against Defendant Deluxe.  The Court must grant summary judgment in favor of Defendant Deluxe and against Plaintiff Yang.

Alternatively, should this Court decide not to preclude Plaintiff Yang's claims, Defendant Deluxe should be permitted to amend its Answer to assert counterclaims as against Plaintiff Yang.  It is well settled that the Court shall permit a party to amend its pleading, and such permission shall be freely granted when justice so requires. Fed.R.Civ.P. Rule 15(a)(2), *Parker v. Columbia Pictures Industries*, 204 F. 3d 326 (2d Cir. 2000) (holding "that "mere delay" is not, of itself, sufficient to justify denial of a Rule 15(a) motion").  Here, Defendant Deluxe must be permitted to assert defenses against Plaintiff Yang barring any recovery because of his status as an employer under the FLSA and New York labor laws.  Additionally, Defendant Deluxe must be permitted to assert counterclaims against Plaintiff Yang so Defendant Deluxe can seek to reduce any recovery Plaintiffs may obtain against Defendant Deluxe by Plaintiff Yang's culpability in the alleged wrongful conduct.

## D.   PLAINTIFFS' CLAIMS UNDER THE FLSA ARE BARRED BECAUSE PLAINTIFFS HAVE NOT SHOWN THAT SHANGHAI CAFÉ HAD MET THE STATUTORY THRESHOLD OF $500,000 IN GROSS ANNUAL SALES

Although extensive discovery had been conducted in this matter, Plaintiffs have not been able to produce any evidence that Shanghai Café had gross annual sales of greater than $500,000.00 during the relevant period.  The Fair Labor Standards Act explicitly covers only those workers employed by an "enterprise" that is "engaged in

commerce." 29 U.S.C. § 207. "An entity constitutes an enterprise where 'the related activities performed (either through unified operation or common control) by any person or persons [are] for a common business purpose.' " *Rodriguez v. Almighty Cleaning*, 784 F.Supp.2d 114, 121 (E.D.N.Y.2011) (quoting 29 U.S.C. § 203(r)).

An enterprise is "engaged in commerce or in the production of goods for commerce" if, inter alia, it: (1) "has employees engaged in commerce or in the production of goods for commerce;" or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person;" *and* (2) its "annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." 29 U.S.C. § 203(s)(1)(A)(i)-(ii)(emphasis added). Here, Plaintiffs clearly have not produced any evidence satisfying the first requirement as they have not shown that any of the Plaintiffs engaged in commerce as defined in the statute.

Additionally, even assuming that Defendant Deluxe is liable for any employment or labor law violations allegedly committed by Shanghai Café, Plaintiffs are unable to maintain this action under the FLSA. Plaintiffs have not produced any tax returns, receipts, business records, accounting records, or any documents that would indicate that Shanghai Café had a gross annual income of at least $500,000.00 during the period of the alleged labor law violations. Plaintiffs have not elicited any testimony or produced any affidavits from any party with personal knowledge indicating that Shanghai Café's gross annual sales during the time of the alleged wrongful conduct was at least $500,000.00.[2] There is nothing in the record for a fact-finder to determine whether

---

[2] For the purpose of successor liability under an FLSA claim, the gross annual sales of Defendant Deluxe, as the alleged successor

Shanghai Café had the required gross annual income during the time of the alleged employment and labor law violations.

As such, Plaintiffs are precluded from bringing these employment and labor law claims as against Defendant Deluxe under the FLSA.

## **CONCLUSION**

In light of the above, the Court must grant summary judgment in favor of Defendant Shanghai Café Deluxe Inc. as Defendant Deluxe is not a successor to Shanghai Café because (1) there were absolutely no transactions between Defendant Deluxe and Shanghai Café such that successor liability can attach to Defendant Deluxe; (2) Defendant Deluxe did not expressly or impliedly assume any of Shanghai Café's liabilities; (3) there was no *de facto* merger between Shanghai Café and Defendant Deluxe, and Defendant Deluxe is not a mere continuation of Shanghai Café; and (4) Plaintiffs have not and cannot allege that any alleged transaction was entered into with the intent to fraudulently avoid liability.

Additionally, Defendant Deluxe cannot be liable for any of Shanghai Café's alleged conduct because (1) Defendant Deluxe had no notice of Plaintiffs' claims prior to commencing its business; and (2) there is no substantial continuity in the operations of Shanghai Café's business and Defendant Deluxe's restaurant.

Furthermore, Plaintiff Zu Guo Yang is barred from bringing this claim as against Defendant Deluxe because he had substantial authority over other employees such that he is deemed to be an employer under employment and labor laws.  The Court must allow

---

entity, is not relevant to whether the $500,000.00 threshold under the statute is met.  Instead, the relevant question is whether Shanghai Café was a qualifying enterprise engaged in commerce at the time it employed Plaintiffs.  *Alvarez v. 40 Mulberry Restaurant, Inc.*, No. 11 Civ. 9107 (S.D.N.Y. 2012).

Defendant Deluxe to amend its Answer to assert defenses and counterclaims as against Plaintiff Yang.

Finally, Plaintiffs entire claim under the FLSA is barred because they have not presented any evidence demonstrating that Shanghai Café has met the statutory threshold for annual gross sales such that the FLSA applies to their claims.

As such, there are no genuine material facts in dispute in this matter and the Court must grant summary judgment in favor of Defendant Shanghai Café Deluxe, Inc.

Dated:     Flushing, New York
           January 15, 2013

_____
Curt D. Schmidt, Esq.
Law Offices Of Joe Zhenghong Zhou
And Associates, PLLC
Attorneys for Defendant
Shanghai Café Deluxe, Inc.
136-20 38th Avenue, Suite 10H
Flushing, New York 11354
Telephone: (718) 539-7098