## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ZU GUO YANG, XIAO HONG WANG, BAO
LAN DENG, CINDY CHAN, and MOOI YANG,

Plaintiffs,

v.

SHANGHAI CAFE INC., SHANGHAI CAFE
DELUXE INC., GRACE LAU, YUNG MEI KU,
PING LIN, and JOSEPH TANG,

Defendants.

Case No. 1:10-cv-8372-LLS
ECF Case

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT
## SHANGHAI CAFE DELUXE, INC.'S MOTION FOR SUMMARY JUDGMENT

Michael J. Gulliford
michael.gulliford@kirkland.com
Wanda D. French-Brown
wanda.french-brown@kirkland.com
Kuangyan Huang
kuan.huang@kirkland.com
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York  10022
(212) 446-4800

David Colodny
dcolodny@urbanjustice.org
URBAN JUSTICE CENTER
123 William Street, 16th Floor
New York, New York 10038
(646) 602-5600

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................1

STATEMENT OF FACTS ...................................................................................2

I.  PLAINTIFFS AND THEIR CLAIMS ...............................................2

II.  EVENTS SURROUNDING SHANGHAI CAFE'S DEMISE AND
DELUXE'S INCORPORATION ........................................................3

LEGAL STANDARD ..........................................................................................5

ARGUMENT .......................................................................................................6

I.  DELUXE'S MOTION SHOULD BE DENIED BECAUSE DELUXE
HAS VIOLATED FEDERAL RULE OF CIVIL PROCEDURE 56
AND LOCAL RULE 56.1 ..................................................................6

II.  DELUXE'S MOTION SHOULD BE DENIED BECAUSE NOT
ONLY ARE THERE GENUINE ISSUES OF MATERIAL FACT,
THE EVIDENCE IN FAVOR OF PLAINTIFFS' CLAIMS IS
OVERWHELMING ............................................................................8

A.  Deluxe Is Liable Under The Common Law, *De Facto* Merger
Doctrine ....................................................................................9

B.  There Is Substantial Evidence For A Fact Finder To Conclude That
Deluxe Is Liable Under the Substantial Continuity Test. .........19

C.  A Formal Transaction Between Shanghai Cafe And Deluxe Is Not
Required To Establish Successor Liability. ...............................23

III.  DELUXE'S THEORIES WITH RESPECT TO MR. YANG ARE
BOTH PROCEDURALLY IMPROPER AND WRONG ON THE
MERITS ...........................................................................................24

A.  Deluxe Fails To State The Relief Sought. ................................25

B.  Deluxe Mischaracterizes The Record With Respect To Mr. Yang. ..........25

C.  Whether Or Not Mr. Yang Is An Employer Is Irrelevant To His
Claims Against Shanghai Cafe. ...............................................26

D.  Any Contribution Claim Brought By Deluxe Is Barred As A
Matter of Law. ........................................................................27

E.  Deluxe's Attempt To Amend Its Pleadings Is Untimely And Futile. ........27

IV.  THE RECORD SHOWS SHANGHAI CAFE HAD GROSS
REVENUES OF OVER $500,000 PER YEAR ................................28

CONCLUSION ..................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*24/7 Records, Inc. v. Sony Music Entertainment, Inc.*,
566 F. Supp. 2d 305 (S.D.N.Y. 2008)..................................................................23

*Abdel-Khalek v. Ernst & Young, L.L.P.*,
No. 97 CIV. 4514 JGK, 1999 WL 190790, at *8 (S.D.N.Y. Apr. 7, 1999)...........22

*Alvarez v. 40 Mulberry Rest., Inc.*,
No. 11 CIV. 9107 PAE, 2012 WL 4639154, at *1 (S.D.N.Y. Oct. 3, 2012)............. 17, 18, 19

*Ansoumana v. Gristedes Operating Corp.*,
No. 00 Civ. 253(AKH), 2003 WL 30411, at *1 (S.D.N.Y. Jan. 3, 2003)..............27

*Baker v. Latham Sparrowbush Associates*,
72 F.3d 246 (2d Cir. 1995).................................................................................21

*Battino v. Cornelia Fifth Ave.*,
*LLC,* 861 F. Supp. 2d 392 (S.D.N.Y. 2012) ............................................. 19, 20, 22

*Cargo Partner AG v. Albatrans, Inc.*,
352 F.3d 41 (2d Cir. 2003).....................................................................................9

*Classicberry Ltd. v. Musicmaker.com, Inc.*,
48 F. App'x 360 (2d Cir. 2002)...........................................................................27

*Cresswell v. Sullivan & Cromwell*,
922 F.2d 60 (2d Cir.1990)...................................................................................27

*Fall River Dyeing & Finishing Corp. v. NLRB*,
482 U.S. 27 (1987)........................................................................................ 19, 20

*Feingold v. New York*,
366 F.3d 138 (2d Cir. 2004)..................................................................................6

*Fitzgerald v. Fahnestock* & Co.,
286 A.D.2d 573 N.Y.S.2d 70 (1st Dep't 2001) ...................................................23

*Giannullo v. City of New York*,
322 F.3d 139 (2d Cir. 2003)..................................................................................6

*Glynwed, Inc. v. Plastimatic, Inc.*,
869 F. Supp. 265 (D.N.J. 1994) ..........................................................................15

*Gustafson v. Bell Atl. Corp.*,
171 F. Supp. 2d 311, 328 n.8 (S.D.N.Y. 2001)...................................................27

*Herman v. RSR Sec. Services Ltd.*,
172 F.3d 132 (2d Cir. 1999)................................................................................27

*Lucente v. Int'l Bus. Machines Corp.*,
  310 F.3d 243 (2d Cir. 2002)................................................................... 28

*Lumbard v. Maglia, Inc.*,
  621 F. Supp. 1529 (S.D.N.Y. 1985)....................................................... 11

*Marvel Characters, Inc. v. Simon*,
  310 F.3d 280 (2d Cir. 2002)..................................................................... 6

*Medina v. Unlimited Sys.*, LLC,
  760 F. Supp. 2d 263 (D. Conn. 2010)................................................... 23

*Merino v. Beverage Plus America Corp.*,
  No. 10 Civ. 0706(JSR)(RLE), 2011 WL 3739030, at *7 (S.D.N.Y. Apr. 12, 2011)............. 19

*Miller v. Forge Mench P'ship Ltd.*,
  No. 00 Civ. 4314(MBM), 2005 WL 267551, at *6 (S.D.N.Y. Feb. 2, 2005)................... 9, 15

*MSF Holding Ltd. v. Fiduciary Trust Co. Int'l*,
  435 F. Supp.2d 285 (S.D.N.Y. 2006)........................................................ 8

*Musikiwamba v. ESSI, Inc.*,
  760 F.2d 740 (7th Cir. 1985) ................................................................ 20

*N.L.R.B. v. Star Color Plate Serv., Div. of Einhorn Enterprises, Inc.*,
  843 F.2d 1507, 1510 n.3 (2d Cir. 1988)................................................. 25

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*,
  182 F.3d 157 (2d Cir. 1999)..................................................................... 6

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
  537 F.3d 168 (2d Cir. 2008)..................................................................... 8

*Nettis v. Levitt*,
  241 F.3d 186 (2d Cir. 2001).................................................................... 9

*New York v. Nat'l Serv. Indus., Inc.*,
  460 F.3d 201 (2d Cir. 2006)................................................................... 16

*Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*,
  51 F. Supp. 2d 457 (S.D.N.Y. 1999)....................................................... 21

*Riley v. Town of Bethlehem*,
  5 F. Supp. 2d 92 (N.D.N.Y. 1998)............................................................ 8

*Rubens v. Mason*,
  527 F.3d 252 (2d Cir. 2008).................................................................... 6

*Sanders v. Thrall Car Mfg. Co.*,
  582 F. Supp. 945 (S.D.N.Y. 1983).......................................................... 27

*Shamis v. Ambassador Factors Corp.*,
  34 F. Supp. 2d 879 (S.D.N.Y. 1999)....................................................... 11

iii

*Stern v. Trustees of Columbia Univ.*,
    131 F.3d 305 (2d Cir. 1997)..................................................................... 6

*Taggart v. Time Inc.*,
    924 F.2d 43 (2d Cir. 1991)...................................................................... 6

*Thomas v. Hsiao*,
    No. 12 Civ. 1128(ILG)(SMG), 2012 WL 5897412 (E.D.N.Y. Nov. 21, 2012) ...................... 8

*Ulanet v. D'Artagnan, Inc.*,
    170 F. Supp. 2d 356 (E.D.N.Y. 2001) ................................................... 15

*Union Carbide Corp. v. Montell N.V.*,
    179 F.R.D. 425 (S.D.N.Y. 1998) ............................................................ 8

*United States v. Letscher*,
    83 F. Supp. 2d 367 (S.D.N.Y. 1999)..................................................... 25

## **STATUTES**

New York Labor Law § 196-6.......................................................................... 3

## **RULES**

Fed. R. Civ. P. 56(c) ................................................................................ 6, 7

Fed. R. Civ. P. 56(c)(1)(A) ........................................................................ 7

Fed. R. Civ. P. 7(b)(1)(C) ......................................................................... 25

## INTRODUCTION

Although Shanghai Cafe was by all accounts a profitable business, it abruptly closed its doors after learning of Plaintiffs' intention to bring this suit.  A mere two weeks later, following a lease signing attended by Shanghai Cafe's owner, Grace Lau, Shanghai Cafe Deluxe ("Deluxe") began operating at the very same location.   Besides its remarkably similar name, the "new" Shanghai Cafe Deluxe was similar to the "old" Shanghai Cafe in nearly every conceivable respect.   As discovery in this case has revealed, when Deluxe reopened its doors, many of its owners, managers, and/or employees were from Shanghai Cafe.    Similarly, Deluxe's assets, accounts and general business operations were also the assets, accounts and business operations of Shanghai Cafe.  On these facts, Deluxe claims that it is entitled to prevail, as a matter of law, on its claim that it is not liable under the "*de facto* merger" or "substantial continuity" tests of successor liability.   Plaintiffs respectfully disagree, and submit that not only are there layers of disputed fact surrounding Deluxe's claim, but that a reasonable fact finder will find Deluxe liable for Plaintiffs' claims under the "*de facto* merger" doctrine or "substantial continuity" test.  (*See* Ex. A[1] (setting forth the examples of overlap between Shanghai Cafe and Deluxe).)

In addition to failing on the facts, Deluxe's motion fails this Court's local rules and Federal Rule of Civil Procedure 56.   At the heart of both rules is the requirement that a party moving for summary judgment must carry its burden with fact.   Yet, Deluxe moves for summary judgment with a motion and alleged statement of non-disputed material facts that contain very little in the way of citation to the factual record.   And although the facts do not support the relief Deluxe seeks—a conclusion buttressed by Deluxe's inability to support its motion in the factual record—Deluxe cannot satisfy this Court's Local Rule 56.1 or Rule 56 without them.   Because

---

[1]    Unless otherwise specified, all references to Exhibits herein shall refer to the lettered exhibits attached to the attached Declaration of Michael Gulliford.

Deluxe offers the Court what is largely unsupported, attorney argument, rather than facts rooted in the record, Plaintiffs request that Deluxe's motion be denied on this additional basis.

Finally, Plaintiffs respectfully request that the relief Deluxe seeks with respect to Plaintiff Zu Guo Yang ("Mr. Yang") be denied in its totality.  Deluxe appears to intimate that Mr. Yang, who was but a mere cook at Shanghai Cafe, was actually an employer for purposes of the Fair Labor Standards Act ("FLSA").  Putting aside that Deluxe has never raised this defense despite taking Mr. Yang's deposition almost two years ago, Deluxe's claim is wrong on its face.  As is set forth below, Mr. Yang was a cook who did not possess anything close to the requisite authority and control necessary to elevate him to the status of employer.  Finally, Deluxe's request to amend the pleadings and seek contribution should respectfully be denied as well.  Although Deluxe claims it is entitled to contribution, which it is not, such claims are barred as a matter of law in FLSA cases.  And allowing Deluxe the opportunity to amend its pleadings would be improper given Deluxe's failure to specify the defense or counterclaim it seeks to interpose, as well as its failure to provide a justification for seeking to amend its pleadings at this late stage.

## STATEMENT OF FACTS

### I.   PLAINTIFFS AND THEIR CLAIMS

Plaintiffs are all former employees of Shanghai Cafe, a Chinese restaurant located at 100 Mott Street, New York, New York.  Plaintiff Mr. Yang worked as a cook for Shanghai Cafe from approximately March 2006 until June 8, 2010.  (Ex. B, [Zu Guo Yang Deposition Transcript ("Z. Yang Dep. Tr.")] at 13:8-23, 23:9-11.)   Plaintiff Xiao Hong Wang worked as a stir fry cook at Shanghai Cafe from June 2004 until March 2005, and from March 2006 through June 2010.  (Ex. C, [Xiao Hong Wang Deposition Transcript ("Wang Dep. Tr.")] at 63:6-17, 35:12-14, 37:4-6, 38:4-8.)  Plaintiff Bao Lan Deng worked as a dim sum cook at Shanghai Cafe from October 25, 2005 through June 8, 2010.  (Ex. D, [Bao Lan Deng Deposition Transcript

(Deng Dep. Tr.")] at 98:7-14, 99:7-9, 8:20-9:1, 87:12-18.)   Plaintiff Cindy Chan worked as a

waitress at Shanghai Cafe from March 2003 through June 8, 2010.   (Ex. E, [Cindy Chan

Deposition Transcript ("Chan Dep. Tr.")] at 9:10-18, 20:3-5.)   Plaintiff Mooi Yang worked as a

waitress at Shanghai Cafe from September 2005 through June 7, 2010.   (Ex. F, [Mooi Yang

Deposition Transcript ("M. Yang Dep. Tr.")] at 15:9-10, 47:4-14, 103:8-12.)   Plaintiffs allege

that while employed at Shanghai Cafe, they were denied the minimum wage, overtime and

spread of hour payments mandated by the New York Labor Law ("NYLL") and/or the FLSA.

(D.I. 18 at ¶¶ 1-4.)   Plaintiffs further allege that their employers at Shanghai Cafe improperly

retained their tips in violation of New York Labor Law § 196-6.   (*Id.* at ¶ 4.)

## II.   EVENTS SURROUNDING SHANGHAI CAFE'S DEMISE AND DELUXE'S INCORPORATION

By all accounts, Shanghai Cafe was a successful and profitable business.   (Ex G, [Philip

Lam Deposition Transcript ("Lam Dep. Tr.")] at 116:17–20 ("The restaurant worth quarter of a

million dollars … It's a good business restaurant.").)   Nonetheless, on June 8, 2010, Shanghai

Cafe abruptly closed its doors without liquidating any of its assets or its equipment.   (Ex. H,

[Ping Lin Deposition Transcript ("Lin Dep. Tr.")] at 64:15-65:15.)   Although Shanghai Cafe's

ownership had known it was violating the labor laws for quite some time—after all, the

ownership had directed its employees to lie to the Department of Labor, engage in a kickback

scheme and post fake schedules (Affidavit of Cindy Chan ("C. Chan Aff.") ¶¶ 15-19; Affidavit

of Bao Lan Deng ("B. Deng Aff.")  ¶¶ 7-8; Affidavit of Mooi Yang  ("M. Yang Aff.") ¶¶24-28;

Affidavit of Xiao Hong Wang ("X. Wang Aff.") ¶¶ 6-9, submitted in connection with Plaintiffs'

Opposition to Joseph Tang's Motion for Summary Judgment)—it learned of a new fact just prior

to the restaurant's closure:  Plaintiffs' intention to bring the present suit.   (*See, e.g.*, Ex. I, [Grace

Lau Deposition Transcript ("Lau Dep. Tr.")] at 15:16-16:10, 106:17-107:5, 125:11-17.)

Less than two weeks after Shanghai Cafe closed its doors, Shanghai Cafe Deluxe opened its doors at the exact same location.  (Ex. H, [Lin Dep. Tr.] at 11:24-12:5; D.I. 26-4, Affidavit of Man Peng Ma ("Ma Aff.") ¶ 8).)  Prior to the Deluxe lease signing, Grace Lau represented to Philip Lam, the manager of 100 Mott Street, that she had transferred her interest at Shanghai Cafe to the owners of the new restaurant.  (Ex. G, [Lam Dep. Tr.] at 36:18-21.)   At his deposition, Philip Lam also doubted Deluxe's claim that the restaurant was in fact "abandoned." (*Id.* at 37:21-38:5, 116:12-20, 117:22-118:2.)

In addition to having the same physical location as Shanghai Cafe, Deluxe served the exact same menu, (Ex. J, [Wei Bo Li Deposition Transcript ("Li Dep. Tr.")] at 80:13–82:6), owned the same telephone number, (Ex. I, [Lau Dep. Tr.] at 183:8-184:2), used the exact same Chinese name, "乔家栅," (*Compare* Ex. K, at PTF00031 *with id.* at PTF00040), and operated the same kitchen and dishwashing equipment as the restaurant it replaced at 100 Mott Street.  Deluxe also hired at least ten of Shanghai Cafe's staff members.  (Ex. I, [Lau Dep. Tr.] at 178:22–179:20.)

What's more, documents produced from third parties—that Deluxe did not produce— reveal the continuity between Shanghai Cafe and Deluxe.  Among the documents produced by the Bank of East Asia are Deluxe's by-laws and meeting minutes, which list Ms. Lau and Ms. Ping Lin as owners of Deluxe.  (Ex. L,[2] at BEA01410–25.)  Ms. Lau was the former owner of Shanghai Cafe whom Plaintiffs notified of their suit before Shanghai Cafe suddenly closed.  (Ex. I, [Lau Dep. Tr.] at 17:9-13 (Lau was an owner at Shanghai Cafe); *see also id.* at 15:16-16:10, 106:17-107:5, 125:11-17 (Lau testifying that she had notice of a prospective suit prior to the closing of Shanghai Cafe).)  Ms. Lin was similarly employed at Shanghai Cafe.  (Ex. H, [Lin

---

[2]  Ex. L-1 to the attached Declaration of Michael Gulliford is a declaration from the Bank of East Asia regarding documents produced by the Bank of East Asia.

Dep. Tr.] at 12:3-12:9.)  Although Deluxe did not produce these harmful documents, they did produce the very same, identically dated documents with one key difference—in the version of the documents that Deluxe produced, the names of Ms. Lin and Ms. Lau have been erased and replaced with the names of their relatives.  (*Compare* D.I. 26-8 at 12 *with* Ex. L, at BEA1424.)

Third party documents produced from vendors—again, which Deluxe did not produce— demonstrate yet more continuity between the old and new versions of the Shanghai Cafe restaurant.  By way of example, from June 2010 to at least April 2011,[3] Deluxe continued to receive services under Shanghai Cafe's accounts with Crown Container Company, Inc. ("Crown") and Ecolab, for waste disposal and dishwashing services, respectively.  The receipts from these companies indicate that Deluxe paid nearly $8,000.00 to Crown under Shanghai Cafe's account,[4] and similarly paid more than $3,000.00 to Ecolab under Shanghai Cafe's account.[5]  Deluxe also used and benefitted from the permit that Ms. Lau acquired from the Department of Health while operating Shanghai Cafe.  (Ex. O, [Yi Li Weng Deposition Transcript ("Weng Dep. Tr.")] at 214:15-215:8.)  Based on the totality of facts set forth below, demonstrating the continuity between Shanghai Cafe and Deluxe, Plaintiffs respectfully submit that Deluxe's motion should be denied.

## LEGAL STANDARD

A party is entitled to summary judgment "only if the court concludes that the case presents 'no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).  Summary judgment is a "drastic device," and accordingly, "the moving party

---

[3]   April 2011 is the last month for which Plaintiffs received relevant documents in discovery.

[4]   *See, e.g.*, Ex. N, at BEA1493 (check no. 8998), BEA1500 (check no. 1034), BEA1513 (check no. 1096).

[5]   *See, e.g.*, Ex. N, at BEA1493 (check no. 8999 to Ecolab for "Shanghai Cafe - 019602326"), BEA1498 (check no. 1019), BEA1498 (check no. 1021).

bears a heavy burden of demonstrating the absence of any material issues of fact." *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2d Cir. 1999) (citation omitted). The moving party bears the burden of establishing "the absence of any material factual issues." *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004)). "[W]here the movant fail[s] to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, even if no opposing evidentiary matter is presented, for the non-movant is not required to rebut an insufficient showing." *Giannullo v. City of New York*, 322 F.3d 139, 140-41 (2d Cir. 2003) (internal quotation marks and citation omitted).

The Court, in determining whether there are genuine issues of material fact, is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997). When the non-movant's "assertions conflict" with those of the movant, "[t]he nonmovant's allegations are taken as true and it receives the benefit of the doubt." *Taggart v. Time Inc.*, 924 F.2d 43, 46 (2d Cir. 1991). Summary judgment is not appropriate "if there is *any* evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (emphasis added).

## ARGUMENT

## I.   DELUXE'S MOTION SHOULD BE DENIED BECAUSE DELUXE HAS VIOLATED FEDERAL RULE OF CIVIL PROCEDURE 56 AND LOCAL RULE 56.1

Plaintiffs respectfully submit that the Court should deny Deluxe's motion for failing to satisfy Rule 56(c) of the Federal Rules of Civil Procedure and this Court's Local Rule 56.1. At the heart of both rules is the requirement that a party seeking summary judgment must carry its burden with supportable fact. Rule 56(c)(1)(A) provides that "[a] party asserting that a fact

cannot be or is genuinely disputed ***must*** support the assertion by . . . ***citing to particular parts of materials in the record***." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). Likewise, Local Rule 56.1(d) further provides that "***[e]ach*** statement by the movant or opponent . . . ***must*** be followed by citation to evidence which would be admissible" as required by Fed. R. Civ. P. 56(c). Local Rule 56.1(d) (emphasis added).

Yet, that is not what Deluxe has done. Faced with a lack of support in the record for its present motion, Deluxe instead offers the Court nearly 37 pages of attorney argument unsupported by requisite fact and citation. By way of example, nearly the entirety of Deluxe's alleged "Statement of Facts," upon which Deluxe's arguments are premised, is attorney argument devoid of any citation to the factual record. (*See* D.I. 117-13 at 4-8.) The same holds true throughout Deluxe's brief. (*See, e.g.*, D.I. 117 at 21 (asserting, without any factual support, that "Shanghai Cafe and Shanghai Cafe Deluxe did not have any managers or officers in common, and only a small number of workers in common."); *Id.* at 22 (claiming, without any factual support, that "[a]lthough Grace Lau was an owner of Shanghai Cafe, her role was brief and limited in Defendant Deluxe's business as she only acted as a consultant to Deluxe for a period of three months.").) Because Deluxe's motion is not based on fact, as Rule 56(c) plainly requires, Plaintiffs request that it be denied.

Deluxe's Rule 56.1 Statement fares no better. First, Deluxe's Rule 56.1 Statement fails to offer any factual support for nearly all its twenty-seven paragraphs. Second, Deluxe's Rule 56.1 Statement offers the Court attorney argument, rather than fact. Indicative of Deluxe's failure to abide by this Court's Local Rule 56.1 is paragraph 10 of Deluxe's Rule 56.1 Statement, which claims the following to be a fact: "[t]here was no *de facto* merger between Shanghai Cafe and Defendant Deluxe, and Defendant Deluxe is not a continuation of Shanghai Cafe." Such legal

argument is improperly advanced in a Rule 56.1 Statement and cannot assist Deluxe in carrying

its burden.  *See Union Carbide Corp. v. Montell N.V.*, 179 F.R.D. 425, 428 (S.D.N.Y. 1998)

(rejecting Statement of Material facts that was basically "a compendium of the arguments

plaintiff plans to make at trial, rather than a short and concise statement of *facts*.").  Because

Deluxe has failed to comply with Local Rule 56.1, and its attorney argument is not substantiated

by fact or the record, Plaintiffs submit that its motion should be denied.  *See MSF Holding Ltd.

v. Fiduciary Trust Co. Int'l*, 435 F. Supp. 2d 285, 304 (S.D.N.Y. 2006) (denying motion for

summary judgment because moving party failed to submit the required 56.1 Statement); *Thomas

v. Hsiao*, No. 12 Civ. 1128(ILG)(SMG), 2012 WL 5897412 (E.D.N.Y. Nov. 21, 2012) (denying

motion for summary judgment for failure to supply record citations supporting statement of

material facts); *see also Riley v. Town of Bethlehem*, 5 F. Supp. 2d 92, 94 (N.D.N.Y. 1998)

(same).

## II.   DELUXE'S MOTION SHOULD BE DENIED BECAUSE NOT ONLY ARE THERE GENUINE ISSUES OF MATERIAL FACT, THE EVIDENCE IN FAVOR OF PLAINTIFFS' CLAIMS IS OVERWHELMING

Deluxe alleges that it is not, as a matter of law, a successor business liable for the

obligations of Shanghai Cafe.  But not only do numerous material facts preclude the relief

Deluxe seeks, they further demonstrate that a reasonable fact finder could very well return a

verdict for Plaintiffs under the *de facto* merger standard or substantial continuity test of successor

liability.  Respectfully, Deluxe's motion should thus be denied.  *See, e.g.*, *NetJets Aviation, Inc.

v. LHC Commc'ns, LLC*, 537 F.3d 168, 178–79 (2d Cir. 2008) (summary judgment should be

denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the non-

moving party).

### A.   Deluxe Is Liable Under The Common Law, *De Facto* Merger Doctrine.

### 1.   The Common Law Test.

Under Federal common law and New York law, "[a] successor [business] may be held liable for the obligations of its predecessor if any of the following conditions is present: (i) the purchaser expressly or impliedly agrees to assume such debts or liabilities; (ii) the transaction amounts to a *de facto* merger or consolidation of the seller and purchaser; (iii) the purchasing corporation is a mere continuation of the selling corporation; or (iv) the transaction is entered into fraudulently to escape liability for such obligations." *Miller v. Forge Mench P'ship Ltd.*, No. 00 Civ. 4314(MBM), 2005 WL 267551, at *6 (S.D.N.Y. Feb. 2, 2005) (citing *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 (2d Cir. 2003)).   Courts have observed that the "mere-continuation" and "*de facto* merger" doctrines are so similar that they may be considered a single exception.   *Cargo Partner*, 352 F.3d at 45 n.3.

"To determine whether such a '*de facto* merger' or 'mere continuation' of the predecessor's business has occurred, courts consider (1) continuity of ownership; (2) cessation of ordinary business by the predecessor; (3) assumption by the successor of liabilities ordinarily necessary for continuation of the predecessor's business; and (4) continuity of management, personnel, physical location, assets, and general business operation." *Miller*, 2005 WL 267551, at *7 (citing *Nettis v. Levitt*, 241 F.3d 186, 194 (2d Cir. 2001)).   "These factors are analyzed in a flexible manner that disregards mere questions of form and asks whether, in substance, 'it was the intent of [the successor] to absorb and continue the operation of [the predecessor].'" *Nettis*, 241 F.3d at 194.

### 2.   A Reasonable Fact Finder Could Well Return A Verdict in Plaintiffs' Favor Based on the *De Facto* Merger Doctrine.

As set forth, shortly after the ownership of Shanghai Cafe received news of Plaintiffs' intention to bring the present action, the profitable business abruptly closed its doors.  (Ex. I, [Lau Dep. Tr.] at 15:16-16:10, 106:17-107:5, 125:11-17 (Lau testifying that she had notice of a prospective suit prior to the closing of Shanghai Cafe); Ex. H, [Lin Dep. Tr.] at 64:15-65:15 (same).)  A little more than two weeks later, Shanghai Cafe Deluxe opened its doors at the very same address.  (Ex. H, [Lin Dep. Tr.] at 11:24-12:5; D.I. 26-4, Ma. Aff. ¶ 8).)  As the collective circumstances surrounding Deluxe's operations demonstrate, which Plaintiffs set forth in Exhibit A to this brief, Deluxe could very well be held liable under the *de facto* merger standard.  (*See* Ex. A (explaining the examples of overlap between Shanghai Cafe and Deluxe.)  At a very minimum, there are layers of disputed fact that make summary judgment in favor of Deluxe inappropriate.

### a.   There is compelling evidence of continuity of ownership.

Although Deluxe alleges in its memorandum that "there is no continuity of ownership between Defendant Deluxe and Shanghai Café," (D.I. 117 at 15), that assertion is nowhere supported in Deluxe's Rule 56.1 Statement.  A careful review of its 56.1 statement reveals that Deluxe artfully asserted who the owners of the corporation were on the day the 56.1 statement was signed, but provide no information regarding who owned the restaurant in 2010.[6]  Moreover, the documents obtained by Plaintiffs in discovery show continuity of ownership.

---

[6]   The Rule 56.1 statement notably uses the present tense to assert who the owners are of Shanghai Cafe rather than setting forth who the owners were in June, 2010, the relevant time period.  (*See, e.g.*, D.I. 117-13 at ¶ 2 ("The owners of Deluxe… *include* Yi Li Weng, Wei Bo Li and Man Peng Ma.") (emphasis added); ¶ 21 ("Neither Grace Lau nor any previous owner of manager of Shanghai Cafe *is* an owner or manager of Shanghai Cafe Deluxe.") (emphasis added).)  The only allegation that Deluxe makes that arguably might have covered the relevant time period is a vague assertion that Grace Lau "did not have any ownership interest in Deluxe," (*see* ¶ 17), a statement that doesn't clarify the time period referred to.  If Paragraph 17 was intended to include the time period of June 2010, an uncertain proposition, that assertion is clearly refuted by documentary evidence.

Generally, the continuity of ownership factor looks to whether the shareholders of the predecessor become shareholders of the successor corporation "at the time of the sale of the assets." *Shamis v. Ambassador Factors Corp.*, 34 F. Supp.2d 879, 897 (S.D.N.Y. 1999). Since there is no open transfer or acquisition of assets in this case, the relevant time period to examine continuity of ownership should be in or around June 2010 when Shanghai Cafe closed and Deluxe opened in its place. Uniformity of ownership is not required. *Lumbard v. Maglia, Inc.*, 621 F. Supp. 1529, 1535 (S.D.N.Y. 1985) ("[T]he cases uniformly hold that continuity, not uniformity, is the significant variable.").

Contrary to Deluxe's self-serving argument, documents produced from the Bank of East Asia—Deluxe's bank—prove a continuity of ownership between Shanghai Cafe and Deluxe. It is indeed undisputed that Ms. Lau was a former owner of Shanghai Cafe. Likewise, the Bank of East Asia documents include Deluxe's corporate meeting minutes, which reveal that Ms. Lau owned 20% of Deluxe's shares. (*See* Ex. L, at BEA1422.) Similarly, on the Corporate Authorization Resolution that the Bank of East Asia produced, dated June 15, 2010, Ms. Lau "certif[ied]" that she was the Secretary of Deluxe and signed twice in that capacity. (Ex. L, at BEA1410.) Both Yi Li Weng and Ms. Lau certified the veracity of the contents of that document. (*Id.*) Ms. Lau again signed as Secretary of Deluxe on a Bank of East Asia form on June 15, 2010. (Ex. L, at BEA1407.)

And the Bank of East Asia documents are not the only documents revealing the continuity of ownership that Deluxe continues to deny. Plaintiffs also obtained documents from the New York City Department of Health. Those documents reveal that on September 23, 2010, Ms. Lau signed as an "owner" of Deluxe on a New York City Department of Health & Mental

Hygiene health inspection report under penalty for falsification.[7]  (Ex. P,[8] at PTF311–PTF312.) In her deposition, Ms. Lau admitted that she held herself out as an owner of Deluxe during the Department of Health inspection.  (Ex I, [Lau Dep. Tr.] at 138:11-140:15.)

Yet, Deluxe has gone to great lengths to "remove" Ms. Lau as an owner of Deluxe. Ignoring the undisputed third party evidence, Deluxe claims in its Rule 56.1 Statement that "Defendant Lau did not have an ownership interest in Deluxe . . . ."  (D.I. 117-13 at ¶ 17.)  And although Deluxe did not produce the corporate documents that Plaintiffs were able to obtain from the Bank of East Asia, Deluxe did file with this Court, in connection with its Motion to Dismiss, identical documents minus one major revision—on the documents that Deluxe filed, Ms. Lau's name has been removed as a shareholder of Deluxe and replaced with the name of her son, Raymond:

## Minutes Submitted to Bank of East Asia

The Secretary then presented to the meeting (a) proposal(s) of the person(s) set forth below to purchase the number of common shares  200   par value, set forth opposite such person ('s) (s') name(s):

| Names | Number of Shares |
|-------|------------------|
| MAN PENG MA | 35 |
| GRACE LAU | 40 |
| XIN SHENG GU | 20 |
| WE BO LI | 40 |
| SU HUNG TSENG | 20 |
| PING LIN | 45 |

(Ex. L, at BEA01422.)

## Minutes Attached to Deluxe's Motion to Dismiss

---

[7]   The health inspection report states that "[f]alsification of any statement make [*sic*] herein is an offense punishable by a fine of not more than $500 or not more than 60 days imprisonment or both, NYC Admin. Code-section 10-154."  (Ex. P, at PTF311–PTF312.)

[8]   Ex. P-1 to the attached Declaration of Michael Gulliford is a declaration from the Department of Health and Mental Hygiene of the City of New York, regarding documents produced by the Department of Health and Mental Hygiene of the City of New York.

> The Secretary then presented to the meeting (a) proposal(s) of the person(s) set forth below to purchase the number of common shares   200   par value, set forth opposite such person ('s) (s') name(s):
>
> | Names | Number of Shares |
> |---|---|
> | MAN PENG MA | 35 |
> | XIN SHENG GU | 20 |
> | YI LI WENG | 45 |
> | RAYMOND LAU | 40 |
> | WEI BO LI | 40 |
> | SU HUNG TSENG | 20 |

(D.I. 26-8 at 13.)

## Bank of East Asia Version

> There were present:   MAN PENG MA   PRESIDENT
> GRACE LAU   SECRETARY
> XIN SHENG GU   TREASURER
> WE BO LI
> SU HUNG TSENG
> PING LIN
> constituting a quorum of the Board of Directors.

(Ex. L, at BEA01420.)

## Motion to Dismiss Version

> There were present:   MAN PENG MA   PRESIDENT
> XIN SHENG GU   TREASURER
> YI LI WENG   SECRETARY
> RAYMOND LAU
> WEI BO LI
> SU HUNG TSENG
> constituting a quorum of the Board of Directors.

(D.I. 26-8 at 9.)

> SPECIMEN FORM OF CERTIFICATES FOR SHARES
>
> | Certificate No. 01 | GRACE LAU | SECRETARY | 40 Shares |
> | Certificate No. 02 | WE BO LI | | 40 Shares |
> | Certificate No. 03 | SU HUNG TSENG | | 20 Shares |
> | Certificate No. 04 | PING LIN | | 45 Shares |
> | Certificate No. 05 | XIN SHENG GU | TREASURER | 20 Shares |
> | Certificate No. 06 | MAN PENG MA | PRESIDENT | 35 Shares |

(Ex. L, at BEA01424.)

> SPECIMEN FORM OF CERTIFICATES FOR SHARES
>
> | Certificate No. 01 | MAN PENG MA | PRESIDENT | 35 Shares |
> | Certificate No. 02 | XIN SHENG GU | TREASURER | 20 Shares |
> | Certificate No. 03 | YI LI WENG | SECRETARY | 45 Shares |
> | Certificate No. 04 | RAYMOND LAU | | 40 Shares |
> | Certificate No. 05 | WEI BO LI | | 40 Shares |
> | Certificate No. 06 | SU HUNG TSENG | | 20 Shares |

(D.I. 26-8 at 12.)

## Bank of East Asia Version



> MAN PENG MA _____ acted as Chairman of the meeting and
> GRACE LAU _____ acted as Secretary of the meeting. The Chairman ordered that a waiver of notice of the time, place and purposes of the meeting, signed by all the directors, be annexed to the minutes of the meeting.

(Ex. L, at BEA01420.)

## Motion to Dismiss Version

> MAN PENG MA _____ acted as Chairman of the meeting and
> YI LI WENG _____ acted as Secretary of the meeting. The Chairman ordered that a waiver of notice of the time, place and purposes of the meeting, signed by all the directors, be annexed to the minutes of the meeting.

(D.I. 26-8 at 9.)

Deluxe has yet to account for this discrepancy, or explain why its own corporate documents, which it submitted to the Bank of East Asia, list Ms. Lau as an undisputable owner of Deluxe.  For this reason alone, there are genuine issues of fact that preclude the relief Deluxe seeks.

Moreover, it is undisputed that although Ms. Lau is no longer "officially" involved with Deluxe, she only allegedly left Deluxe because her presence looked bad for the litigation.  As Man Peng Ma, another owner of Deluxe, testified:

> Q: … Because she was a previous owner of Shanghai Cafe, the old restaurant, you asked her to leave; is that right?
> A. Yes.
> Q.  Did you ask her to leave because you didn't want people to think she was involved with Deluxe?
> A.   Yes.
>
> (Ex. Q, [Man Peng Ma Deposition Transcript ("Ma Dep. Tr.")] at 67:5–12.)

And although Ms. Lau is no longer officially listed as an owner of Deluxe, a reasonable fact finder could very well infer that her interest in the restaurant continues by way of her son's apparently sham ownership.  For instance, at the time of Deluxe's incorporation, Raymond Lau was not even in the country (Ex. I, [Lau Dep. Tr.] at 132:15–23, 134:24–135:3), was just twenty years old (*id.* at 126:18-19) and had been living in Hong Kong for over ten years (*id.* at 134:14–17).  Nor was Mr. Lau employed, (*id.* at 131:17–19 (testifying that Raymond Lau returned to Hong Kong to continue his studies)), or in possession of "money to spend on his own," let alone to invest in a restaurant.  (*Id.* at 129:15–20.)  Finally, in addition to not being physically present at Deluxe's incorporation or at its everyday operations, Mr. Lau's personal connection to other shareholders of Deluxe is tenuous at best.  For example, Man Peng Ma testified that he first met Mr. Lau in May or June of 2010, (Ex. Q, [Ma Dep. Tr.] at 19:17–21), barely a month before Deluxe was incorporated.

14

Faced with these overwhelming facts, Deluxe hangs its hat on whether Ms. Lau was the secretary of Deluxe or properly signed her name as such when at the Bank of East Asia. Respectfully, that is not the issue.  Regardless of whether Ms. Lau was a secretary of Deluxe— which Deluxe's own corporate documents show she was—the Deluxe corporate documents produced by the Bank of East Asia show that she was a shareholder.  Deluxe's denials to the contrary thus do not deserve weight.

**b.       Shanghai Cafe ceased ordinary business in June 2010.**

It is undisputed that Shanghai Cafe ceased operations on or around June 8, 2010.  There can be no doubt that this factor of the traditional common law test is met.

**c.       Deluxe assumed the liabilities of Shanghai Cafe ordinarily necessary for the uninterrupted continuation of business.**

Deluxe baldly alleges that "Plaintiffs . . . cannot show any facts suggesting an assumption of liability . . . ."  (D.I. 117 at 17.)  Again, however, the facts tell a different story.  The *de facto* merger doctrine requires "only that the successor assume the liabilities that would 'ordinarily' be necessary to continue the predecessor's business, not the particular debt in question or all actual and potential debts."  *Miller*, 2005 WL 267551, at *9; *see also Ulanet v. D'Artagnan, Inc.*, 170 F. Supp.2d 356, 358-59 (E.D.N.Y. 2001) (assumption of liabilities found where successor company voluntarily assumed predecessor's contractual duties with a third party); *Glynwed, Inc. v. Plastimatic, Inc.*, 869 F. Supp. 265, 276 (D.N.J. 1994) (assumption of liabilities found where successor company voluntarily paid some debts owed to suppliers of predecessor).

Here, Plaintiffs have obtained significant third party evidence showing that Deluxe assumed the liabilities of its predecessor, Shanghai Cafe.  At a very minimum, Deluxe assumed a Con Ed account for electricity, an AT&T account for telephone services, a Crown account for waste disposal, and an Ecolab account for dishwashing services, all in order to continue

15

operating the Shanghainese restaurant business of both Deluxe and Shanghai Cafe without interruption.  It is undisputed that Deluxe made a payment to the Shanghai Cafe account at Con Ed for $4909.50.  (Ex. N,[9] at BEA01493 (check no. 8996).)  It is undisputed that Deluxe made payments to the Shanghai Cafe account at AT&T, totaling at least $640.90.  (*See*, *e.g.*, Ex N, at BEA1491 (check no. 1001), BEA1502 (check no. 1048), BEA1515 (check no. 1111).)  It is also undisputed that Deluxe made payments to the Shanghai Cafe account at Crown—a commercial garbage collection company—totaling almost $8,000.00,[10] as well as payments to Ecolab—a leasing and maintenance service company for restaurant kitchen equipment—totaling $3,286.78.[11]  (*See*, *e.g.*, Ex. N, at BEA1493 (check no. 8999 to Ecolab for "Shanghai Cafe - 019602326"), BEA1498 (check no. 1019), BEA1498 (check no. 1021).)

Altogether, Deluxe paid at least $17,000.00 towards Shanghai Cafe's accounts.  The assumption of these obligations enabled Deluxe to minimize any interruption to its Shanghainese restaurant business after its predecessor Shanghai Cafe closed.  Indeed, it is undisputed that Deluxe opened within two weeks after Shanghai Cafe closed on June 8, 2010.  A reasonable fact finder could thus more than conclude that the third prong of the common law test is satisfied.

> ### d.  There is substantial continuity of management, personnel, physical location, assets and general business operation between Shanghai Cafe and Deluxe.

The fourth factor courts consider in determining whether a "de facto merger" or "mere continuation" of a predecessor's business has occurred is "continuity of management, personnel, physical location, assets, and general business operation."  *New York v. Nat'l Serv. Indus., Inc.*,

---

[9]  Ex. L-1 to the attached Declaration of Michael Gulliford is a declaration from the Bank of East Asia regarding documents produced by the Bank of East Asia.

[10]  *See*, *e.g.*, Ex. N, at BEA1493 (check no. 8998), BEA1500 (check no. 1034), BEA1513 (check no. 1096).

[11]  Deluxe makes the unsupported assertion that sanitation and food safety services are "***merely incidental***" to Deluxe's ***restaurant*** business.  (D.I. 117 at 20.)  Deluxe does not and cannot explain how a restaurant in New York City can operate without such services.

460 F.3d 201, 209 (2d Cir. 2006).  As set forth above, although Shanghai Cafe abruptly shut its doors on June 8, 2010, Deluxe incorporated and reopened at the same location within 2 weeks. The reason Deluxe was able to reopen in such an extraordinarily short period of time is because it had largely the same personnel, management, assets and general business operations as Shanghai Cafe.  (*See* Ex. A, (setting forth the examples of overlap between Shanghai Cafe and Deluxe).)

### i.    Continuity of Management/Personnel.

Firstly, there is substantial evidence of continuity of management and personnel between Shanghai Cafe and Deluxe.  In addition to Ms. Lau, who was an owner at Shanghai Cafe, (Ex. I, [Lau Dep. Tr.] at 17:9–13), and manager/owner of Deluxe, (*see, e.g.*, Ex. O, [Weng Dep. Tr.] at 194:11–195:2; Ex. L, at BEA01420, BEA01422, BEA01424; Ex. R, at PTF00394[12]), ***another owner of Deluxe—Ms. Ping Lin***—was also previously at Shanghai Cafe.  (*See* Ex. H, [Lin Dep. Tr.] at 13:23–14:24.)    Although, as it did with respect to Ms. Lau, Deluxe has removed Ms. Lin's name from its corporate documents listing her as an owner of Deluxe, (*see supra* at pp. 14-15), the corporate documents that Deluxe provided to the Bank of East Asia indisputably show Ms. Lin's ownership in Deluxe.  (*See* Ex. L, at BEA01422, BEA01424.)  And in addition to Ms. Lau, ***at least ten other workers*** continued working for Deluxe after the purported closing of Shanghai Cafe.  (Ex. I, [Lau Dep. Tr.] at 178:22-179:20.)  Plaintiffs submit that this evidence is more than sufficient to defeat Deluxe's motion.  *See, e.g.*, *Alvarez v. 40 Mulberry Rest., Inc.*, No. 11 CIV. 9107 PAE, 2012 WL 4639154, at *1 (S.D.N.Y. Oct. 3, 2012) (finding issue of material fact with respect to successor liability under the traditional common law test where, *inter alia*, the predecessor and successor entities shared "numerous employees").

---

[12]    In addition to the Bank of East Asia documents and the health inspection report, Grace Lau's name also appears on an application to the Department of Health dated August 26, 2010.  (Ex. R, at PTF00394.)  Her title on the form is listed as "MANAGER."  (*Id.*)  Yi Li Weng signed the application.  (*Id.*)

### ii.    Continuity of Physical Location.

It is undisputed that Shanghai Cafe and Deluxe operate out of the exact same physical location: 100 Mott Street New York, New York.

### iii.    Continuity of Assets.

With respect to continuity of assets, Deluxe concedes in its brief that Deluxe used the same "equipment, supplies, and materials" as Shanghai Cafe.  (D.I. 117 at 4-5.)  Additionally, Deluxe used the same telephone number, (Ex. I, [Lau Dep. Tr.] at 183:8-184:2), as well as the same dishwashing equipment, (*id.* at 105:10-106:2).  These facts also warrant denying Deluxe's motion.  *See, e.g., Alvarez*, 2012 WL 4639154, at *6 (finding issue of material fact with respect to successor liability under the traditional common law test where, *inter alia*, the predecessor and successor entities used the same kitchen equipment).

### iv.    Continuity of General Business Operations.

Deluxe's contention that Shanghai Cafe was "abandoned" dates back to its Motion to Dismiss.  In connection with that Motion, Deluxe shareholder Man Peng Ma submitted an affidavit stating, *inter alia*, that Shanghai Cafe was "abandoned," and that "[t]he former employees of the old Shanghai Cafe were gone and we did not know who they were."  (D.I. 26-4, Ma Aff. ¶¶ 7-8.)  Mr. Ma's affidavit is contradicted by documentary evidence demonstrating that Shanghai Cafe owner Ms. Lau also possessed an ownership interest in Deluxe.  (*See, e.g.*, Ex. L, at BEA 1410, 1422; Ex P, at PTF311–PTF312.)  Mr. Ma's affidavit is also contradicted by his own subsequent deposition testimony, wherein he admitted that Ms. Lau was hired at Deluxe because two of Deluxe's shareholders knew Ms. Lau based on their prior work experience at Shanghai Cafe.  (Ex Q, [Ma. Dep. Tr.] at 65:14-18.)

Additional evidence also contradicts Deluxe's already disproven allegation that Shanghai Cafe was abandoned.  Belying Deluxe's claim of "abandon[ment]," Grace Lau ordered new

18

supplies for the restaurant and had repair work done on its elevator *one week before* Shanghai Cafe supposedly "closed."   (D.I. 34, Affidavit of Mooi Yang ¶¶ 12, 13.)   Philip Lam, the property manager for 100 Mott Street also doubted that the business was abandoned.  (Ex. G, [Lam Dep. Tr.] at 37:21-38:5; 116:12-20, 117:22-118:2.)  Rather, Mr. Lam testified that Ms. Lau represented to him that she transferred Shanghai Cafe to the owners of Deluxe.  (*Id.* at 36:18-21.) Thus, it is unsurprising that Deluxe used the exact same menu and served the same dishes as Shanghai Cafe.  (Ex. I, [Lau Dep. Tr.] at 173:7-23; Ex. J, [Li Dep. Tr.] at 80:13-82:6.)  Yi Li Weng testified that Deluxe also used Ms. Lau's Health Permit because Deluxe needed to use it "in order to operate [the] business."   (Ex. O, [Weng Dep. Tr.] at 214:15-217:4.)   Finally, Deluxe's Chinese name, "乔家栅," remained the same.  (*Compare* Ex. K, at PTF00031 *with id* at PTF00040.)  Such evidence indicates continuity of general business operations between the two entities.  *See Alvarez*, 2012 WL 4639154, at *6 (finding "substantial evidence" exists to support a finding of mere continuation where predecessor and successor restaurants "share[d] a host of characteristics, including physical space, equipment, personnel, menu, trade name, website and Facebook page");  *see also Merino v. Beverage Plus America Corp.*, No. 10 Civ. 0706(JSR)(RLE), 2011 WL 3739030, at *7 (S.D.N.Y. Apr. 12, 2011) (finding mere continuation where the transition between the two entities "did not significantly change in any way the functioning of the . . . business.").

### B.   There Is Substantial Evidence For A Fact Finder To Conclude That Deluxe Is Liable Under the Substantial Continuity Test.

In addition to denying liability under the "*de facto* merger" doctrine, Deluxe claims that it is not, as a matter of law, liable under the substantial continuity test of successor liability.  Again, however, the record demonstrates not only issues of fact, but that Deluxe is also liable under the substantial continuity test.

### 1.    The Substantial Continuity Test.

The broader "substantial continuity" test of successor liability looks to "whether the new

company has acquired substantial assets of its predecessor and continued, without interruption or

substantial change, the predecessor's business operations." *Battino v. Cornelia Fifth Ave., LLC,*

861 F. Supp. 2d 392, 404 (S.D.N.Y. 2012) (quoting *Fall River Dyeing & Finishing Corp. v.*

*NLRB*, 482 U.S. 27, 43 (1987)).  Courts applying this test look to nine factors:

> (1) whether the successor company had notice of the charge or pending lawsuit
> prior to acquiring the business or assets of the predecessor; (2) the ability of the
> predecessor to provide relief; (3) whether there has been a substantial continuity
> of business operations; (4) whether the new employer uses the same plant; (5)
> whether he uses the same or substantially the same work force; (6) whether he
> uses the same or substantially the same supervisory personnel; (7) whether the
> same jobs exist under substantially the same working conditions; (8) whether he
> uses the same machinery, equipment, and methods of production; and (9) whether
> he produces the same product.

*Id.* (quoting *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 750 (7th Cir. 1985)).  No one

factor is dispositive, and it is not necessary that each factor be met in order to find

successor liability.  *Id.*

### 2.    A Reasonable Fact Finder Could Find In Plaintiffs' Favor On The Substantial Continuity Issue.

#### a.    Deluxe had notice of Plaintiffs' claims.

The first factor under the "substantial continuity" test for successor liability looks to

whether "the successor company had notice of the charge or pending lawsuit prior to acquiring

the business or assets of the predecessor." *Battino,* 861 F. Supp. 2d at 404.  Knowledge of an

actual pending lawsuit is not necessary to constitute notice; the successor need only have notice

of potential liability.  *Id.* at 405-407 (finding the notice factor present where successor had

knowledge of potential liability from unpaid employees).

Plaintiffs respectfully submit that there is more than sufficient evidence to satisfy the notice factor in this case. For one, as set forth in Defendants' Opposition to Mr. Tang's Motion for Summary Judgment, the Shanghai Cafe ownership knew it was violating the labor laws because it required its employees to lie to the Department of Labor, engage in a kickback scheme and post fake schedules. (*See* C. Chan Aff. ¶¶ 15-19; B. Deng Aff. ¶¶ 7-8; M. Yang Aff. ¶¶24-28; X. Wang Aff. ¶¶6-9 submitted in connection with Plaintiffs' Opposition to Joseph Tang's Motion for Summary Judgment.) Indeed, Ms. Lau admitted in her deposition that Shanghai Cafe posted fake work schedules. (Ex. I, [Lau Dep. Tr.] at 164:5-170:3.)[13] Moreover, Ms. Lau testified at her deposition that prior to the closing of Shanghai Cafe, she had the impression her employees intended to bring suit against the restaurant. (*Id.* at 15:16-16:10, 125:14-16 ("While we were running the old restaurant, there was talk about lawsuit already.".) Ping Lin's deposition testimony confirms not only that Ms. Lau had notice of the Plaintiffs' intention to sue prior to the closing of Shanghai Cafe, but also that Shanghai Cafe ***closed to avoid being sued***.

> Q. And nobody told you before that day that Shanghai Cafe closed that the restaurant was going to close?
> A. I [sic] said this to me once, they're going to close and they're going to sue.
> Q. When did this conversation take place?
> A. Not long before that. And she said lots of people are suing restaurants nowadays. They'll probably be sued too. So that's what she said to me.
> Q. ***So Grace Lau told you they were going to close the restaurant to avoid being sued?***
> A. ***Yes.***

(Ex. H, [Lin Dep. Tr.] at 64:24-65:15 (emphasis added).)

---

[13] In her deposition, Ms. Lau gave conflicting justifications as to why Shanghai Cafe posted fake schedules. First, Ms. Lau claims that the fake schedules were posted at the behest of her employees, because the employees "don't want to declare so much in taxes." (*Id.* at 166:11-13.) But the posting of a fake schedule would not enable Shanghai Cafe employees to reduce their taxes, especially since their wages were not dependent on hours worked. Ms. Lau later claims that the "main reason" schedules were posted was to let employees know when they should take a break. (*Id.* at 167:22-25.) However, given that Ms. Lau concedes that the schedules were inaccurate, (*id.* at 167:9-12), it would make little sense for employees to follow them in determining when to take a break.

As set forth above, Ms. Lau and Ping Lin were corporate officers, shareholders and/or managers of Deluxe, and thus their knowledge was attributable to Deluxe.  *See Baker v. Latham Sparrowbush Associates*, 72 F.3d 246, 255 (2d Cir. 1995) ("The knowledge of a director, officer, sole shareholder or controlling person of a corporation is imputable to that corporation.") (internal quotation omitted); *see also Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 51 F. Supp. 2d 457, 471 (S.D.N.Y. 1999) ("If two parties effectuate an agency relationship between themselves, the agent's knowledge is imputed to the principal").  Accordingly, the first factor of the "substantial continuity" test weighs in favor of Plaintiffs.

### b.      Shanghai Cafe is unable to provide relief to Plaintiffs.

The second factor in the "substantial continuity" test is the ability of the predecessor to provide relief to the Plaintiffs.  In its brief, Deluxe acknowledges that "Plaintiffs are unlikely to recover from Shanghai Cafe, Inc. as it is dissolved." (D.I. 117 at 29.)  Plaintiffs also assert their claims against Defendants Grace Lau, Ping Lin, and Yung Mei Ku.  However, none of these Defendants have so much as answered the amended complaint and thus recovery from them is unlikely.[14]   Finally, although Deluxe believes that Joseph Tang "either owned or managed Shanghai Cafe," (D.I. 117 at 29), it is still unclear precisely what assets Mr. Tang holds and whether he will be able to provide Plaintiffs with the significant monetary relief they are entitled to.  *See Abdel-Khalek v. Ernst & Young, L.L.P.*, No. 97 CIV. 4514 JGK, 1999 WL 190790, at *8 (S.D.N.Y. Apr. 7, 1999) (finding fact issue as to ability of predecessor to provide relief, despite evidence indicating it had received $3.5 million under the terms of an asset purchase agreement); *see also Battino*, 861 F. Supp. 2d at 408 (finding issue of material fact as to second substantial

---

[14]    Defendant Lau filed a motion with this Court seeking appointment of counsel on the basis of inability to afford an attorney. (*See* D.I. 87.)

continuity factor where it was unclear what assets defendant held).  Accordingly, this factor weighs in favor of the Plaintiffs.

> c.      **There is substantial continuity in the operation of the business between Shanghai Cafe and Deluxe.**

The third factor under the substantial continuity test examines whether there was a "substantial continuity of business operations." *Battino*, 861 F. Supp. 2d at 404.  The remaining fourth through ninth factors "are essentially a subset of factors to consider in determining whether there was 'substantial continuity of business operations.'" *Id.*

As explained above, there is substantial continuity between the operation of Shanghai Cafe and Deluxe.  (*See, e.g.*, Ex. A, (setting forth the examples of overlap between Shanghai Cafe and Deluxe).)  The record also amply demonstrates that Deluxe had notice of Plaintiffs' claims, that Shanghai Cafe is unable to provide relief, and that there is substantial continuity of business operations between Shanghai Cafe and Deluxe.  At the very least, there are triable issues of fact as to each of these factors.  Accordingly, Plaintiffs respectfully request that Deluxe's motion be denied.

> **C.      A Formal Transaction Between Shanghai Cafe And Deluxe Is Not Required To Establish Successor Liability.**

Despite the bulk of evidence in Plaintiffs' favor, Deluxe nonetheless intimates that successor liability cannot be established because Plaintiffs have failed to present evidence of a formal transaction or assignment between Shanghai Cafe and Deluxe.[15]  (*See e.g.*, D.I. 117 at 5, 11.)  But that is not what the law requires, and for good reason.  Indeed, in the very situation present here—*i.e.*, one party is alleged to have closed its doors to avoid civil liability, only to reopen as an alleged different entity a short time thereafter—it would belie logic for there to be a

---

[15]   Deluxe's continued reliance on this theory is particularly puzzling considering it made the same argument in its Motion to Dismiss (D.I. 27 at 5), which of course, the Court ultimately denied.  (*See* D.I. 49.)

"formal transaction or assignment" formally connecting the two entities.  Likewise, the case law

on this point is clear that a formal transaction is not necessary to find successor liability.  *See*

*24/7 Records, Inc. v. Sony Music Entertainment, Inc.*, 566 F. Supp. 2d 305, 315 (S.D.N.Y. 2008)

(finding *de facto* merger where the "LLC was created to replace 24/7, but ***no acts were taken to***

***formalize this arrangement.  In essence, a de facto merger took place, though there was no***

***sale or transaction.***") (citing *Fitzgerald v. Fahnestock* & Co., 286 A.D.2d 573, 574, 730

N.Y.S.2d 70 (1st Dep't 2001)) (emphasis added); *Medina v. Unlimited Sys.*, LLC, 760 F. Supp.

2d 263, 273 (D. Conn. 2010) (finding successor liability under the mere continuation exception

where "Unlimited Systems shut down its operations at or around the time U.S. Stucco began

operations," which "was nothing more than the covert act of a single company shuttering and re-

opening its doors simultaneously.") (internal citations omitted).

Moreover, contrary to Deluxe's claim, there is credible, third-party evidence in the record

indicating a transaction between Shanghai Cafe and Deluxe.  Specifically, as referenced above,

Philip Lam, the property manager for 100 Mott Street, testified in his deposition to the following:

> Q.  And Grace Lau told you that she transferred her restaurant to
> the new owners at 100 Mott Street, is that correct?
> A.  Yes.

(Ex. G, [Lam Dep. Tr.] at 36:18-21.)

Because Deluxe's attorney argument is again belied by the facts, its motion should be

denied.

## III.   DELUXE'S THEORIES WITH RESPECT TO MR. YANG ARE BOTH PROCEDURALLY IMPROPER AND WRONG ON THE MERITS

Deluxe devotes a substantial portion of its brief to arguing that Mr. Yang is an

"employer" under the FLSA, and thus should be barred from bringing claims against Deluxe.

(D.I. 117 at 31-34.)  Alternatively, Deluxe asks the Court to allow it leave to amend its answer in

order to assert unspecified defenses and counterclaims against Mr. Yang.  (*Id.* at 34.)  Deluxe's requests are procedurally deficient and wrong on the merits.

### A.     Deluxe Fails To State The Relief Sought.

As an initial matter, it is unclear what relief Deluxe is requesting with respect to Mr. Yang.  Deluxe vaguely asserts that Mr. Yang "cannot maintain this action against Defendant Deluxe" because he "acted as an employer" for Shanghai Cafe (D.I. 117 at 34) and that in the alternative, Deluxe "must" be permitted to amend its pleadings in order to assert 1) defenses against Mr. Yang because of his "status as an employer," and 2) counterclaims against Mr. Yang so that "Deluxe can seek to reduce any recovery Plaintiffs may obtain." (*Id.*)

But fatal to the vague relief it seeks, Deluxe fails to specify precisely why Mr. Yang's claim is barred, or what defenses and counterclaims it seeks to bring.  It is not the Plaintiffs' or the Court's responsibility to guess as to what relief Deluxe is seeking.   Because Deluxe's requests for relief with respect to Mr. Yang fail to meet the basic requirement of the Federal Rules of Civil Procedure that a motion must "state the relief sought," Fed. R. Civ. P. 7(b)(1)(C), Plaintiffs request that they be denied on that basis alone.[16]

### B.     Deluxe Mischaracterizes The Record With Respect To Mr. Yang.

In addition to being procedurally improper, Deluxe's argument with respect to Mr. Yang is wrong on the facts.  In intimating that Mr. Yang was an employer under the FLSA, Deluxe hangs its hat on testimony from Mr. Yang stating that "basically" he was in charge of the kitchen, (D.I. 117 at 32) and that "once or twice" he recommended someone to the boss for failing to do a good job (*id.*), as well as testimony from Grace Lau that Mr. Yang could decide

---

[16]   It would be improper for Deluxe to attempt to remedy this deficiency, and specific the counterclaims it wishes to bring, for the first time, in its reply brief.  *See N.L.R.B. v. Star Color Plate Serv., Div. of Einhorn Enterprises, Inc.*, 843 F.2d 1507, 1510 n.3 (2d Cir. 1988) (rejecting attempt to raise a new claim in a reply brief); *United States v. Letscher*, 83 F. Supp. 2d 367, 377 (S.D.N.Y. 1999) (stating that  new "arguments raised in reply papers are not properly a basis for granting relief").

whether kitchen employees could leave a little early or late.   (*Id.* at 33.)   But Mr. Yang was a mere cook.   (*See* Ex. B, [Z. Yang Dep. Tr.] at 58:9-14.)   What Deluxe fails to bring to the Court's attention is Mr. Yang's repeated testimony that he had no authority at Shanghai Café, (*id.* at 67:24-68:1 ("I was supposed - the title was a chef.   I don't have the authority"); 20:17-18 ("That's the business of the boss. I had no authority"), and that everyone in the kitchen worked as a "team."   (*Id.* at 70:19-71:5.)   Mr. Yang also testified that even if he were to correct an employee, "it wouldn't be of any use" because he had no authority.   (*Id.* at 72:3–5.)   Contrary to Deluxe's assertion that Mr. Yang had "substantial authority" over his fellow employees at Shanghai Café, (D.I. 117 at 36), the full record demonstrates that Mr. Yang had, as he repeatedly testified, no such authority.

C. **Whether Or Not Mr. Yang Is An Employer Is Irrelevant To His Claims Against Shanghai Cafe.**

In a disregard of the facts of this case, Deluxe selectively quotes deposition testimony in order to argue that Mr. Yang is an "employer" under the FLSA, and that as a result, his claims are barred.   (D.I. 117 at 34.)   Deluxe is wrong, and Plaintiffs request that this never before disclosed theory be rejected.   For one, Mr. Tang was a cook, not an employer—he had no general authority at Shanghai Cafe, let alone the authority to fire or hire.   (*See* Affidavit of Zu Guo Yang ("Z. Yang Aff.") ¶ 3.)   Nor did Mr. Yang have involvement with workers' wages, or control over the conditions of workers' employment.   (*Id.* at ¶¶ 4-5.)

And even if Mr. Yang was somehow an employer, his claims are still not barred, and Deluxe cites no authority to the contrary.   The relevant issue for purposes of Mr. Yang's claims in the instant case is his relationship with *Shanghai Cafe*, not any of his co-workers.   It is undisputed that Mr. Yang was employed by Shanghai Cafe and that the restaurant had an obligation to pay him.   Whether or not Mr. Yang could be considered to have employed some of

his co-workers in the kitchen is simply irrelevant as to Mr. Yang's claim against Shanghai Cafe, and accordingly Mr. Yang's claims should go forward.

### D. Any Contribution Claim Brought By Deluxe Is Barred As A Matter of Law.

As explained above, it is unclear what counterclaim Deluxe seeks to bring against Mr. Yang, and Deluxe's motion should be denied on that basis alone. However, because Deluxe says it wishes to "reduce any recovery Plaintiffs may obtain against Defendant Deluxe by Plaintiff Yang's culpability," (D.I. 117 at 34), it appears that Deluxe may be referring to a contribution claim against Mr. Yang. Even if Deluxe were allowed to amend its pleadings at this late stage in the litigation, such a counterclaim for contribution would be barred as a matter of law, because "there is no right to contribution or indemnification for employers held liable under the FLSA." *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 144 (2d Cir. 1999); *see also Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 328 n.8 (S.D.N.Y. 2001); *Ansoumana v. Gristedes Operating Corp.*, No. 00 Civ. 253(AKH), 2003 WL 30411, at *1 (S.D.N.Y. Jan. 3, 2003).

### E. Deluxe's Attempt To Amend Its Pleadings Is Untimely And Futile.

Finally, Deluxe waited way too long to interpose its new, meritless defenses and counterclaims. The original complaint in this action was filed over two years ago, and discovery has long been closed. (*See* D.I. 1; D.I. 108.) In cases such as this, where a "considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect and delay." *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 952 (S.D.N.Y. 1983), *aff'd*, 730 F.2d 910 (2d Cir. 1984) (internal citations omitted).

In its brief, Deluxe offers no justification for its tardiness; rather, Deluxe claims that it "must" be able to assert unspecified defenses and counterclaims despite its failure to do so at any previous point over the past two years. (*See* D.I. 117 at 34.) Nor could Deluxe offer any

credible justification for its delay as the "facts" upon which it bases its new alleged defenses and counterclaims have been known by Deluxe since at least November 15, 2011, the date of Mr. Yang's deposition.  (Ex. B, [Z. Yang Dep Tr.] at 1.)  Deluxe's attempt to amend its pleadings at this stage should thus be denied.  *See e.g.*, *Classicberry Ltd. v. Musicmaker.com, Inc.*, 48 F. App'x 360, 362 (2d Cir. 2002) (affirming trial court's denial of leave to amend where facts underlying newly asserted counterclaims were previously known to the defendant, and defendant offered no justification for the delay); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (affirming denial of motion for leave to amend where discovery had closed and plaintiff offered no valid excuse for delay).  Moreover, because the contribution counterclaim that Deluxe appears to want to assert is barred as a matter of law, amending its pleadings to add such a claim would be futile.  *See Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 260 (2d Cir. 2002) (plaintiff not permitted to amend complaint where new theory would be barred by substantive contract law and thus amendment would be futile).

## IV.   THE RECORD SHOWS SHANGHAI CAFE HAD GROSS REVENUES OF OVER $500,000 PER YEAR

Deluxe asserts that Plaintiffs "have not been able to produce any evidence that Shanghai Cafe had gross annual sales of greater than [the FLSA statutory threshold for gross revenue,]" (D.I. 117 at 34), and argues that as a result Shanghai Cafe was not covered under the FLSA. Deluxe is wrong.

Contrary to Deluxe's claim, deposit receipts produced by the Bank of East Asia demonstrate that Shanghai Cafe had annual gross sales exceeding the statutory limit of $500,000. For example, for the running twelve months prior to Shanghai Cafe's demise, from June 1, 2009 to May 31, 2010, cash deposits[17] to Shanghai Cafe's Bank of East Asia account totaled

---

[17]   Shanghai Cafe was a cash-only business.  (Z. Yang Aff. ¶ 6.)

$667,592.98.  (*See* Ex. S,[18] at BEA0375–BEA0475.)  The deposits ranged between $5,200 and $9,200, with the vast majority around $6,000, and occurred in regular three to four day intervals. (*See id.*)  The regularity and consistency of these deposits indicates that they are indeed deposits of sales receipts.  In addition, Shanghai Cafe paid its vendor invoices and a majority of its wage obligations with cash from its registers. (Ex. I, [Lau Dep. Tr.] at 36:3–13 (vendor invoices); *id.* at 159:8–160:3 (wages).)  Thus, these cash deposits to Shanghai Cafe's Bank of East Asia account, which already exceed the statutory threshold, only represent a portion of Shanghai Cafe's gross revenue.

These facts are more than sufficient to establish that Shanghai Cafe had gross sales in excess of the statutory threshold.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Deluxe's Motion in its entirety and schedule a trial date in this matter.

---

[18]   Ex. L-1 to the attached Declaration of Michael Gulliford is a declaration from the Bank of East Asia regarding documents produced by the Bank of East Asia.

29

Dated:  February 12, 2013                    Respectfully submitted,


                                             /s/ Michael J. Gulliford
                                             _____
                                             Michael J. Gulliford
                                             mgulliford@kirkland.com
                                             Wanda D. French-Brown
                                             wanda.french-brown@kirkland.com
                                             Kuangyan Huang
                                             kuan.huang@kirkland.com
                                             Kirkland & Ellis LLP
                                             601 Lexington Avenue
                                             New York, New York  10022
                                             (212) 446-4800

                                             David Colodny
                                             dcolodny@urbanjustice.org
                                             URBAN JUSTICE CENTER
                                             123 William Street, 16th Floor
                                             New York, New York 10038
                                             (646) 602-5600


                                             *Attorneys for Plaintiffs*